# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MERCURY MULTIFAMILY MANAGEMENT, LLC AND MERCURY METROPLEX REAL ESTATE II, LLC, | § § § § | |
| Plaintiffs, | § § | |
| vs. | § § | CIVIL ACTION NO. 3:16-cv-02557 |
| PELEUS INSURANCE COMPANY, ENGLE MARTIN & ASSOCIATES, AND RIDGE BRENTON KIRN, | § § § § | |
| Defendants. | § § | |

## EXHIBIT A

1.  Index of All Documents Filed in the State Court Action

2.  Docket Sheet in the State Court Action

3.  Documents filed in the State Court Action

    a.    Plaintiff's Original Petition & Jury Demand
        Filed:      July 11, 2016

    b.    Return of Service on Engle Martin & Associates
        Served:    July 18, 2016
        Filed:      July 19, 2016

    c.    Defendant Engle Martin & Associates, Inc.'s Original Answer
        Filed:      August 3, 2016

    d.    Court's Notice of Jury Trial Setting
        Filed:      August 9, 2016

    e.    Court's Uniform Scheduling Order
        Signed:    August 9, 2016

    f.    Return of Service on Ridge Brenton Kirn
        Served:    August 11, 2016
        Filed:      August 12, 2016

    g.    Return of Service on Peleus Insurance Company
        Served:    August 4, 2016
        Filed:      August 18, 2016

h.      Defendant Peleus Insurance Company
        Filed:           August 29, 2016

i.      Defendant Ridge Brenton Kirn's Original Answer
        Filed:           September 2, 2016

# Exhibit A-1

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MERCURY MULTIFAMILY | § | |
| MANAGEMENT, LLC AND MERCURY | § | |
| METROPLEX REAL ESTATE II, LLC, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 3:16-cv-02557 |
| | § | |
| PELEUS INSURANCE COMPANY, | § | |
| ENGLE MARTIN & ASSOCIATES, AND | § | |
| RIDGE BRENTON KIRN, | § | |
| | § | |
| Defendants. | § | |

**INDEX OF DOCUMENTS FILED IN STATE COURT ACTION**

1.  Plaintiff's Original Petition & Jury Demand
    Filed:        July 11, 2016

2.  Return of Service on Engle Martin & Associates
    Served:     July 18, 2016
    Filed:        July 19, 2016

3.  Defendant Engle Martin & Associates, Inc.'s Original Answer
    Filed:        August 3, 2016

4.  Court's Notice of Jury Trial Setting
    Filed:        August 9, 2016

5.  Court's Uniform Scheduling Order
    Signed:     August 9, 2016

6.  Return of Service on Ridge Brenton Kirn
    Served:     August 11, 2016
    Filed:        August 12, 2016

7.  Return of Service on Peleus Insurance Company
    Served:     August 4, 2016
    Filed:        August 18, 2016

8.  Defendant Peleus Insurance Company
    Filed:        August 29, 2016

9.  Defendant Ridge Brenton Kirn's Original Answer
    Filed:        September 2, 2016

# Exhibit A-2

# DC-16-08248 - MERCURY MULTIFAMILY MANAGEMENT, LLC, et al vs. PELEUS INSURANCE COMPANY, et al

Case Number: DC-16-08248
File Date: 07/11/2016
Case Status: OPEN

Court: 134th District Court
Case Type: CNTR CNSMR COM DEBT

---

PLAINTIFF : MERCURY MULTIFAMILY MANAGEMENT, LLC

Active Attorneys
Lead Attorney:
**RAIZNER, JEFFREY L**
Retained
Work Phone: 713-554-9099
Fax Phone: 713-554-9098

PLAINTIFF : MERCURY MULTIPLEX REAL ESTATE II, LLC

Active Attorneys
Lead Attorney:
**RAIZNER, JEFFREY L**
Retained
Work Phone: 713-554-9099
Fax Phone: 713-554-9098

DEFENDANT : PELEUS INSURANCE COMPANY
Address:
BY SERVING ITS CLAIMS MANAGER
PELEUS INSURANCE COMPANY
8720 STONY POINT PKWY STE 400
RICHMOND VA 23235

Active Attorneys
Lead Attorney:
**BADGER, STEVEN JOHN**
Retained
Work Phone: 214-742-3000
Fax Phone: 214-760-8994

DEFENDANT : ENGLE MARTIN & ASSOCIATES
Address:
BY SERVING ITS REGISTERED AGENT CORPORATION
SERVICE COMPANY DBA
CSC-LAWYERS INC
211 E 7TH ST STE 620
AUSTIN TX 78701

Active Attorneys
Lead Attorney:
**WEDEMEYER, STEPHEN R.**
Retained
Work Phone: 713-650-8400
Fax Phone: 713-650-2400

DEFENDANT : KIRN, RIDGE BRENTON
Address:
15725 ARTIST WAY #31029
ADDISON TX 75001-6091

Active Attorneys
Lead Attorney:
**WEDEMEYER, STEPHEN R.**
Retained
Work Phone: 713-650-8400
Fax Phone: 713-650-2400

07/11/2016 NEW CASE FILED (OCA) - CIVIL
07/11/2016 ORIGINAL PETITION
    Civil Case Info Sheet.pdf
    Plaintiffs' Original Petition.pdf
    Comment: PETITION & JURY DEMAND
07/11/2016 JURY DEMAND
07/11/2016 ISSUE CITATION
07/13/2016 CITATION ISSUED
    DC1608248PELEUS.pdf
    DC1608248ENGLE.pdf
07/13/2016 CITATION

| | |
|---|---|
| Anticipated Server: ESERVE | Anticipated Method: |
| Actual Server: OUT OF COUNTY | Returned: 08/18/2016 |
| Anticipated Server: ESERVE | Anticipated Method: |
| Actual Server: OUT OF COUNTY | Returned: 07/19/2016 |
| Anticipated Server: ESERVE | Anticipated Method: |
| Actual Server: OUT OF COUNTY | Returned: 08/12/2016 |

07/18/2016 CITATION ISSUED
    DC1608248RIDGE REISSUED.pdf
07/19/2016 RETURN OF SERVICE
    ENGLE MARTIN & ASSO.PDF
    Comment: ENGLE MARTIN & ASSOCIATES
08/03/2016 ORIGINAL ANSWER - GENERAL DENIAL
    Mercury - Defendant EMA's Original Answer, RFD--.pdf
08/09/2016 NOTE - ADMINISTRATOR
    Comment: UNIFORM SCHEDULING ORDER (LEVEL 2) - 12069214
08/09/2016 NOTICE OF TRIAL
    NOTICE OF TRIAL w LEVEL 2 USO
    Comment: JURY w LEVEL 2 USO
08/09/2016 SCHEDULING ORDER
    SCHEDULING ORDER
    Comment: UNIFORM
08/12/2016 RETURN OF SERVICE
    RIDGE BRENTON KIRN ROS.PDF
    Comment: RIDGE BRENTON KIRN ROS
08/18/2016 RETURN OF SERVICE
    PELEUS
    Comment: PELEUS INSURANCE COMPANY
08/29/2016 ORIGINAL ANSWER - GENERAL DENIAL
    Mercury Multifamily Management - Defendant Peleus Insurance
09/02/2016 ORIGINAL ANSWER - GENERAL DENIAL
    2016-09-02 Mercury Multi-Family - Defendant Kirn's Original
05/22/2017 Jury Trial - Civil
    134th Trial Notice Letters
    134th Trial Notice Letters
    Judicial Officer: TILLERY, DALE
    Hearing Time: 9:00 AM



Loading financial information, please wait...

Civil Case Info Sheet.pdf
Plaintiffs' Original Petition.pdf
DC1608248PELEUS.pdf
DC1608248ENGLE.pdf
DC1608248RIDGE REISSUED.pdf



Mercury - Defendant EMA's Original Answer, RFD--.pdf
134th Trial Notice Letters
134th Trial Notice Letters
NOTICE OF TRIAL w LEVEL 2 USO
SCHEDULING ORDER
RIDGE BRENTON KIRN ROS.PDF
PELEUS
Mercury Multifamily Management - Defendant Peleus Insurance
2016-09-02 Mercury Multi-Family - Defendant Kirn's Original

# Exhibit A-3

Exhibit A-3-a

FILED
DALLAS COUNTY
9/11/2016 4:28:30 PM
FELICIA PITRE
DISTRICT CLERK

3 CITS-ESERVE

Cause No. DC-16-08248 _____          Christi Underwood

| | | |
|---|---|---|
| MERCURY MULTIFAMILY | § | IN THE DISTRICT COURT OF |
| MANAGEMENT, LLC and MERCURY | § | |
| METROPLEX REAL ESTATE II, LLC | § | |
| | § | |
| V. | § | DALLAS COUNTY, TEXAS |
| | § | |
| PELEUS INSURANCE COMPANY, | § | |
| ENGLE MARTIN & ASSOCIATES, and | § | |
| RIDGE BRENTON KIRN | § | ___ JUDICIAL DISTRICT |

## PLAINTIFFS' ORIGINAL PETITION & JURY DEMAND

Plaintiffs MERCURY MULTIFAMILY MANAGEMENT, LLC and MERCURY METROPLEX REAL ESTATE II, LLC (collectively "Mercury" or "Plaintiffs") by and through their attorneys, files this Original Petition & Jury Demand against Defendants PELEUS INSURANCE COMPANY ("Peleus"), ENGLE MARTIN & ASSOCIATES ("Engle Martin"), and RIDGE BRENTON KIRN ("Kirn") (collectively "Defendants") and would respectfully show the following:

### Discovery Control Plan

1.1     Plaintiffs intend to conduct discovery under Level 2 of Texas Rule of Civil Procedure 190.

### Parties

2.1     Plaintiffs Mercury Multifamily Management, LLC and Mercury Metroplex Real Estate II, LLC are domestic limited liability companies organized under the laws of the State of Texas.

2.2     Upon information and belief, Defendant Peleus is a foreign surplus lines insurance company regularly engaged in the business of insurance in Texas,

1

operating for the purpose of accumulating monetary profit. Peleus regularly and systematically issues insurance policies in the State of Texas. They may be served with process by serving certified mail, return receipt requested, to **Claims Manager, Peleus Insurance Company, 8720 Stony Point Parkway, Suite 400, Richmond, VA 23235**.

2.3     Upon information and belief, Engle Martin is a corporation organized under the laws of the State of Georgia regularly engaged in the business of adjusting insurance claims in Texas through its various Texas offices. Engle Martin regularly and systematically engages in business in Texas, operating for the purpose of accumulating monetary profit and may be served with process through **Corporation Service Company dba CSC-Lawyers Inc., 211 East 7th Street, Suite 620, Austin, Texas 78701**.

2.4     Upon information and belief, Ridge Brenton Kirn is a natural person residing and working in the State of Texas. He may be served with process by serving him at, **Ridge B. Kirn, 15725 Artist Way #31029, Addison, Texas 75001-6091.**

### Venue & Jurisdiction

3.1     Venue is proper in Dallas County under Tex. Civ. Prac. & Rem. Code section 15.002(a)(1), as a substantial part of the events or omissions giving rise to this claim occurred in Dallas County. In particular, the adjustment of the claim by Defendants Engle Martin and Kirn for losses under the policy (including payments to be made to Mercury under the policy) were conducted in Dallas

County, Texas out of Defendants' Dallas office.  Further, investigation, including communications to and from Defendants and Mercury (including telephone calls, mailings, and other communications to Mercury) and communications between Defendants regarding the claim occurred in Dallas County, Texas.

3.2     Venue is also proper in Dallas County under Tex. Civ. Prac. & Rem. Code section 15.002(a)(2), as Defendant Kirn resides in Dallas County, Texas.

3.3     Plaintiffs seek damages within the jurisdictional limits of this Court.  Plaintiffs trust the jury to evaluate the evidence, but at this time, Plaintiffs seek monetary relief in an amount over $1,000,000.  Plaintiffs reserve the right to modify the amount and type of relief sought in the future.

### General Allegations

4.1     On or before March 17, 2016, Peleus sold a commercial property insurance policy bearing Policy No. 723-1426870415-00 to Mercury whereby Peleus would provide insurance coverage for the property located at 3740 Little Road, Arlington, Texas 76016, also referenced as 3808 Little Road, Arlington, Texas 76016 (the "Property") in exchange for the timely payment of premiums (the "Policy"). *See* Exhibit "A". The Property consists of several apartment buildings owned by Mercury.  The Policy was sold by Peleus to Mercury as the insured under the Policy and provides coverage for damages to the Property caused by wind and hail.

4.2     On or about March 17, 2016, Plaintiffs' property was substantially damaged by a severe wind and hail storm that struck Tarrant County.  As a result, the roofs,

3

exteriors, and interiors of the Property were substantially damaged. Immediately upon discovering the damage, Plaintiffs filed an insurance claim under the Policy with Peleus for damages to the Property caused by the wind and hail storm. Plaintiffs asked that the cost of repairs be covered pursuant to the Policy.

4.3     Peleus is the insurer on the Property. In response to the catastrophe claim, the Carrier assigned adjusters, consultants, and agents to Plaintiffs' file that were inadequate and improperly trained. More specifically, Peleus assigned Plaintiffs' claim to Engle Martin who in turn assigned its employee Ridge Kirn to adjust the damages under the Policy.

4.4     Engle Martin and Kirn failed to perform a thorough investigation of the claim. Kirn inspected the property on March 28, 2016. He performed a substandard inspection of the Property. Kirn's estimate grossly underestimated the extent and value of the damages to the Property. Kirn failed to hire any Texas-licensed and qualified engineers or experts to appropriately assess the damage. Kirn delayed the claims process and failed to communicate with the insured. Kirn also misrepresented the Policy's coverage. Engle Martin and Kirn performed an inadequate, incomplete and unreasonable investigation of Plaintiffs' claim, which is evidenced by his delays, lack of communication, refusal to hire to appropriate consultants, and estimate that fails to account for the necessary repairs for the Property. Peleus relied exclusively on Engle Martin and Kirn in determining what amounts, if any, to pay on Plaintiffs' claim and failed to perform their own adequate investigation.

4.5     Peleus, Engle Martin, and Kirn wrongfully underpaid and denied large portions of Plaintiffs' claims for property repairs.   Furthermore, Defendants underestimated what damages they did accept during the investigation. Defendants represented to Plaintiffs that certain damages were not covered under the Policy when in fact they were.   Peleus, Engle Martin, and Kirn have chosen to continue to deny timely payment of the damages.   As a result, Mercury has not been fully paid under the Policy provided by Peleus since the hail storm.   Mercury was forced to hire its own consultant to independently evaluate the damages to the Property because Defendants refused to do so.   Plaintiffs' own expert has identified substantial damage far beyond what Peleus acknowledged.   To this day, Peleus refuses to pay for the necessary repairs to the Property as required under the Policy.

4.6     As a result of Defendants' acts and/or omissions, Plaintiffs were required to retain an attorney to prosecute its claim for insurance benefits.

4.7     Unfortunately, Defendants have delayed payment for Plaintiffs' necessary and covered property repairs under the insurance policy that Peleus wrote. Given the repeated delays of payment, Plaintiffs have been subjected to significant economic impact, worry, distress, and continuing economic and physical damage. Because of Defendants' delays, denials, and underpayment, Plaintiffs have been unable to make necessary repairs to the Property which has resulted in further damages to the Property, including additional interior and roof damage, among others.   In addition, Plaintiffs have suffered financial harm and damage as a result

of Defendants' denials and repeated delays. The significant effect of Defendants'

wrongful and unjustified delays, however, is still uncompensated.

### FIRST CAUSE OF ACTION---Violations of Texas Insurance Code

5.1     Plaintiffs re-allege and incorporate each allegation contained in Paragraphs

1-4.7 of this Petition as if fully set forth herein.

5.2     Peleus, Engle Martin, and Kirn failed to attempt to effectuate a prompt, fair,

and equitable settlement of a claim with respect to which liability has become

reasonably clear, in violation of Texas Insurance Code Section 541.060 (a)(2)(A).

5.3     Peleus, Engle Martin, and Kirn failed to adopt and implement reasonable

standards for prompt investigation of claims arising under its policies.

5.4     Peleus, Engle Martin, and Kirn failed to provide promptly a reasonable

explanation, in relation to the facts or applicable law, for the denial of a claim, in

violation of Texas Insurance Code Section 541.060 (a)(3).

5.5     Peleus, Engle Martin, and Kirn refused to pay a claim without conducting a

reasonable investigation with respect to the claim, in violation of Texas Insurance

Code Section 541.060 (a)(7).

5.6     Peleus, Engle Martin, and Kirn misrepresented the insurance policy under

which it affords Property coverage to Plaintiffs, by making an untrue statement of

material fact, in violation of Texas Insurance Code Section 541.061 (1). Peleus, Engle

Martin, and Kirn misrepresented the insurance policy to Plaintiffs, by making an

untrue statement of material fact, in violation of Texas Insurance Code Section

541.061 (1).

5.7    Peleus, Engle Martin, and Kirn misrepresented the insurance policy under which it affords Property coverage to Plaintiffs, by failing to state a material fact that is necessary to make other statements made not misleading, in violation of Texas Insurance Code Section 541.061 (2).    Peleus, Engle Martin, and Kirn misrepresented the insurance policy to Plaintiffs by failing to state a material fact that is necessary to make other statements made not misleading, in violation of Texas Insurance Code Section 541.061 (2).

5.8    Peleus, Engle Martin, and Kirn misrepresented the insurance policy under which it affords Property coverage to Plaintiffs, by making a statement in such manner as to mislead a reasonably prudent person to a false conclusion of material fact, and failing to disclose a matter required by law to be disclosed, in violation of Texas Insurance Code Section 541.061 (3) and Texas Insurance Code Section 541.002 (1). Peleus, Engle Martin, and Kirn misrepresented the insurance policy to Plaintiffs by making a statement in such manner as to mislead a reasonably prudent person to a false conclusion of material fact, and failing to disclose a matter required by law to be disclosed, in violation of Texas Insurance Code Section 541.061 (3) and Texas Insurance Code Section 541.002 (1).

5.9    Peleus, Engle Martin, and Kirn knowingly committed the foregoing acts, with actual knowledge of the falsity, unfairness, or deception of the foregoing acts and practices, in violation of Texas Insurance Code Section 541.002 (1).

### SECOND CAUSE OF ACTION---Prompt Payment of Claim

6.1     Plaintiffs re-allege and incorporate each allegation contained in Paragraphs 1-5.9 of this Petition as if fully set forth herein.

6.2     Peleus, Engle Martin, and Kirn failed to acknowledge receipt of the claim in violation of Texas Insurance Code Section 542.055 (a)(1).

6.3     Peleus, Engle Martin, and Kirn failed to timely commence investigation of the claim or to request from Plaintiffs any additional items, statements or forms that Peleus, Engle Martin, and Kirn reasonably believe to be required from Plaintiffs in violation of Texas Insurance Code Section 542.055 (a)(2)-(3).

6.4     Peleus, Engle Martin, and Kirn failed to notify Plaintiffs in writing of the acceptance or rejection of the claim not later than the 15th business day after receipt of all items, statements and forms required by Peleus, Engle Martin, and Kirn in violation of Texas Insurance Code Section 542.056(a).

6.5     Peleus, Engle Martin, and Kirn delayed payment of Plaintiffs' claim in violation of Texas Insurance Code Section 542.058(a).

### THIRD CAUSE OF ACTION---Statutory Interest

7.1     Plaintiffs re-allege and incorporate each allegation contained in Paragraphs 1-6.5 of the Petition as if fully set forth herein.

7.2     Plaintiffs make a claim for penalties of 18% statutory interest on the amount of the claims along with reasonable attorneys' fees for violation of Texas Insurance Code Subchapter B pursuant to Texas Insurance Code Section 542.060.

## FOURTH CAUSE OF ACTION---Breach of Contract

8.1     Plaintiffs re-allege and incorporate each allegation contained in Paragraphs 1-7.2 of the Petition as if fully set forth herein.

8.2     Peleus breached its contracts with Plaintiffs.   As a result of Carrier's breaches, Plaintiffs suffered legal damages.

## FIFTH CAUSE OF ACTION---Breach of duty of good faith & fair dealing

9.1     Plaintiffs re-allege and incorporate each allegation contained in Paragraphs 1-8.2 of the Petition as if fully set forth herein.

9.2     Peleus, as the property coverage insurer, had a duty to deal fairly and in good faith with Plaintiffs in the processing of the claim.   Peleus breached this duty by refusing to properly investigate and effectively denying insurance benefits. Peleus knew or should have known that there was no reasonable basis for denying or delaying the required benefits.   As a result of Carrier's breach of these legal duties, Plaintiffs suffered legal damages.

## SIXTH CAUSE OF ACTION---Punitive Damages for Bad Faith

10.1    Plaintiffs re-allege and incorporate each allegation contained in Paragraphs 1-9.2 of this Petition as if fully set for herein.

10.2    Peleus, Engle Martin, and Kirn acted fraudulently and with malice (as that term is legally defined) in denying Plaintiffs' claim for benefits.   Further, Peleus, Engle Martin, and Kirn had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of Plaintiffs.

## SEVENTH CAUSE OF ACTION---Violations Of Texas DTPA

11.1    Plaintiffs re-allege and incorporate each allegation contained in Paragraphs 1-10.2 of this Complaint as if fully set forth herein.

11.2    The Deceptive Trade Practices-Consumer Protection Act (DTPA) provides additional protections to consumers who are victims of deceptive, improper, or illegal practices.  Defendants' violations of the Texas Insurance Code create a cause of action under the DTPA.  Defendants' violations of the Texas Insurance Code, as set forth herein, specifically violate the DTPA as well.

## KNOWLEDGE

12.1    Each of the actions described herein were done "knowingly" as that term is used in the Texas Insurance Code and were a producing cause of Plaintiffs' damages.

## RESULTING LEGAL DAMAGES

13.1    Plaintiffs are entitled to the actual damages resulting from the Defendants' violations of the law.  These damages include the consequential damages to its economic welfare from the wrongful denial and delay of benefits; the mental anguish and physical suffering resulting from this wrongful denial of benefits, and continued impact on Plaintiffs; lost credit reputation; and the other actual damages permitted by law.  In addition, Plaintiffs are entitled to exemplary damages.

13.2    As a result of Defendants' acts and/or omissions, Plaintiffs have sustained damages in excess of the minimum jurisdictional limits of this Court.

13.3    Plaintiffs are entitled under law to the recovery of prejudgment interest at the maximum legal rate.

13.4    Defendants' knowing violations of the Texas Insurance Code and DTPA entitle Plaintiffs to the attorneys' fees, treble damages, and other penalties provided by law.

13.5    Plaintiffs are entitled to statutory interest on the amount of its claim at the rate of 18% per year as damages under the Texas Insurance Code §542.060(a).

13.6    Plaintiffs are entitled to the recovery of attorneys' fees pursuant to Tex. Civ. Prac. & Rem. Code §38.001, the Texas Insurance Code §542.060(a)-(b), the Tex. Bus & Commerce Code §17.50 and Tex. Civ. Prac. & Rem. Code §37.009.

### Prayer

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully requests that Plaintiffs have judgment against Defendants for actual damages in excess of the minimum jurisdictional limits of this Court, pre- and post-judgment interest as allowed by law, costs of suit, and all other relief, at law or in equity, to which Plaintiffs may be entitled.

Respectfully submitted,

RAIZNER SLANIA, LLP

_____
JEFFREY L. RAIZNER
State Bar No. 00784806
ANDREW P. SLANIA
State Bar No. 24056338
AMY BAILEY HARGIS

State Bar No. 24078630
efile@raiznerlaw.com
2402 Dunlavy Street
Houston, Texas 77006
Phone:  713.554.9099
Fax:  713.554.9098

**ATTORNEYS FOR PLAINTIFFS**

### JURY DEMAND

*Plaintiffs hereby demands a trial by jury, a right enshrined in the Constitution of the United States of America and the State of Texas and preserved by the sacrifices of many. The necessary jury fee has been paid.*

_____
JEFFREY L. RAIZNER

## DISCLOSURE STATEMENT

A PORTION OF THIS INSURANCE CONTRACT IS WITH INSURERS NOT LICENSED TO TRANSACT INSURANCE IN THIS STATE AND IS ISSUED AND DELIVERED AS SUPLUS LINE COVERAGE UNDER THE VARIOUS STATES' INSURANCE STATUTES.  THE VARIOUS STATE REGULATORY AGENCIES DO NOT AUDIT THE FINANCES OR REVIEW THE SOLVENCY OF THE SURPLUS LINES INSURERS PROVIDING THE COVERAGE AND THE INSURERS ARE NOT A MEMBER OF ANY PROPERTY AND CASUALTY INSURANCE GUARANTY ASSOCIATION CREATED UNDER STATE STATUTES.  SUCH STATUTES REQUIRE PAYMENT OF A STATE SUPLUS LINES TAX ON GROSS PREMUMS AND FEES.  A PORTION OF THE PAYMENT MADE BY THE INSURED INCLUDES FUNDING OF A SELF-FUNDED AGGREGATE DEDUCTIBLE ACCOUNT USED TO PAY CLAIMS AND IS NOT TAXED.  THE LOSSES OF ALL INSURED CERTIFICATE HOLDERS CONTRIBUTE TO THE EROSION OF THE AGGREGATE GROUP DEDUCTIBLE. ANY UNUSED FUNDS WITHIN THE SELF-FUNDED AGGREGATE DEDUCTIBLE ACCOUNT ARE NOT RETURNED TO THE INSURED.

STRATA UNDERWRITING MANAGERS IS THE UNDERWRITING MANAGER FOR THE PLACEMENT OF THE MASTER POLICIES AND THE ADMINISTRATOR OF THE INSURANCE PROGRAMS.  STRATA UNDERWRITING MANAGERS RECEIVES COMMISSIONS AND FEES RELATED TO THE INSURANCE PROGRAMS.

RESTRICTIVE TERMS PRESCRIBED IN THE DECLARATIONS CERTIFICATE FOR AN INDIVIDUAL INSURED SUPERSEDE ANY INCONSISTENT TERMS CONTAINED IN THE MASTER POLICIES, INCLUDING BUT NOT LIMITED TO ANY TERMS ESTABLISHING OR RESTRICTING COVERAGE AND DEDUCTIBLES.

EXHIBIT "A"

# Peleus Insurance Company
## 8720 Stony Point Parkway, Suite 400
## Richmond, VA 23235

| IMPORTANT NOTICE | AVIDO IMPORTANTE |
|---|---|
| To obtain information or make a complaint: | Para obtener informacion o para someter una queja: |
| You may contact your agent or you may call **Peleus Insurance Company** for information or to make a complaint at: | Puede comunicarse con su agente o Usted puede llamar al numero de **Peleus Insurance Company** para informacion o para someter una queja al: |
| **1-877-474-8808** | **1-877-474-8808** |
| You may also write to **Peleus Insurance Company** at: | Usted tambien puede escribir a **Peleus Insurance Company** al: |
| **Peleus Insurance Company**<br>**P. O. Box 469012**<br>**San Antonio, TX 78246** | **Peleus Insurance Company**<br>**P. O. Box 469012**<br>**San Antonio, TX 78246** |
| You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at: | Puede comunicarse con el Departemento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al: |
| **1-800-252-3439** | **1-800-252-3439** |
| You may write the Texas Department of Insurance at: | Puede escribir al Departamento de Seguros de Texas al: |
| **P.O. Box 149104**<br>**Austin, TX 78714-9104**<br>**FAX # (512) 475-1771**<br>**Web: http//www.tdi.state.tx.us**<br>**E-mail:  ConsumerProtection@tdi.state.tx.us** | **P.O. Box 149104**<br>**Austin, TX 78714-9104**<br>**FAX # (512) 475-1771**<br>**Web: http//www.tdi.state.tx.us**<br>**E-Mail: ConsumerProtection@tdi.state.tx.us** |
| **PREMIUM OR CLAIM DISPUTES:** | **DISPUTAS SOBRE PRIMAS O RECLAMOS:** |
| Should you have a dispute concerning your premium or about a claim, you should contact your agent or the company first.  If the dispute is not resolved, you may contact the Texas Department of Insurance. | Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el agente o la compania priomero.  Si no se resuelve las disputa, puede entonces comunicarse con el departamento (TDI). |
| **ATTACH THIS NOTICE TO YOUR POLICY** | **UNA ESTE AVISO A SU POLIZA** |
| This notice is for information only and does not become a part or condition of the attached document. | Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto. |

# Peleus Insurance Company
## 8720 Stony Point Parkway, Suite 400
## Richmond, VA 23235

## ASBESTOS EXCLUSION
## ADVISORY NOTICE TO POLICYHOLDER

This Notice does not form a part of your insurance contract. No coverage is provided by this Notice, nor can it be construed to replace any provisions of your Policy (including its endorsements). If there is any conflict between this Notice and the Policy (including its endorsements), the provisions of the Policy (including its endorsements) shall prevail.

Carefully read your Policy, including the endorsements attached to your Policy.

This Notice provides information concerning the following form, which applies to your new or renewal Policy being issued by the Company:

NC R2 38 04 13 EXCLUSION OF POLLUTANTS AND ASBESTOS FORM

This form makes an explicit statement regarding a risk that is not covered under your Commercial Property insurance. It points out that there is no coverage under such insurance for loss or damage caused by or resulting from asbestos, subject to a narrow exception that provides certain asbestos coverage limited to $10,000 in the aggregate for any one Insured Location in any one Policy period. The exclusion in this form applies to all coverages provided by your Commercial Property insurance, including (if any) property damage and business income coverages.

# Peleus Insurance Company
## 8720 Stony Point Parkway, Suite 400
## Richmond, VA 23235

NC R0 02 04 15

## INDEX OF FORMS

| | |
|---|---|
| Index of Forms | NC R0 02   04 15 |
| Property Coverage Form | NC R1 00   04 14 |
| Business Income Coverage Form Including Extra Expense | NC R1 01   04 15 |
| Earthquake, Volcanic Eruption, Landslide and Mine Subsidence | NC R2 04   04 14 |
| Flood | NC R2 06   04 14 |
| Exclusion of Pollutants and Asbestos | NC R2 38   04 13 |
| Exclusion of Nuclear Energy Risks, War/ Military Action, Electronic Data & others | NC R2 39   04 15 |
| Exclusion Terrorism and Governmental Action | NC R2 40   04 15 |
| Exclusion of Loss Due to Virus or Bacteria | NC R2 42   04 13 |
| General Conditions | NC R5 02   04 15 |
| Replacement Cost | NC R5 05   04 13 |
| High Hazard Wind Counties | NC R6 06   04 14 |
| High Hazard Earthquake, Volcanic Eruption, Landslide Counties | NC R6 09   04 13 |
| Exclusion Certain Computer Losses Due to Dates or Times | NC R8 02   04 13 |
| Clarification of applicable Limits, Deductibles, Terms and Conditions | Endorsement #1 |
| Protective Safeguards Endorsement | Endorsement #2 |
| Minimum Earned Premium for High Hazard Wind Locations | Endorsement #3 |

1
EXHIBIT "A"

# Peleus Insurance Company
## 8720 Stony Point Parkway, Suite 400
## Richmond, VA 23235

NC R1 00 04 14

**PROPERTY COVERAGE FORM**

Various provisions in this Policy restrict coverage. Read the entire Policy, including any endorsements, carefully to determine rights, duties and what is and is not covered. Words and phrases that appear in quotation marks have special meaning; refer to Section G. (Definitions).

**A. INSURING AGREEMENT:** The Company will pay for direct physical loss or damage to Covered Property at an Insured Location as described in the most recent Statement of Values or other documentation on file with the Company, caused by or resulting from a Covered Cause of Loss. Notwithstanding any other provision in this Policy, the Company will not pay for loss to Covered Property due to any "Diminution in Value", whether the Covered Property is repaired, partially repaired or not repaired.

**B. COVERAGE:** Coverage is provided for Covered Property and Covered Costs and Expenses, as described in Sections B.1. and B.2., for which the Named Insured has an insurable interest, unless excluded in Section C. (Property and Costs Not Covered). Coverage applies only when a Sublimit of Insurance is shown in the Supplemental Coverage Declarations for the specific type of Covered Property or Covered Costs and Expenses, except for Sections B.2. a., d., e., g. h. and i. which do not require a specific Sublimit of Insurance to be shown.

1. **COVERED PROPERTY**

   a. **Building(s)** means the buildings or other structures at the Insured Location, including:

      (1) Completed additions including garages and detached carports.
      (2) Fixtures, including outdoor fixtures;
      (3) Machinery and equipment permanently attached to the building;
      (4) Personal property owned by the Named Insured that is used to maintain or service the buildings, structures or grounds; and
      (5) If not covered by other insurance:
         (a) Additions under construction, alterations and repairs to the buildings or structures; and
         (b) Materials, equipment, supplies and temporary structures, on or within 1,000 feet of the Insured Location, used for making alterations or repairs to the buildings or structures.

   Building(s) do not include "Outdoor Property" except as provided in Section B.1.h.

   b. **Business Personal Property** located in or on the Buildings at the Insured Location or in the open (or in a vehicle) within 1,000 feet of the Insured Location, consisting of the following unless otherwise specified in the Supplemental Coverage Declarations:

      (1) Furniture and fixtures;
      (2) Machinery and equipment;
      (3) "Stock";
      (4) All other personal property owned by the Named Insured and used in the Named Insured's business;
      (5) Labor, materials or services furnished or arranged by the Named Insured on personal property of others;
      (6) The Named Insured's use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:
         (a) Made a part of the buildings or structures occupied or leased, but not owned, by the Named Insured; and
         (b) Acquired or made at the Named Insured's expense but which the Named Insured is not permitted to remove.

   Business Personal Property does not include:

      (1) "Electronic Data Processing Equipment" or "Electronic Data Processing Data and Media" except as provided in Section B.1.c.;
      (2) Accounts Receivable except as provided in Section B.1.d.;

2
EXHIBIT "A"

**Peleus Insurance Company**
**8720 Stony Point Parkway, Suite 400**
**Richmond, VA 23235**

(3) Valuable Papers except as provided in Section B.1.e.; or
(4) "Fine Arts" except as provided in Section B.1.f.

c. **"Electronic Data Processing Equipment" and "Electronic Data Processing Data and Media":** This insurance applies to loss or damage to "Electronic Data Processing Equipment" and "Electronic Data Processing Data and Media" at or within 1,000 feet of the Insured Location.

d. **Accounts Receivable:** This insurance applies to loss or damage to the accounts receivable records of the Named Insured while at or within 1,000 feet of the Insured Location, including records stored on Electronic Data Processing Media. Credit card company charge records will be considered accounts receivable records until delivered to the credit card company.

   (1) The Company will pay:
      (a) Amounts due the Named Insured from customers that the Named Insured is unable to collect because of loss or damage to the Named Insured's accounts receivable records;
      (b) Interest charges on any loan required to offset amounts the Named Insured is unable to collect because of loss or damage to the Named Insured's accounts receivable records, pending the Company's payment of these amounts;
      (c) Collection expenses in excess of the Named Insured's normal collection expenses that are made necessary by the loss; and
      (d) Other reasonable expenses that the Named Insured incurs to re-establish the Named Insured's records of Accounts Receivable.

   (2) The following additional exclusions apply to Accounts Receivable:

      The Company will not pay for loss or damage caused by or resulting from any of the following:
      (a) Bookkeeping, accounting or billing errors or omissions; and
      (b) Alteration, falsification, manipulation, concealment, destruction or disposal of records of accounts receivable committed to conceal the wrongful giving, taking, obtaining or withholding of money, securities or other property but only to the extent of such wrongful giving, taking, obtaining or withholding.

   (3) The Company will not pay for loss or damage that requires an audit of records or any inventory computation to prove its factual existence.

   (4) In the event the Named Insured cannot accurately establish the amount of Accounts Receivable outstanding as of the time of loss, the following method will be used:

      (a) The Company will determine the total of the average monthly amounts of Accounts Receivable for the twelve (12) months immediately preceding the month in which the loss occurs;
      (b) The Company will adjust the total for any normal fluctuations in the amounts of Accounts Receivable for the month in which the loss occurred or for any demonstrated variance from the average for that month; and
      (c) The following will be deducted from the total amount of Accounts Receivable, however that amount is established:
         (i) The amount of the accounts for which there is no loss;
         (ii) The amount of the accounts that the Named Insured is able to re-establish or collect;
         (iii) An amount to allow for probable bad debts that the Named Insured is normally unable to collect; and
         (iv) All unearned interest and service charges.

e. **Valuable Papers and Records:** This insurance applies to loss or damage to Valuable Papers and Records while at or within 1,000 feet of the Insured Location. Coverage does not apply to Valuable Papers and Records that exist on electronic data processing media.

f. **"Fine Arts":** This insurance applies to loss or damage to "Fine Arts" while at or within 1,000 feet of the Insured Location.

g. **Newly Constructed or Acquired Property:** This insurance applies to:

3
EXHIBIT "A"

## Peleus Insurance Company
## 8720 Stony Point Parkway, Suite 400
## Richmond, VA 23235

(1) New buildings while being built at an Insured Location or on a newly acquired location including materials, equipment, supplies and temporary structures which are at or within 1,000 feet of the premises;
(2) Buildings newly acquired by the Named Insured at locations other than an Insured Location;
(3) Buildings the Named Insured becomes newly required to insure under a written contract; and
(4) Personal Property of a type insured under this Policy at or within 1,000 feet of a newly acquired building or a newly acquired location.

Insurance under this Coverage for each newly constructed or acquired property will end when any of the following first occurs:
(1) This Policy is cancelled, terminates or expires;
(2) 90 days expire after the Named Insured acquires, begins to construct the building(s), or becomes newly required to insure the building(s) under a written contract;
(3) The Named Insured reports the new values to the Company; or
(4) The property is more specifically insured elsewhere.

The Company will charge the Named Insured additional premium for values reported from the date construction begins or the Named Insured acquires the property.

h. **"Outdoor Property"**: This insurance applies to "Outdoor Property" at the Insured Location for loss or damage only by the following Covered Causes of Loss:

(1) Fire;
(2) Lightning;
(3) Explosion;
(4) Riot or civil commotion;
(5) Vandalism or malicious mischief; or
(6) Aircraft or vehicles.

This insurance also applies to the necessary and reasonable expense incurred by the Named Insured to remove debris of "Outdoor Property" at the Insured Location caused by or resulting from a Covered Cause of Loss listed above that occurs during the Policy period. Such expenses will be paid only if reported to the Company in writing within 180 days of the date of direct physical loss or damage. This will not increase the Sublimit of Insurance that applies to "Outdoor Property".

i. **Personal Effects of Officers and Employees of the Named Insured:** This insurance applies to the Personal Effects and "Fine Arts" owned by officers, partners or employees of the Named Insured. Such property must be located at or within 1,000 feet of the Insured Location. Payment for loss or damage to Personal Effects and "Fine Arts" will only be for the account of the owner of the property.

j. **Covered Property At Undescribed Premises:** This insurance applies to:

(1) Covered Property at an "Exhibition" including while in transit to and from the "Exhibition" site. Coverage for this property applies worldwide except within any country on which the United States government has imposed sanctions, embargoes or any other similar prohibitions.
(2) Covered Property that will or has become a permanent part of an installation project being performed for others by the Named Insured, or on the Named Insured's behalf, while such property is at the installation premises or at other premises where the property is temporarily stored. Coverage for this installation property applies only within the Policy Territory and will apply only until the Named Insured's interest in the property ceases, the installation is accepted, the installation is abandoned, or this Policy expires, terminates, or is cancelled, whichever occurs first.
(3) Covered Property at any other premises within the Policy Territory which are not listed on the latest Statement of Values submitted to and accepted by the Company.

This Coverage does not apply to Personal Effects of Officers and Employees of the Named Insured, property while in transit, while waterborne, covered under Newly Constructed and Acquired Property, or otherwise covered elsewhere in this Policy or any other policy issued by the Company to the Named Insured.

4
EXHIBIT "A"

**Peleus Insurance Company**
**8720 Stony Point Parkway, Suite 400**
**Richmond, VA 23235**

**k. Covered Property in Transit:** This insurance applies to Covered Property in due course of transit to or from the Insured Location between points within the Policy Territory, including inland and coastal waters and air space. This Coverage will attach when the Covered Property leaves the initial point of shipment and will continue until the property is delivered at its destination.   In the event the Covered Property is not deliverable or is rejected by the consignee, such property will be covered while in due course of transit back to the Named Insured and while temporarily being held by the receiver or carrier awaiting its return to the Named Insured.

The Company will also pay for:
(1) Any general average or salvage charges incurred by the Named Insured as respects losses to waterborne shipments.
(2) The Named Insured's contingent interest in shipments sold on a F.O.B. (Free On Board) basis but only in the event that any loss recoverable hereunder is not collectible from the consignee or any other insurance.
(3) Loss of Covered Property occasioned by the unintentional acceptance of fraudulent bills of lading, shipping receipts or messenger receipts by the Named Insured or any agent, customer or consignee of the Named Insured.

This Coverage does not apply to:
(1) Shipments by a government postal service except by registered mail;
(2) Any export shipment once the earlier of the following occurs:
    (a) The shipment is placed on the export conveyance; or
    (b) Coverage under an Ocean Marine or other insurance policy covering the shipment begins;
(3) Any import shipment until the later of the following occurs:
    (a) The shipment is unloaded from the importing vessel or conveyance; or
    (b) Coverage under an Ocean Marine or other insurance policy covering the shipment ends;
(4) Theft from a conveyance or container while unattended unless the portion of the conveyance or container containing the Covered Property is fully enclosed and securely locked, and the theft is by forcible entry of which there is visible evidence;
(5) Property of others for which the Named Insured is responsible while acting as a common or contract carrier, freight forwarder, freight consolidator, freight broker or public warehouseman; or
(6) Personal Effects of Officers and Employees of the Named Insured or to Covered Property in due course of transit to or from an "Exhibition".

**2. COVERED COSTS AND EXPENSES**

**a. Debris Removal**

(1) The Company will pay the necessary and reasonable expense incurred by the Named Insured to remove debris of Covered Property, other than "Outdoor Property", caused by or resulting from a Covered Cause of Loss that occurs during the Policy period. Such expenses will be paid only if reported to the Company in writing within 180 days of the date of direct physical loss or damage.  Coverage for the expense to remove debris of "Outdoor Property" is provided separately under Section B.1.h. of this Coverage Form.

(2) For this Debris Removal Coverage, the Company will pay up to 25% of:
    (a) The amount the Company pays for the direct physical loss or damage to the Covered Property; plus
    (b) The deductible in this Policy applicable to that direct physical loss or damage.

    This limit is part of and not in addition to the Limit of Insurance that applies to the lost or damaged Covered Property.

(3) In no event will this Debris Removal Coverage apply to:
    (a) Costs to extract "Pollutants" from land or water; or
    (b) Costs to remove, restore or replace polluted land or water.

# Peleus Insurance Company
## 8720 Stony Point Parkway, Suite 400
## Richmond, VA 23235

b. **Pollutant Cleanup and Removal:** See Exclusion of Pollutants and Asbestos Form (NC R2 38 04 13) that is included in this Policy.

c. **Claim Data Expense:** The Company will pay the reasonable expenses incurred by the Named Insured in preparing claim data required by the Company. This includes the cost of taking inventories, making appraisals and preparing other documentation to show the extent of loss. The Company will not pay for any expenses incurred, directed, or billed by or payable to public insurance adjusters or their associates or subsidiaries, or any costs as provided in the General Conditions - Section C.( Appraisal).

d. **Fire Department Service Charge:** When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, the Company will pay for any fire department service charges incurred by the Named Insured that are:

    (1) Assumed by contract or agreement prior to loss; or
    (2) Required by local ordinance.

e. **Fire Protective Equipment Discharge:** If fire protective equipment discharges accidentally or to control a Covered Cause of Loss, the Company will pay the Named Insured's cost to:

    (1) Refill or recharge the system with the extinguishing agents that were discharged; and
    (2) Replace or repair faulty valves or controls that caused the discharge.

f. **Ordinance or Law:** If a Covered Cause of Loss causes direct physical loss or damage to Covered Property, and such direct physical loss or damage alone and directly causes the enforcement of an ordinance or law in force at the time of loss regulating the construction or repair of buildings or establishing zoning or land use requirements at the Insured Location, the Company will pay for:

    (1) **The loss to the undamaged portion of a covered building** at the Insured Location caused by such enforcement that requires the demolition of parts of the same property not damaged by a Covered Cause of Loss.

    The most the Company will pay for loss or damage under this portion of Ordinance or Law coverage is the Sublimit of Insurance specified for Ordinance or Law – Undamaged Portion shown in the Supplemental Coverage Declarations.

    (2) **The cost to demolish and clear the site of undamaged parts of the covered building** caused by such enforcement.

    The Company will not pay more for loss or damage under this portion of Ordinance or Law coverage than the lesser of:
        (a) The amount the Named Insured actually spends to demolish and clear the site; or
        (b) The Sublimit of Insurance specified for Ordinance or Law – Demolition shown in the Supplemental Coverage Declarations.

    (3) **The increased cost of repair or reconstruction of the Covered Property** caused by such enforcement when the Covered Property is insured for replacement cost. If the covered building is repaired or reconstructed, it must be intended for similar occupancy as the current building, unless otherwise required by zoning or land use ordinance or law.

    The Company will not pay for increased construction costs until the Covered Property is actually repaired or reconstructed, at the same location or elsewhere, and unless the repair or replacement made as soon as reasonably possible but not to exceed 365 days after the loss or damage occurs.

    The most the Company will pay for loss or damage under this portion of Ordinance or Law coverage is the increased cost of repair or reconstruction:
        (a) Of a building of the same size and at the same premises, or another premises if required by the ordinance or law; and
        (b) Limited to the minimum requirements of such ordinance or law regulating the repair or reconstruction of the damaged property on the same site, which is not to exceed the Sublimit of Insurance specified for Ordinance or Law – Increased Cost of Construction shown in the Supplemental Coverage Declarations.

EXHIBIT "A"

**Peleus Insurance Company**
**8720 Stony Point Parkway, Suite 400**
**Richmond, VA 23235**

(4) Ordinance or Law Coverages do not apply to:

    (a) "Vacant" buildings.

    (b) Any loss due to the Named Insured's failure to comply with any ordinance or law that the Named Insured was required to comply with before the loss, even if the Covered Property was undamaged.

    (c) Costs associated with the enforcement of any ordinance or law that requires the Named Insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "Pollutants".

    (d) Costs associated with the enforcement of an ordinance or law where such enforcement is not the direct result of direct physical loss or damage to Covered Property, even if the enforcement of the ordinance or law results from an inspection of the Covered Property that sustained a Covered Cause of Loss.

**g.** **Preservation of Property:** If it becomes necessary to move Covered Property from an Insured Location to preserve it from loss or damage by a Covered Cause of Loss, the Company will pay for:

    (1) The necessary and reasonable expenses actually incurred by the Named Insured to remove the Covered Property from an Insured Location and to move the Covered Property back to an Insured Location; and

    (2) Any direct physical loss or damage to Covered Property while it is being moved from an Insured Location, while temporarily stored at another location or while it is being moved back to an Insured Location.

However, this Coverage will apply only if the loss or damage occurs within ninety (90) days after the property is first moved and will cease when the Policy is amended to provide insurance at the new location, the property is returned to the existing Insured Location, or this Policy is cancelled, terminates, or expires, whichever occurs first.

**h.** **Protection of Property:** The Company will pay the necessary and reasonable expenses actually incurred by the Named Insured to temporarily safeguard Covered Property against the threat of imminent direct physical loss or damage by a Covered Cause of Loss. This Coverage does not apply to any expenses to which the above Preservation of Property coverage applies.

**i.** **Water, Other Liquids, Powder or Molten Material Damage:** If covered loss or damage caused by or resulting from water or other liquid, powder or molten material damage occurs, the Company will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

When a Sublimit of Insurance is specified in the Supplemental Coverage Declarations for Water, Other Liquids, Powder or Molten Material Damage, that Sublimit of Insurance is the most the Company will pay under this Coverage. Otherwise, this coverage is provided subject to the Sublimit of Insurance that applies to the covered water or other liquid, powder or molten material damage loss.

**C. PROPERTY AND COSTS NOT COVERED:** Unless the following property or costs are added by endorsement to this Policy, Covered Property and Covered Costs and Expenses do not include:

1. Currency, deeds or other evidences of debt, money, notes, checks, drafts, or securities;

2. Contraband or property in the course of illegal transportation or trade;

3. Water whether in its natural state or otherwise, above or below ground (except water normally contained in plumbing, the process of manufacture or fire protection equipment), watercourses, aquifers or the cost of reclaiming or restoring water;

4. Land whether in its natural state or otherwise (including land on which the property is located), land improvements, grain, hay straw or other harvested crops while outside of buildings, growing crops or standing timber;

5. The cost of excavations, grading, backfilling or filling;

6. Property sold by the Named Insured under an installment plan, conditional sale, trust agreement or other deferred payment plan after delivery to the purchasers;

7

EXHIBIT "A"

# Peleus Insurance Company
## 8720 Stony Point Parkway, Suite 400
## Richmond, VA 23235

7. Vehicles or self-propelled machines that:
   (a) Are licensed for use on public roads; or
   (b) Are operated principally away from the Insured Location;

8. Aircraft or watercraft;

9. Live animals or birds;

10. Bulkheads, pilings, piers, wharves, docks, dikes, dams, canals, sea walls or vehicular bridges;

11. Underground tanks, pipes, flues, drains or tunnels, all whether or not connected to buildings, mines or mining property;

12. Any "Electronic Data Processing Data and Media" which is obsolete or unused by the Named Insured;

13. Transmission and Distribution Lines and their lead-in wiring, masts, or towers;

14. Property that is covered under another coverage form or endorsement of any other policy in which it is more specifically described, except for the excess of the amount due (whether the Named Insured can collect on it or not) from that other insurance;

15. Any of the specific types of Covered Property described in Sections B.1.a. through B.1.k. of this Coverage Form for which a Sublimit of Insurance is not shown in the Supplemental Coverage Declarations;

16. Any of the following Covered Costs and Expenses for which a Sublimit of Insurance is not shown in the Supplemental Coverage Declarations:

    a. Pollutant Clean Up and Removal, as described in Form NC R2 38 04 13 (EXCLUSION OF POLLUTANTS AND ASBESTOS FORM) included in this Policy;

    b. Claim Data Expense, as described in Section B.2.c.; or

    c. Ordinance or Law, as described in Section B.2.f.

17. The costs to repair or replace pre-existing loss or damage to any building or structure, or any resulting loss or damage, at any property where such pre-existing loss or damage was caused by, resulted from, or was contributed to by, any cause of loss, whether covered or uncovered, occurring prior to an Occurrence.

## D. EXCLUSIONS

1. The Company will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

   a. **EARTH MOVEMENT**

      (1) Any earth movement (other than "Sinkhole Collapse") including earthquake, mine subsidence, landslide, erosion, the expansion or contraction of soil due to the presence of moisture or water, or the lack thereof, and any other earth sinking, rising, shifting or movement, all whether naturally occurring or due to manmade or other artificial causes.

      However, if earth movement results in fire or explosion, the Company will pay for the loss or damage caused by that fire or explosion.

      (2) Volcanic eruption, explosion or effusion. However, if volcanic eruption, explosion or effusion results in "Volcanic Action" or fire, the Company will pay for the loss or damage caused by that "Volcanic Action" or fire.

      All "Volcanic Action" that results from all volcanic eruptions or explosions that occur within any 168 consecutive hour period will constitute a single Occurrence.

   b. **FLOOD:** Flood meaning:

      (1) Flood, surface water, rising water, underground water, waves, tides, tidal waves, tsunamis, overflow of any body of water, or their spray, all whether driven by wind or not ;

8
EXHIBIT "A"

## Peleus Insurance Company
## 8720 Stony Point Parkway, Suite 400
## Richmond, VA 23235

(2) Mudslide or mudflow;
(3) Release of water impounded by a dam, levee or dike or by a water or flood control device;
(4) Water or sewage which backs up through sewers, drains or sumps;
(5) The rising, overflowing or breaking of boundaries of natural or manmade bodies of water; or
(6) The release of water caused by the Acts, Errors or Omissions by you or others in the design, specifications, workmanship, repair, construction, or renovation of all or any part of a water or flood control device, levee, dam or dike.

all whether naturally occurring or due to manmade or other artificial causes.

This exclusion will not apply to direct loss or damage from resulting fire, explosion or leakage from fire protective equipment; however, the Company will be liable only for such resulting loss or damage.

**c.** **GOVERNMENTAL ACTION:** Seizure or destruction of property by order of governmental authority except as provided for under Covered Costs and Expenses in Section B.2.f., Ordinance or Law.

However, the Company will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Form.

**d.** **NUCLEAR HAZARD:** See Sections DA, F, G, and H in the Exclusion Of Nuclear Energy Risks, War And Military Action, Electronic Data, Nuclear Hazard, Biological Agents, Toxic Materials and Radioactive Contamination Form (NC R2 39 04 13) that is included in this Policy.

**e.** **WAR AND MILITARY ACTION:** See Section B., War And Military Action Exclusion Clause, in the Exclusion Of Nuclear Energy Risks, War And Military Action, Electronic Data, Nuclear Hazard, Biological Agents, Toxic Materials And Radioactive Contamination Form (NC R2 39 04 13) that is included in this Policy.

**f.** **ELECTRONIC DATA AND COMPUTER VIRUS:** See Exclusion Of Nuclear Energy Risks, War And Military Action, Electronic Data, Nuclear Hazard, Biological Agents, Toxic Materials And Radioactive Contamination Form (NC R2 39  04 13) that is included in this Policy.

**g.** **PROGRAMMING ERRORS OR OMISSIONS:** Programming errors, omissions or incorrect instructions to a machine.

**h.** **ORDINANCE OR LAW:** The enforcement of any ordinance or law:

(1) Regulating the construction, use or repair of any property; or
(2) Requiring the tearing down of any property, including the cost of removing its debris;

except as provided in Covered Costs and Expenses in Section B.2.f. (Ordinance or Law).

The Ordinance or Law exclusion applies whether the loss results from an ordinance or law that is enforced even if the property has not been damaged; or from the increased costs incurred to comply with an ordinance or law in the course of repair, construction, reconstruction, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

**i.** **COLLAPSE OF BUILDINGS:** Collapse of buildings meaning an abrupt falling down or caving in of a building or substantial portion of a building with the result being that the building or substantial portion of a building cannot be occupied for its intended purpose.

(1) This exclusion will not apply to collapse of buildings if the collapse is caused by one or more of the following:

(a) A "Specified Cause of Loss";
(b) Decay or insect or vermin damage that is hidden from view, unless the presence of such decay or insect or vermin damage is known to the Named Insured prior to collapse;
(c) Weight of rain that collects on a roof;
(d) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.  However, if the collapse occurs after the construction, remodeling or renovation is complete and is caused in part by a cause of loss listed in **i.** (1) (a) through (c) above, the Company will be liable for loss or damage caused by the

9
EXHIBIT "A"

**Peleus Insurance Company**
**8720 Stony Point Parkway, Suite 400**
**Richmond, VA 23235**

collapse even if use of defective material or methods in construction, remodeling or renovation contributes to the collapse.

In the event collapse results in a Covered Cause of Loss, the Company will be liable only for such resulting loss or damage caused by that Covered Cause of Loss.

(2) A building or portion of a building that:
    (a) Is in imminent danger of abruptly falling down or caving in; or
    (b) Suffers a substantial impairment of structural integrity;
is not considered a collapse but is considered to be in a state of imminent collapse.

(3) As respects buildings in a state of imminent collapse, the Company will not pay for loss or damage unless the state of imminent collapse first manifests itself during the Policy period and is caused only by one or more of the following which occurs during the Policy period:
    (a) Fire; lightning; explosion; Windstorm or hail; aircraft or vehicles; riot or civil commotion; "Sinkhole Collapse"; weight of snow, ice or sleet; or
    (b) Weight of rain that collects on a roof.

As respects "Electronic Data Processing Equipment" and "Electronic Data Processing Data and Media", only exclusions D.1.a. through h apply. As respects Accounts Receivable, and Valuable Papers and Records, only exclusions D.1.a. through g. apply. As respects Property in the due course of transit, Exclusions D.1.a. and D.1.b. do not apply.

2. The Company will not pay for loss or damage caused by or resulting from any of the following:

a. Artificially generated electric current, including electric arcing, that disturbs electrical devices, equipment, appliances or wires.

However, in the event artificially generated electric current results in fire or explosion, the Company will be liable only for such resulting loss or damage.

b. Indirect or remote loss or damage; delay, loss of use or loss of market; or interruption of business.

c. (1) Wear and tear or depletion;
  (2) Rust, corrosion, erosion, decay, deterioration, hidden or latent defect or any quality in the property that causes it to damage or destroy itself;
  (3) Settling, cracking, shrinking, bulging or expansion;
  (4) Nesting or infestation or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;
  (5) Mechanical or machinery breakdown, including rupture or bursting caused by centrifugal force; and
  (6) The following causes of loss to personal property:
    (a) Dampness or dryness of atmosphere;
    (b) Changes in or extremes of temperature;
    (c) Changes in flavor or color, texture or finish; and
    (d) Contamination, evaporation or leakage.

However, in the event an excluded cause of loss that is listed in 2.c. (1) through (6) above results in fire, explosion, smoke, leakage from fire extinguishing equipment, "Sinkhole Collapse", or falling objects, the Company will pay for the loss or damage caused by that fire, explosion, smoke, leakage from fire extinguishing equipment, "Sinkhole Collapse", or falling objects.

d. Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by the Named Insured, or operated under the Named Insured's control. However, if explosion of steam boilers, steam pipes, steam engines, or steam turbines results in fire or combustion explosion, the Company will pay for loss or damage caused by that fire or combustion explosion. The Company will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

e. Dishonest or criminal act by the Named Insured, any of the Named Insured's partners, employees (including leased employees), directors, trustees, authorized representatives or anyone (other than a carrier for hire or bailee) to whom the Named Insured entrusts the property for any purpose:

10

# Peleus Insurance Company
## 8720 Stony Point Parkway, Suite 400
## Richmond, VA 23235

(1) Acting alone or in collusion with others; and
(2) Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by the Named Insured's employees (including leased employees), but theft by the Named Insured's employees (including leased employees) is not covered.

f.  Rain, snow, sand, dust, ice, or sleet to personal property in the open (other than to property in the custody of a carrier for hire).

g.  The cost of correcting or making good the damage to personal property attributable to such property being processed, manufactured, tested or otherwise being worked upon.

h.  Voluntary parting with any property by the Named Insured or anyone else to whom the Named Insured has entrusted the property.

i.  Accumulated effects of smog, smoke, vapor, liquid or dust.

j.  If the building or leased premises where loss or damage has occurred has been "Vacant" for more than sixty (60) consecutive days before the loss or damage occurs, the Company will not pay for any loss or damage caused by any of the following, even if they are Covered Causes of Loss:
(1) Vandalism;
(2) Sprinkler leakage;
(3) Building glass breakage;
(4) Water Damage;
(5) Theft; or
(6) Attempted theft.

k.  Continuous or repeated seepage, leakage or flow of water that occurs over a period of fourteen (14) days or more.

l.  Shortage disclosed by audit or upon taking inventory or by a profit and loss statement or other instances where there is no physical evidence to show what happened to the property.

m.  "Cosmetic loss or damage"

As respects Accounts Receivable, Valuable Papers and Records, "Electronic Data Processing Equipment" and "Electronic Data Processing Data and Media" only the following exclusions in Section D.2 apply:

(1) Exclusions c. (1), c. (6) (a) and c. (6) (b); but if mechanical breakdown not otherwise excluded results, the Company will pay for that resulting loss or damage by mechanical breakdown; and
(2) Exclusions b., e., g., h. and l.

3.  The Company will not pay for loss or damage caused by or resulting from any of the following:

a.  Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in D.1 above to produce the loss or damage.

However, in the event weather conditions, as excluded above, result in a Covered Cause of Loss, this exclusion does not apply to loss or damage caused by that resulting Covered Cause of Loss.

b.  Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

However, in the event an act or decision or the failure to act or decide, as excluded above, results in a Covered Cause of Loss, this exclusion does not apply to loss or damage caused by that resulting Covered Cause of Loss.

c.  Faulty, inadequate or defective:
(1) Planning, zoning, development, surveying, siting;
(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
(3) Materials used in repair, construction, renovation or remodeling; or
(4) Maintenance;

11
EXHIBIT "A"

**Peleus Insurance Company**
**8720 Stony Point Parkway, Suite 400**
**Richmond, VA 23235**

of part or all of any property on or off an Insured Location.

However, in the event an excluded cause of loss that is listed in 3.c.(1) through 3.c.(4) above results in a Covered Cause of Loss, this exclusion does not apply to loss or damage caused by that resulting Covered Cause of Loss. However, the Company will not be liable for:

    (i) Any cost of correcting or making good the fault, inadequacy or defect itself, except as provided for fire extinguishing equipment under Section E.2. (Limitations) below; or

    (ii) Any cost incurred to tear down, tear out, repair or replace any part of any property to correct the fault, inadequacy or defect, except as specifically provided under the Water, Other Liquids, Powder or Molten Material Damage coverage in Section B.2.i. of this Coverage Form; or

    (iii) Any resulting loss or damage by a Covered Cause of Loss to the property that has the fault, inadequacy or defect until the fault, inadequacy or defect is corrected.

  d. Windstorm:

    1. Windstorm of any nature in counties identified as High Hazard Counties as per NC R6 04 14 at any one Insured Location unless a value is inserted on item # 6a (Deductible) of the Supplemental Coverage Declarations.

## E.  LIMITATIONS

1. The Company will not pay for loss of or damage to property, as described and limited in this section. In addition, the Company will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

  a. Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. However, the Company will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

  b. Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than explosion.

  c. The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

    (1) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

    (2) The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

2. The Company will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes. However, the Company will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

  a. Results in discharge of any substance from an automatic fire protections system; or

  b. Is directly caused by freezing.

## F.  DEDUCTIBLES: When a deductible(s) is shown in the Supplemental Coverage Declarations, refer to Section B. (Application of Deductibles) in the General Conditions.

## G.  DEFINITIONS

The following definitions apply to the defined terms wherever they appear in any form included in the Policy, unless the term is otherwise specifically defined in an endorsement to the Policy.

EXHIBIT "A"

# Peleus Insurance Company
## 8720 Stony Point Parkway, Suite 400
## Richmond, VA 23235

1. **"Actual Cash Value"** means the cost to repair, rebuild or replace the lost or damaged property, at the time and place of the loss, with other property of comparable size, material and quality, less allowance for physical deterioration, depreciation, obsolescence and depletion.

2. **"The Company"** or "the Company" means the company providing this insurance to a Named Insured for an Insured Location: Peleus Insurance Company.

3. **"Cosmetic loss or damage"** means damage to any portion of the roof or siding coverings or appurtenances, doors, windows, awnings, or carports that alters only the physical appearance of any portion of the roof or siding coverings or appurtenances, doors, windows, awnings, or carports (including but not limited to marring, pitting, scratches or dents) but does not result in damage that allows the penetration of water through the roof or siding coverings or appurtenances, doors, windows, or carports or that results in the failure of the roof or siding covering or appurtenances, doors, windows, awnings, or carports to perform their intended function of keeping out the elements for the remainder of their respective original, useful life. Roof and siding coverings means the roofing and siding material exposed to the weather, the underlayments applied for moisture protection, and all flashing and edging required in the replacement of the coverings. Roof and siding appurtenances includes but is not limited to vents, flue covers, exhaust caps, pipe jacks, gutters and downspouts, skylights, chimney covers, and HVAC equipment.

4. **"Covered Cause of Loss"** means risks of direct physical loss or damage unless the loss or damage is excluded in Section D. (Exclusions); limited in Section E. (Limitations); excluded or limited in the Supplemental Coverage Declarations; or excluded or limited by endorsements or other policy forms.

5. **"Diminution in Value"** means the actual or perceived loss in market or resale value.

6. **"Electronic Data Processing Data and Media"** means:
   (a) Electronic data processing, recording or storage media such as films, tapes, discs, drums or cells, or similar magnetic recording or storage devices;
   (b) Data stored on such media; and
   (c) Original programming materials used to enter data and/or program media.

7. **"Electronic Data Processing Equipment"** means electronic data processing equipment, facsimile machines, word processors, multi-functional telephone equipment, laptop and portable computers; related surge protection devices; and their component parts and peripherals used solely for data processing operations.

8. **"Excluded"** means not covered and not insured by the terms of this Policy.

9. **"Exhibition"** means the temporary display of personal property at a convention, exposition, trade show or similar event at a location not owned or regularly occupied by the Named Insured.

10. **"Fine Arts"** means paintings, etchings, pictures, tapestries, art glass windows, valuable rugs, statuary, marbles, bronzes, antique furniture, rare books, antique silver, manuscripts, porcelains, rare glass, bric-a-brac and similar property of rarity, historical value, or artistic merit.

11. **"Finished Stock"** means goods manufactured by the Named Insured that in the ordinary course of the Named Insured's business are in their completed state and ready for sale. "Finished Stock" does not include goods manufactured by the Named Insured that are held for sale on the premises of any retail outlet insured under this Coverage Form.

12. **"First Named Insured"** means Strata Real Estate Services Association.

13. **"Included"** means included in the Policy Limit.

14. **"Limit of Insurance"** means the maximum amount the Company will pay for loss or damage and is subject to amounts declared at each Insured Location as reflected in the latest Statement of Values on file with the Company at the time of loss.

15. **"Insured Location"** means any location, (a) listed on a Schedule of Locations or Statement of Values on file and agreed by the Company, (b) covered under Newly Constructed or Acquired Property or (c) covered at undescribed Premises, all including the area within one thousand (1,000) feet of such location, all within the

EXHIBIT "A"

# Peleus Insurance Company
## 8720 Stony Point Parkway, Suite 400
## Richmond, VA 23235

Territorial Limits of the Policy, it being understood that all listed locations may be comprised of more than one street address.

16. **"Named Insured"** means any owner, manager, operator and/or controller of an Insured Location that is identified as a Named Insured on a Declarations Certificate issued by or on behalf of the Company as part of this Policy, for and to the extent of its respective interest in the Insured Location.

"Named Insured" also includes any owner, manager, operator or controller of a Newly Constructed or Acquired Property that qualifies for coverage under the Policy, even if not identified as a Named Insured on a Declarations Certificate, for and to the extent of its respective interest in the Newly Constructed or Acquired Property, but only until the first of any of the following occurs: (1) this Policy is cancelled, terminates or expires; (2) 120 days expire after the Named Insured acquires, begins to construct the building(s), or becomes newly required to insure the building(s) under a written contract; (3) the Named Insured reports the new values to the Company; or (4) the property is more specifically insured elsewhere.

17. **"Named Storm"** means a storm or weather disturbance that has been declared by the National Weather Service to be a hurricane, typhoon, tropical cyclone, tropical storm, or tropical depression.

18. **"Occurrence"** shall mean any one loss, disaster, casualty, or series of losses, disasters, or casualties, arising out of one event. When the term applies to loss or losses from the perils of tornado, cyclone, hurricane, Windstorm, hail, flood, riot, riot attending a strike, civil commotion or vandalism and malicious mischief, one event shall be construed to be all losses arising during a continuous period of 72 hours. When the term applies to loss or losses from the perils of earthquake and volcanic eruption, one event shall be construed to be all losses arising during a continuous period of 168 hours. When filing a proof of loss, Strata Real Estate Services Association may elect the moment at which the 72 or 168 hour period shall be deemed to have commenced, which may not be earlier than the time when the first loss to Covered Property occurs.

19. **"Outdoor Property"** means retaining walls not part of a building, lawns (including fairways, greens and tees), trees, shrubs, plants, bridges (excluding vehicular bridges), walks, roadways, patios or other paved surfaces, attached or detached solar panels, detached signs, fences, satellite dishes, and radio or television antennas, and their lead-in wiring, masts or towers.

20. **"Pollutants"** means any solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to any smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste (whether recycled, reconditioned or reclaimed) which are designated as Pollutant(s) in listing(s) published by the United States Environmental Protection Agency (U.S.E.P.A.) or by any other governmental authority, or, if unlisted, exhibit(s) the characteristic(s) of ignitability, corrosivity, reactivity, or toxicity to a degree which would cause it (them) to be so listed if the subject were to be addressed by the U.S.E.P.A. or by any other governmental authority..

21. **"Raw Stock"** means material in the state in which the Named Insured receives it for conversion by the Named Insured into "Stock in Process" or "Finished Stock".

22. **"Sinkhole Collapse"** means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite.

This cause of loss does not include:
a. The cost of filling sinkholes; or
b. Sinking or collapse of land into manmade underground cavities.

23. **"Specified Cause of Loss"** means any of the following: fire; lightning; explosion; Windstorm or hail; smoke, aircraft or vehicle; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; "Sinkhole Collapse"; "Volcanic Action"; falling objects; weight of snow, ice or sleet; or Water Damage.

Falling objects does not include loss or damage to:

(1) Personal property in the open; or

(2) The interior of a building, or property inside a building, unless the roof or an outside wall of the building is first damaged by a falling object.

**Peleus Insurance Company**
**8720 Stony Point Parkway, Suite 400**
**Richmond, VA 23235**

24. **"Water Damage"** means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam.

25. **"Statement of Values"** means a schedule on file with the Company provided by the Named Insured that lists by spreadsheet the name, address, and insurable values of the property insured hereunder.

26. **"Stock"** means merchandise held in storage or for sale, "Raw Stock", "Stock in Process" or "Finished Stock" including supplies used in their packing or shipping.

27. **"Stock in Process"** means "Raw Stock" which has undergone any aging, seasoning, mechanical or other process of manufacturing but which has not become "Finished Stock".

28. **"Vacant"** means the following:

   a. When the Named Insured is the owner, property manager or general lessee of a building, Vacant means more than 50% of the square footage of the entire building is not:

      (1) Rented to or occupied by, a lessee or sub-lessee; or
      (2) Used by the building owner to conduct customary operations.

   b. With respect to a unit or suite that is owned, rented or leased to the Named Insured, and not within a building to which a. above applies, Vacant means the unit or suite does not contain enough Business Personal Property to conduct customary operations.

   However, a building under construction or renovation is not considered Vacant on a date if active construction or renovation activities have occurred at the building within the thirty (30) previous days. Further, Newly Constructed Buildings are not considered Vacant for a period of six (6) months after coverage attaches.

   Additionally, duplexes that are occupied by one tenant or the owner or their representative are not considered Vacant regardless of percentage of square footage that is occupied.

29. **"Volcanic Action"** means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

   a. Airborne volcanic blast or airborne shock waves;

   b. Ash, dust or particulate matter; or

   c. Lava flow.

   "Volcanic Action" does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the Covered Property.

30. **"Windstorm"** means the direct action of wind, wind-driven precipitation, hail or sleet from any storm or weather condition.

EXHIBIT "A"

# Peleus Insurance Company
## 8720 Stony Point Parkway, Suite 400
## Richmond, VA 23235

NC R1 01   04 15

**BUSINESS INCOME COVERAGE FORM INCLUDING EXTRA EXPENSE FORM**

Various provisions in this Policy restrict coverage. Read the entire Policy carefully to determine rights, duties and what is and is not covered. Words and phrases that appear in quotation marks have special meaning; refer to Section G., Definitions in this form and to Section G. (Definitions) in the Property Coverage Form.

A.   **COVERAGE:** The Company will pay for the actual loss of Business Income and/or Rental Value sustained by the Named Insured due to the necessary "Suspension" of the Named Insured's "Operations" during the "Period of Restoration". The Company will also pay for the actual and necessary Extra Expense the Named Insured incurs during the "Period of Restoration". The "Suspension" and the Extra Expense must be caused by direct physical loss or damage to Covered Property, including personal property in the open (or in a vehicle) within 1,000 feet, at the Insured Location:

- Which is described in the most recent Statement of Values or Business Income Work Sheet(s) or other documentation on file with the Company; and
- For which a value for the exposure at the premises to which this form applies has been reported.

The loss or damage must be caused by or result from a Covered Cause of Loss.

Coverage is provided as described below only when a Sublimit of Insurance is shown for the specified coverage in the Supplemental Coverage Declarations.

1.   **Business Income:** Business Income means the Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred by the Named Insured; and continuing normal operating expenses incurred by the Named Insured. However, Business Income does not include Rental Value.

Continuing normal operating expenses incurred by the Named Insured exclude "Ordinary Payroll Expenses" except when "Ordinary Payroll Expenses" are either included or limited to a specified number of days as indicated on the Supplemental Coverage Declarations. If limited, the number of consecutive days during which coverage for "Ordinary Payroll Expenses" applies may be used in two separate periods during the "Period of Restoration". The Company will also pay for those continuing fixed charges and expenses, excluding "Ordinary Payroll Expenses" (unless otherwise included or limited), directly attributable to "Research and Development" activities even if the activities would not have produced income during the "Period of Restoration".

2.   **Rental Value:** Rental Value means the:

    a.   Total anticipated rental income;
    b.   Amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be the obligation of the Named Insured; and
    c.   Fair rental value of any portion of the Insured Location that is occupied by the Named Insured;

    less any operating expenses that do not continue from tenant occupancy of the premises as furnished and equipped by the Named Insured.

3.   **Extra Expense:** Extra Expense means the following expenses incurred by the Named Insured that the Named Insured would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss:

    a.   Reasonable and necessary expenses to avoid or minimize the "Suspension" of business and to continue "Operations":
        (1) At the Insured Location; or
        (2) At replacement premises or at temporary locations, including relocation expenses and costs to equip and operate the replacement premises or temporary locations;
    b.   Reasonable and necessary expenses to minimize the "Suspension" of business if the Named Insured cannot continue "Operations"; and

16
EXHIBIT "A"

**Peleus Insurance Company**
**8720 Stony Point Parkway, Suite 400**
**Richmond, VA 23235**

    c.  Reasonable and necessary expenses to:
        (1)  Repair or replace any property; or
        (2)  Research, replace or restore the lost information on damaged valuable papers and records;
    to the extent they reduce the amount of loss that otherwise would have been payable under this coverage form.

4.  **Leasehold Interest:** Leasehold Interest means the leasehold interest when property is rendered wholly or partially untenantable due to any insured loss during the term of this policy and a lease is cancelled by a party not insured by this policy in accordance with the conditions of the lease or by statutory requirements of the appropriate jurisdiction in which the damaged property is located.

Coverage under this clause includes the pro-rata portion from the date of loss to the expiration date of the lease (to be paid without discount) on the Insured's interest in:

        a.  The amount of the bonus paid by the Insured for the acquisition of the lease not recoverable under the terms of the lease;

        b.  Improvements and betterments to real property which are not insured under any other section of this policy;

        c.  The amount of advance rental paid by the Insured and not recoverable under the terms of this lease.

The insurer shall indemnify the Insured for its Lease Interest for the first three months following the loss or damage and for its Net Lease Interest for the remaining unexpired term of the lease, provided that the Insurer shall not be liable for any increase in the amount recoverable hereunder resulting from the suspension, lapse, or cancellation of any license, or from the Insured exercising an option to cancel the lease; or from any act or omission of the Insured which constitutes a default under the lease; and provided further that the Insured shall use any suitable property or service owned or controlled by the Insured or obtainable from another source to reduce the loss hereunder.

**B.  ADDITIONAL COVERAGE EXTENSIONS:** Each of the following Additional Coverage Extensions applies only when a Sublimit of Insurance is shown in the Supplemental Coverage Declarations except for items 1. and 2. which do not require a specific Sublimit of Insurance to be shown:

1.  **Civil Authority:** The insurance provided by this coverage form is extended to apply to such loss and expense incurred by the Named Insured caused by the action of civil authority that prohibits access to the Insured Location due to direct physical loss or damage to property, other than at the Insured Location, caused by or resulting from a Covered Cause of Loss.

Coverage for Business Income and/or Rental Value will begin twenty four (24) hours after the time of the civil authority action and will then apply for a period of up to thirty (30) consecutive days.  No other hour deductible applicable to Business Income and/or Rental Value applies to this coverage.

Coverage for Extra Expense will begin immediately after the action of the civil authority and will end on the later of the following:

    a.  Thirty (30) days after the date of the civil authority action; or
    b.  The date Business Income and/or Rental Value coverage ends.

2.  **Extended Business Income or Rental Value:** If the necessary "Suspension" of the Named Insured's "Operations" produces a Business Income or Rental Value loss payable under this Policy, the insurance provided by this coverage form is extended to apply to such loss of Business Income or Rental Value incurred by the Named Insured during the period that:

    a.  Begins on the date property (except "Finished Stock") is actually repaired, rebuilt or replaced and "Operations" are resumed or tenantability is restored; and
    b.  Ends on the earlier of:

EXHIBIT "A"

# Peleus Insurance Company
## 8720 Stony Point Parkway, Suite 400
## Richmond, VA 23235

(1) The date the Named Insured could restore "Operations", with reasonable speed, to the level which would generate the Business Income amount or Rental Value amount that would have existed if no direct physical loss or damage had occurred; or

(2) Ninety (90) consecutive days after the date determined in 2. a. above.

However, this Additional Coverage Extension does not apply to loss of Business Income or Rental Value incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the Insured Location is located.

Loss of Business Income or Rental Value must be caused by direct physical loss or damage to property at the Insured Location, the premises of a "Dependent Property", newly acquired premises or undescribed premises, all only as insured under this coverage form, caused by or resulting from a Covered Cause of Loss.

The expiration date of this Policy will not cut short the extended Business Income or Rental Value period of coverage.

3. **"Dependent Property":** The insurance provided by this coverage form is extended to apply to such loss and expense incurred by the Named Insured during the "Period of Restoration" due to direct physical loss or damage by a Covered Cause of Loss to property at the premises of a "Dependent Property" within the Policy Territory.

   This Additional Coverage Extension does not apply to "Dependent Property" for which the Named Insured has more specific insurance either under this Policy or another.

4. **Ordinance or Law – Increased "Period of Restoration"**

   a. If a Covered Cause of Loss causes direct physical loss or damage to Covered Property, and such direct physical loss or damage alone and directly causes the enforcement of an ordinance or law in force at the time of loss regulating the construction or repair of buildings or establishing zoning or land use requirements at the Insured Location, the "Period of Restoration" is increased to include the additional period of "Suspension" of "Operations" caused by or resulting from such enforcement.

   b. Insurance under this Additional Coverage Extension applies only to the increased period required to repair or replace the property to comply with the minimum requirements of the ordinance or law.

   c. Under this Additional Coverage Extension, the Company will not pay for:

      (1) Any loss due to any ordinance or law that:

         (a) The Named Insured was required to comply with before the loss, even if the property was undamaged; and

         (b) The Named Insured failed to comply with.

      (2) Costs associated with the enforcement of any ordinance or law which requires any Named Insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "Pollutants".

      (3) Costs associated with the enforcement of an ordinance or law where such enforcement is not the direct result of direct physical loss or damage to Covered Property, even if the enforcement of the ordinance or law results from an inspection of the Covered Property that sustained a Covered Cause of Loss.

5. **Newly Acquired Premises**

   a. The insurance provided by this coverage form is extended to apply to such loss and expense incurred by the Named Insured during the "Period of Restoration" due to direct physical loss or damage by a Covered Cause of Loss to property within the Policy Territory at any:

      (1) Premises newly acquired by the Named Insured; and

      (2) Premises the Named Insured becomes newly required to insure under a written contract.

   b. Insurance under this Additional Coverage Extension for each premise will end when any of the following first occurs:

      (1) This Policy is cancelled, terminates or expires;

      (2) Ninety (90) days expire after the Named Insured acquires or begins to construct the property or is required to insure the property under a written contract;

      (3) The Named Insured reports the new premises to the Company; or

      (4) The Business Income, Rental Value or Extra Expense is more specifically insured elsewhere.

18

EXHIBIT "A"

# Peleus Insurance Company
## 8720 Stony Point Parkway, Suite 400
## Richmond, VA 23235

c.  The Company will charge the Named Insured additional premium for values reported from the date the Named Insured acquires the property or is required to insure the property.

6.  **Undescribed Premises:** The insurance provided by this coverage form is extended to apply to such loss and expense incurred by the Named Insured during the "Period of Restoration" due to direct physical loss or damage by a Covered Cause of Loss to Covered Property, as described in the Property Coverage Form, while at an Undescribed Premises. Undescribed Premises means premises not owned, leased or regularly operated by the Named Insured.  Covered Property at an Undescribed Premises does not include:

a.  Property at the premises of "Dependent Property";
b.  Property in due course of transit; or
c.  Property at any premises outside of the Policy Territory.  However, this exclusion does not apply to Covered Property at an "Exhibition", unless the "Exhibition" is within any country on which the United States government has imposed sanctions, embargoes or any other similar prohibitions.

7.  **Claim Data Expense:** This insurance applies to the reasonable expenses incurred by the Named Insured in preparing claim data when required by the Company. This includes the cost of preparing income statements and other documentation to show the extent of the loss. The Company will not pay for any expenses incurred, directed, or billed by or payable to public insurance adjusters or their associates or subsidiaries, or any costs as provided in General Conditions - Section C. (Appraisal)

## C. EXCLUSIONS

1.  All of the exclusions contained in Section D. of the Property Coverage Form apply to this coverage form except:

a.  Exclusion 1.h. (Ordinance or Law), is amended by the addition of the following:

This exclusion does not apply to the Ordinance or Law – Increased "Period of Restoration" Additional Coverage Extension.

b.  Exclusion 2.b.,(Indirect or remote loss or damage; delay, loss of use or loss of market; or interruption of business), does not apply to the extent coverage is specifically provided under this coverage form.

2.  In addition, the Company will not pay for:

a.  Any loss caused by or resulting from:
(1)  Damage or destruction of "Finished Stock"; or
(2)  The time required to reproduce "Finished Stock".

This exclusion does not apply to Extra Expense.

b.  Any loss caused by or resulting from direct physical loss or damage to outdoor trees, shrubs, plants or lawns (including fairways, greens and tees); growing crops; standing timber; land; water; attached or detached solar panels, or radio or television antennas (including microwave satellite dishes), and their lead-in wiring, masts or towers.

c.  Any loss or damage to property while in due course of transit.

d.  Any increase of loss caused by or resulting from:
(1)  Delay in rebuilding, repairing or replacing the property or resuming "Operations" due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or
(2)  Any license, lease or contract which is suspended, lapses or is cancelled. However, if the license, lease or contract is suspended, lapses or is cancelled as the direct result of the "Suspension" of "Operations", the Company will cover such loss that affects the Named Insured's Business Income or Rental Value during the "Period of Restoration" and the period of Extended Business Income or Rental Value.

e.  Any Extra Expense caused by or resulting from any suspended, lapsed or cancelled license, lease or contract beyond the "Period of Restoration".

f.  Any other consequential loss.

## D. LIMITATIONS: Limitations contained in Section E. of the Property Coverage Form apply to this coverage form.  In addition, the following limitation applies:

19
EXHIBIT "A"

**Peleus Insurance Company**
**8720 Stony Point Parkway, Suite 400**
**Richmond, VA 23235**

**Limitation – "Electronic Data Processing Data and Media"**

The Company will not pay for any loss of Business Income or Rental Value caused by direct physical loss or damage to "Electronic Data Processing Data and Media" after the longer of:

1.  Sixty (60) consecutive days from the date of direct physical loss or damage; or

2.  The period, beginning with the date of direct physical loss or damage, necessary to repair, rebuild or replace, with reasonable speed and similar quality, other property at the Insured Location which suffered loss or damage in the same Occurrence.

This limitation does not apply to Extra Expense.

**E.  DEDUCTIBLES**

When a deductible(s) is shown in the Supplemental Coverage Declarations, refer to Section B. (Application of Deductibles) in the General Conditions.

**F.  ADDITIONAL CONDITION:** The following condition applies in addition to the conditions contained in the General Conditions:

**Loss Determination**

1.  The amount of Business Income or Rental Value loss will be determined based on:

    a.  The Net Income or Rental Value of the business before the direct physical loss or damage occurred;
    b.  The likely Net Income or Rental Value of the business if no direct physical loss or damage had occurred, but not including any likely increase in Net Income or Rental Value attributable to an increase in the volume of business as a result of favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;
    c.  The operating expenses, including "Ordinary Payroll Expenses" to the extent insured, necessary to resume "Operations" with the same quality of service that existed just before the direct physical loss or damage; and
    d.  Other relevant sources of information, including:
        (1) The financial records and accounting procedures of the Named Insured;
        (2) Bills, invoices and other vouchers; and
        (3) Deeds, liens, contracts or leases.

2.  The amount of Extra Expense will be determined based on:

    a.  All reasonable and necessary expenses that exceed the normal operating expenses that would have been incurred by "Operations" during the "Period of Restoration" if no direct physical loss or damage had occurred. The Company will deduct from the total of such expenses:
        (1) The salvage value that remains of any property bought for temporary use during the "Period of Restoration", once "Operations" are resumed; and
        (2) Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and
    b.  All reasonable and necessary expenses that reduce the Business Income or Rental Value loss that otherwise would have been incurred.

3.  The Company will reduce the amount of the Named Insured's:

    a.  Business Income or Rental Value loss, to the extent the Named Insured can resume "Operations" in whole or in part, by using:
        (1) Damaged or undamaged property (including merchandise or stock) at the Insured Location or elsewhere; or
        (2) Any other available sources of materials or outlets for the Named Insured's products.
    b.  Extra Expense loss to the extent the Named Insured can return "Operations" to normal and discontinue such Extra Expense.

4.  If the Named Insured intends to continue the Named Insured's business, the Named Insured must resume "Operations", in whole or in part, as quickly as possible.  If the Named Insured does not resume "Operations", or

## Peleus Insurance Company
### 8720 Stony Point Parkway, Suite 400
### Richmond, VA 23235

does not resume "Operations" as quickly as possible, the Company will pay based on the length of time it would have taken to resume "Operations" as quickly as possible.

G. **DEFINITIONS:** The following definitions are in addition to those contained in the Property Coverage Form:

1. **"Dependent Property"** means property operated by others that the Named Insured depends on to:

   a. Supply materials or services to the Named Insured, or to others for the account of the Named Insured (Contributing Locations). With respect to Contributing Locations, services do not mean utility services including but not limited to water supply services, communication supply services, or power supply services supplying electricity, steam or gas;

   b. Accept the Named Insured's products or services (Recipient Locations);

   c. Manufacture products for delivery to the Named Insured's customers under contract of sale (Manufacturing Locations); or

   d. Attract customers to the Named Insured's business (Leader Locations).

2. **"Exhibition"** means the temporary display of personal property at a convention, exposition, trade show or similar event at a location not owned or regularly occupied by the Named Insured.

3. **"Operations"** means:

   a. The Named Insured's business activities occurring at the Insured Location; and

   b. The tenantability of the Insured Location when coverage for Rental Value applies.

4. **"Ordinary Payroll Expenses"** means payroll expenses for all employees of the Named Insured except: Officers; Executives; Department Managers; Employees Under Contract; and any Additional Exemptions for which coverage is added by endorsement for specific Job Classifications or Employees.
   "Ordinary Payroll Expenses" include:

   a. Payroll;

   b. Employee benefits, if directly related to payroll;

   c. FICA and Medicare payments;

   d. Union dues; and

   e. Worker's compensation premiums.

5. **"Period of Restoration"**

   a. Except as provided in paragraphs b. and c. below, "Period of Restoration" means the period of time that:

      (1) Begins the date and time of direct physical loss or damage to property at the Insured Location caused by or resulting from a Covered Cause of Loss; and

      (2) Ends on the earlier of the following:

         (a) The date when the property should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

         (b) The date when business is resumed at a new permanent location.

   b. If:

      (1) The direct physical loss or damage by a Covered Cause of Loss is to any of the following property at premises to which this insurance applies:

         (a) New buildings or structures, whether complete or under construction;

         (b) Alterations or additions to existing buildings or structures; or

         (c) Machinery, equipment, supplies or building materials on or within 1,000 feet of the premises that are used in the construction, alterations or additions, or incidental to the occupancy of the buildings; and

      (2) Such direct physical loss or damage delays the start of "Operations"; the "Period of Restoration" for Business Income or Rental Value will be the same length of time provided in a. above, but will not begin until the date when "Operations" would have begun if the direct physical loss or damage had not occurred. This change in the start of the "Period of Restoration" does not apply to Extra Expense.

   c. When a number of hours is shown in the deductible item in the Supplemental Coverage Declarations for Business Income or Rental Value, the "Period of Restoration" will not begin until that number of hours

**Peleus Insurance Company**
**8720 Stony Point Parkway, Suite 400**
**Richmond, VA 23235**

immediately following the date and time the "Period of Restoration" would otherwise have begun, as described in a. and b. above. This deductible does not apply to Extra Expense.

  d. "Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

    (1) Regulates the construction or repair of buildings or establishes zoning or land use requirements at the Insured Location, except as provided under the Ordinance or Law – Increased "Period of Restoration" Additional Coverage Extension; or

    (2) Requires any Named Insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess, the effects of "Pollutants"; or

    (3) Is not the direct result of direct physical loss or damage to Covered Property, even if the enforcement of the ordinance or law results from an inspection of the Covered Property that sustained a Covered Cause of Loss.

  e. The expiration date of this Policy will not cut short the "Period of Restoration".

**6.** **"Research and Development":** means the development of new products and enhancements of existing products. "Research and Development" does not mean the maintenance of existing products.

**7.** **"Suspension":** means:

  a. The partial or complete cessation of the Named Insured's business "Operations"; or

  b. That a part or all of the Insured Location is rendered untenantable, if coverage for Rental Value is provided.

22
EXHIBIT "A"

# Peleus Insurance Company
## 8720 Stony Point Parkway, Suite 400
## Richmond, VA 23235

NC R2 04 04 14

### EARTHQUAKE, VOLCANIC ERUPTION, LANDSLIDE AND MINE SUBSIDENCE FORM

If a Sublimit is provided on item 18 of the Supplemental Coverage Declarations in this Policy, this form modifies the insurance provided under this Policy.

**A.** The following are added to the Covered Causes of Loss and, if not already included, are also added to the "Specified Causes of Loss":

1. Earthquake, meaning a shaking or trembling of the earth's crust, caused by underground volcanic or tectonic forces or by breaking or shifting of rock beneath the surface of the ground from natural causes.

2. Volcanic Eruption, meaning the eruption, explosion or effusion of a volcano.

3. Landslide, meaning the rapid downward movement of a mass of rock, earth or artificial fill on a slope.

4. Mine Subsidence, meaning lateral or vertical ground movement caused by a failure initiated at the mine level of manmade underground mines, including but not limited to coal, clay limestone and fluorspar mines.

All Earthquake shocks, Volcanic Eruptions, Landslides or Mine Subsidence ground movements that occur within any 168-hour period will constitute a single Earthquake, Volcanic Eruption, Landslide or Mine Subsidence. The expiration of this Policy will not reduce the 168-hour period.

**B.** Under the Exclusions contained in Section D. of the Property Coverage Form:

1. The Earth Movement exclusion does not apply to the insurance specifically provided under this form for loss or damage caused by Earthquake, Volcanic Eruption, Landslide and Mine Subsidence.

2. The Collapse of Buildings exclusion is amended to include Earthquake, Volcanic Eruption, Landslide and Mine Subsidence in the list of perils for which coverage for buildings in a state of imminent collapse applies.

3. Coverage under this form does not apply to locations in California, Oregon, Washington, Alaska, Hawaii, and certain counties defined as being in the New Madrid earthquake zone.

All other exclusions and limitations in this Policy continue to apply.

**C.** The following additional exclusions apply to this insurance:

1. The Company will not pay for loss or damage caused directly or indirectly by Flood, as defined in the Flood exclusion contained in Section D. of the Property Coverage Form, even if attributable to an Earthquake, Volcanic Eruption, Landslide or Mine Subsidence.

2. This insurance for Earthquake, Volcanic Eruption, Landslide and Mine Subsidence does not apply to, or modify any limits or deductibles that apply to:

   a. The insurance otherwise provided for loss or damage by fire or explosion that results from an earth movement and for loss or damage by fire or "Volcanic Action" that results from a Volcanic Eruption; or

   b. Any other insurance provided for loss or damage to which the Earth Movement exclusion does not apply.

3. The Company will not pay for loss or damage caused by or resulting from any Earthquake, Volcanic Eruption, Landslide or Mine Subsidence that begins before the inception date of this Policy.

4. This insurance does not apply to the cost of restoring or remediating land or to loss resulting from the time required to restore or remediate land.

**D.** The most the Company will pay for the total of all loss or damage caused by Earthquake, Volcanic Eruption, Landslide and Mine Subsidence in any one Policy period is the single highest Annual Aggregate Sublimit of Insurance specified for Earthquake, Volcanic Eruption, Landslide and Mine Subsidence shown in the Supplemental Coverage Declarations. This Sublimit is part of, and does not increase, the Limit of Insurance that apply under this Policy.

# Peleus Insurance Company
## 8720 Stony Point Parkway, Suite 400
## Richmond, VA 23235

Subject to the single highest Annual Aggregate Sublimit of Insurance:

1. Any individual Annual Aggregate Sublimit of Insurance shown in the Supplemental Coverage Declarations for Earthquake, Volcanic Eruption, Landslide and Mine Subsidence is the most the Company will pay in any one Policy period for all loss or damage to which that Sublimit of Insurance applies.

2. If more than one Annual Aggregate Sublimit of Insurance applies to loss or damage under this form in any one Occurrence, each Sublimit will be applied separately, but the most the Company will pay under this form for all loss or damage in that Occurrence is the single highest Annual Aggregate Sublimit of Insurance applicable to that Occurrence.

EXHIBIT "A"

# Peleus Insurance Company
## 8720 Stony Point Parkway, Suite 400
## Richmond, VA 23235

NC R2 06   04 14

### FLOOD FORM

If a Sublimit is provided on item 19 of the Supplemental Coverage Declarations in this Policy, this form modifies insurance provided under this Policy.

**A.** The following is added to the Covered Causes of Loss and the "Specified Causes of Loss":

Flood, meaning:

1. Flood, surface water, rising water, underground water, waves, tides, tidal waves, tsunamis, overflow of any body of water, or their spray all whether driven by wind or not;

2. Mudslide or mudflow;

3. Release of water impounded by a dam, levee, dike or by a water or flood control device;

4. Water or sewage which backs up through sewers, drains or sumps;

5. The rising, overflowing or breaking of boundaries of natural or manmade bodies of water; or

6. The release of water caused by the Acts, Errors or Omissions by you or others in the design, specifications, workmanship, repair, construction, or renovation of all or any part of a water or flood control device, levee, dam or dike.

all whether naturally occurring or due to manmade or other artificial causes.

**B.** All Flood loss that occurs:

1. During a period of continued rising or overflow of any river(s), stream(s) or any body(ies) of water and the subsidence of same within the banks of such river(s), stream(s) or body(is) of water; or

2. Due to any tidal waves or tsunamis that occur within any seventy two (72) hour period;

will constitute a single Flood Occurrence.

If Flood loss commences prior to the expiration date of this Policy and the Flood Occurrence, as defined above, extends beyond the expiration date of this Policy, the expiration of the Policy will not reduce the Flood Occurrence period.

**C.** Under the Exclusions contained in Section D. of the Property Coverage Form:

1. The Earth Movement exclusion does not apply to the insurance otherwise provided under this form for loss or damage caused by or resulting from:

   a. Mudslide or mudflow that is caused or precipitated by the accumulation of water on or below the surface of the ground; or

   b. Flood that is attributable to an Earth Movement such as a tsunami.

2. The Flood exclusion does not apply to the insurance specifically provided under this form.

3. The Collapse of Buildings exclusion is amended to include Flood in the list of named causes of loss for which coverage for buildings in a state of imminent collapse applies.

All other exclusions and limitations in this Policy continue to apply.

**D.** The following additional exclusions apply to this insurance:

1. This insurance for Flood does not apply to, or modify any limits or deductibles that apply to:

   a. The insurance otherwise provided for loss or damage by fire, explosion or leakage from fire protective equipment that results from Flood; or

   b. Any other insurance provided for loss or damage by Flood to which the Flood exclusion does not apply.

25
EXHIBIT "A"

# Peleus Insurance Company
## 8720 Stony Point Parkway, Suite 400
## Richmond, VA 23235

2. The Company will not pay for loss or damage caused by or resulting from any Flood Occurrence that begins before the inception date of this Policy.

3. Coverage under this Policy section is excluded for all property located in any High Hazard Wind Counties/Parishes as defined in Policy form NC R6 06 04 14 regardless of Flood Zone.

4. This insurance does not apply to the cost of restoring, recovering or de-watering land or to loss resulting from the time required to restore, recover or de-water land.

5. Unless otherwise specified in the Supplemental Coverage Declarations, this insurance for Flood does not apply to loss or damage to, or loss that is a consequence of loss or damage to:

   a. Any building or structure or any property in the open if, at the time of loss, the building or structure or property in the open is, in whole or in part, located within Flood Zone A, B. V. or X (shaded) and Flood Zones prefixed A, B, V or X (shaded) as classified under the National Flood Insurance Program; or

   b. Any property in or on any building or structure if, at the time of loss, the building or structure in or on which such property is located is, in whole or in part, within Flood Zone A, B, V, or X (shaded) and Flood Zones prefixed A, B, V or X (shaded) as classified under the National Flood Insurance Program.

E. If, at the time of loss, a building, a structure or property in the open is located within more than one Flood Zone, Flood coverage for loss or damage to, or loss that is a consequence of loss or damage to that building, structure or property in the open will be subject to the insurance, Annual Aggregate Sublimit of Insurance and deductible, if any, that would apply under this Policy if that building, structure or property in the open was wholly located within the most hazardous of the Flood Zones, as defined below, in which it is located. The most hazardous Flood Zone that is determined to apply to a building or structure will also apply with respect to loss or damage to, or loss or damage that is a consequence of loss or damage to any property in or on such building or structure.

The following listing of Flood Zones, as classified under the National Flood Insurance Program, is in order of the most hazardous to least hazardous:

1. Flood Zone V and Flood Zones prefixed V;

2. Flood Zone A and Flood Zones prefixed A;

3. Flood Zone D;

4. Flood Zone B, Flood Zone X (shaded) and Zone X-500;

5. Flood Zone C and Flood Zone X.

F. The most the Company will pay for the total of all loss or damage caused by Flood in any one Policy period is the single highest Annual Aggregate Sublimit of Insurance specified for Flood shown in the Supplemental Coverage Declarations. This Sublimit is part of, and does not increase, the Limit of Insurance that applies under this Policy.

Subject to the single highest Annual Aggregate Limit of Insurance:

1. Any individual Annual Aggregate Sublimit of Insurance shown in the Supplemental Coverage Declarations for Flood is the most the Company will pay in any one Policy period for all loss or damage to which that Sublimit of Insurance applies.

2. If more than one Annual Aggregate Sublimit of Insurance applies to loss or damage under this form in any one Occurrence, each limit will be applied separately, but the most the Company will pay under this form for all loss or damage in that Occurrence is the single highest Annual Aggregate Sublimit of Insurance applicable to that Occurrence.

G. Under the Property Coverage Form, when a building at the Insured Location is Covered Property insured under this Policy, the insurance provided under this form is extended to apply to loss or damage to underground pipes, flues and drains at those premises caused by Flood. However, this will not increase the Sublimit that applies to this insurance.

# Peleus Insurance Company
## 8720 Stony Point Parkway, Suite 400
## Richmond, VA 23235

NC R2 38 04 13

### EXCLUSION OF POLLUTANTS AND ASBESTOS FORM

**POLLUTANTS EXCLUSION AND LIMITED COVERAGE**

This insurance does not insure land, atmosphere or any watercourse or body of water, whether above or below ground.

It is further agreed that this insurance does not insure loss, damage or expense caused by, resulting from, contributed to or made worse by any of the following whether to property of the Named Insured or arising out of or resulting from the liability of the Named Insured, or the alleged liability of the Named Insured, or the defense of the Named Insured for property of others in the care, custody or control of the Named Insured (whether actual or constructive) or otherwise and except as provided in this form regardless of any other cause or event, whether or not dominant, which contributes concurrently or in any sequence to the loss.

(1) Actual, alleged, or threatened release, discharge, escape or dispersal of Pollutant(s) (as defined hereinafter), all whether direct or indirect, proximate or remote, sudden, accidental or gradual, or in whole or in part caused by, resulting from, contributed to or made worse by any physical loss or damage insured by this Policy.

However, if fire and/or explosion are covered, this insurance covers, subject to all of its terms, conditions and limitations, direct physical loss or damage by fire or explosion to property insured which results from the foregoing. In addition, this insurance covers loss or damage directly caused by the actual contact of property insured by this Policy with Pollutant(s) when such actual contact of insured property with Pollutant(s) results directly from unfriendly fire (as defined hereinafter), smoke from unfriendly fire, lightning, explosion, aircraft and objects falling therefrom, leakage or collision, upset or overturn of transporting conveyance but only to the extent that these perils are not excluded by this Policy.

(2) The enforcement, direction or request of any civil or governmental authority regulating the test for, monitoring, prevention, control, removal, tearing down, demolition, disposal, treatment, clean-up, decontamination, detoxification, neutralization or containment of Pollutant(s), or the restoration, construction, reconstruction or replacement of property contaminated by Pollutant(s).

(3) Any fines, penalties, compensatory damages, punitive damages, or any other damages, awards or settlements adjudged against the Named Insured by any civil or judicial body, or board of arbitration, nor any sums which the Named Insured shall voluntarily agree to pay to any third party(ies), nor any legal fees or other costs of defense of legal actions, claims, or proceedings and appeals arising out of or attributable to any loss, damage or expense caused by or resulting from Pollutant(s).

It is further agreed that if this Policy does cover the cost of the removal of debris of insured property damaged or destroyed by a Covered Cause of Loss, or the liability of the Named Insured for the cost of the removal of debris of the insured property or the cost of defense of the Named Insured for the removal of debris of insured property, this insurance shall not be liable for the expense to:

(i) extract or remove Pollutant(s) from the debris; or

(ii) extract or remove Pollutant(s) from land, atmosphere or any watercourse or body of water, whether above or below ground; or

(iii) remove, restore or replace contaminated or polluted land, atmosphere or any watercourse or body of water, whether above or below ground; or

27
EXHIBIT "A"

# Peleus Insurance Company
## 8720 Stony Point Parkway, Suite 400
## Richmond, VA 23235

(iv)    remove or transport any property or debris to a site for storage or decontamination required because the property or debris is affected by Pollutant(s), whether or not such removal, transportation, or decontamination is required by law or regulation; or

(v)    store any property or debris requiring specialized storage because the property or debris is affected by Pollutant(s), whether or not such storage is required by law or regulation;

regardless of any other cause or event, whether or not dominant, which contribute concurrently to or in any sequence to the loss, damage or expense.

It is further agreed that this exclusion does not apply to the costs the Named Insured incurs to clean up or remove Pollutant(s) from land, water or air at an Insured Location if the discharge, dispersal, seepage, migration, release or escape of the Pollutant(s) is caused by or results from fire, explosion, smoke, or leakage from fire extinguishing equipment that occurs during the Policy period.

The costs will be paid only if they are reported in writing within 180 days of the date the peril occurred which caused or resulted in the discharge, dispersal, seepage, migration, release or escape of the Pollutant(s).

The Company will not be liable for the costs to test for, monitor, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of Pollutant(s), other than for testing that is performed during the clean up or removal of the Pollutant(s) from the land, water or air.

This limited coverage does not apply if the discharge, dispersal, seepage, migration, release or escape of Pollutant(s) occurred prior to the inception date of this Policy.

For the purpose of this insurance, Pollutant(s) means any solid, liquid, gaseous or thermal irritant or contaminant substance, including but not limited to any smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste (whether recycled, reconditioned or reclaimed) which are designated as Pollutant(s) in listing(s) published by the United States Environmental Protection Agency (U.S.E.P.A.) or by any other governmental authority, or, if unlisted, exhibit(s) the characteristic(s) of ignitability, corrosivity, reactivity, or toxicity to a degree which would cause it (them) to be so listed if the subject were to be addressed by the U.S.E.P.A. or by any other governmental authority.

For the purposes of this insurance, "unfriendly fire" means a fire which becomes uncontrolled or breaks out from where it was intended to be.

## ASBESTOS EXCLUSION AND LIMITED COVERAGE

**A.**    This Policy only insures asbestos physically incorporated in an insured building or structure, and then that part of the asbestos which has been physically damaged during the Policy period by one of the following Listed Perils:

Fire; Explosion; Lightning; Windstorm; Hail; Collapse; Water Damage; Direct impact of a vehicle, aircraft, or vessel; Riot or civil commotion; vandalism or malicious mischief; or accidental discharge of fire protective equipment.

This coverage is subject to all limitations in the Policy to which this clause is attached and, in addition, to each of the following specific conditions and limitations:

1.    The said building or structure must be insured under this Policy for damage by that Listed Peril.

2.    The Listed Peril must be the immediate, sole cause of the damage of the asbestos.

3.    The Named Insured must report to the Company, in writing, the existence of the damage to the asbestos as soon as practicable after the Listed Peril first damaged the asbestos. However this Policy

# Peleus Insurance Company
## 8720 Stony Point Parkway, Suite 400
## Richmond, VA 23235

does not insure any such damage first reported to the Company more than 365 days after this Policy expires, terminates, or is cancelled.

4. Insurance provided under this Policy in respect of asbestos shall not include any sum relating to:

   i. any faults in the design, manufacture, or installation of the asbestos.

   ii. asbestos not physically damaged by the Listed Peril including any government or regulatory authority direction or request of whatsoever nature relating to undamaged asbestos.

**B.** The most the Company will pay for loss or damage for any one Insured Location which is attributed to the presence or possible presence of asbestos or caused by or resulting from asbestos, including but not limited to costs to test for, survey, monitor or assess the existence, concentration or effects of asbestos, costs to prepare abatement protocols or plans, and costs of asbestos removal and abatement, as limited in item A, is: **$10,000** for any one Insured Location, in the aggregate, during any one Policy period.

**C.** Except as set forth in the foregoing Sections **A** and **B**, this Policy does not insure asbestos or any sum relating thereto, including any loss, damage, expense or increased cost caused by, resulting from, contributed to or made worse by asbestos.

EXHIBIT "A"

**Peleus Insurance Company**
**8720 Stony Point Parkway, Suite 400**
**Richmond, VA 23235**

NC R2 39   04 15

**EXCLUSION OF NUCLEAR ENERGY RISKS, WAR AND MILITARY ACTION, ELECTRONIC DATA, NUCLEAR HAZARD, BIOLOGICAL AGENTS, TOXIC MATERIALS AND RADIOACTIVE CONTAMINATION FORM**

This modifies the insurance provided under this Policy.

**A. NUCLEAR ENERGY RISKS EXCLUSION**

This agreement shall exclude Nuclear Energy Risks whether such risks are written directly and/or via Pools and/or Associations.

For all purposes of this Policy Nuclear Energy Risks shall mean all first party and/or third party insurances in respect of:

I. All Property, on the site of a nuclear power station.

Nuclear Reactors, reactor buildings and plant and equipment therein on any site other than a nuclear power station.

II. All Property, on any site (including but not limited to the sites referred to in I above) used or having been used for:

(a) The generation of nuclear energy; or

(b) The Production, Use or Storage of Nuclear Material.

III. Any other Property eligible for insurance by the relevant local Nuclear Insurance Pool and/or Association but only to the extent of the requirements of that local Pool and/or Association.

IV. The supply of goods and services to any of the sites, described in I through III above, unless such insurances shall exclude the perils of irradiation and contamination by Nuclear Material.

Except as undernoted, Nuclear Energy Risks shall not include:

(i) Any insurance in respect of the construction or erection or installation or replacement or repair or maintenance or decommissioning of Property as described in I through III above (including contractors' plant and equipment);

(ii) Any Machinery Breakdown or other Engineering insurance not coming within the scope of (i) above.

Provided always that such insurance shall exclude the perils of irradiation and contamination by Nuclear Material.

However, the above exemption shall not extend to:

1. The provision of any insurance whatsoever in respect of:

(a) Nuclear Material;

(b) Any Property in the High Radioactivity Zone or Area of any Nuclear Installation as from the introduction of Nuclear Material or - for reactor installations - as from fuel loading or first criticality where so agreed with the relevant local Nuclear Insurance Pool and/or Association.

2. The provision of any insurance or reinsurance for the undernoted perils:

- Fire, lightning, explosion;

- Earthquake;

- Aircraft and other aerial devices or articles dropped therefrom;

EXHIBIT "A"

**Peleus Insurance Company**
**8720 Stony Point Parkway, Suite 400**
**Richmond, VA 23235**

- Irradiation and radioactive contamination;

- Any other peril insured by the relevant local Nuclear Insurance Pool and/or Association;

in respect of any other Property not specified in 1 above which directly involves the Production, Use or Storage of Nuclear Material as from the introduction of Nuclear Material into such Property.

**Definitions**

"**Nuclear Material**" means:

(i) Nuclear fuel, other than natural uranium and depleted uranium, capable of producing energy by a self-sustaining chain process of nuclear fission outside a Nuclear Reactor, either alone or in combination with some other material; and

(ii) Radioactive Products or Waste.

"**Radioactive Products or Waste**" means any radioactive material produced in, or any material made radioactive by exposure to the radiation incidental to the production or utilization of nuclear fuel, but does not include radioisotopes which have reached the final stage of fabrication so as to be usable for any scientific, medical, agricultural, commercial or industrial purpose.

"**Nuclear Installation**" means:

(i) Any Nuclear Reactor;

(ii) Any factory using nuclear fuel for the production of Nuclear Material, or any factory for the processing of Nuclear Material, including any factory for the reprocessing of irradiated nuclear fuel; and

(iii) Any facility where Nuclear Material is stored, other than storage incidental to the carriage of such material.

"**Nuclear Reactor**" means any structure containing nuclear fuel in such an arrangement that a self-sustaining chain process of nuclear fission can occur therein without an additional source of neutrons.

"**Production, Use or Storage of Nuclear Material**" means the production, manufacture, enrichment, conditioning, processing, reprocessing, use, storage, handling and disposal of Nuclear Material.

"**Property**" shall mean all land, buildings, structures, plant, equipment, vehicles, contents (including but not limited to liquids and gases) and all materials of whatever description whether fixed or not.

"**High Radioactivity Zone or Area**" means:

(i) For nuclear power stations and Nuclear Reactors, the vessel or structure which immediately contains the core (including its supports and shrouding) and all the contents thereof, the fuel elements, the control rods and the irradiated fuel store; and

(ii) For non-reactor Nuclear Installations, any area where the level of radioactivity requires the provision of a biological shield.

**B. WAR AND MILITARY ACTION EXCLUSION**

Notwithstanding any provision to the contrary within this Policy or any endorsement thereto it is agreed that this Policy excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any of the following regardless of any other cause or event contributing concurrently or in any other sequence to the loss:

1. war, invasion, acts of foreign enemies, hostilities or warlike operations (whether war be declared or not), civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power; or

# Peleus Insurance Company
## 8720 Stony Point Parkway, Suite 400
## Richmond, VA 23235

2.    any act of terrorism.

For the purpose of this clause an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This clause also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to 1 and/or 2 above.
If the Company alleges that by reason of this exclusion, any loss, damage, cost or expense is not covered by this Policy the burden of proving the contrary shall be upon the Named Insured.

In the event any portion of this clause is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

## C. ELECTRONIC DATA

1.  Electronic Data Exclusion

Notwithstanding any provision to the contrary within the Policy or any endorsement thereto, it is understood and agreed as follows:

(a)    This Policy does not insure loss, damage, destruction, distortion, erasure, corruption or alteration of Electronic Data from any cause whatsoever (including but not limited to Computer Virus) or loss of use, reduction in functionality, cost, expense of whatsoever nature resulting therefrom, regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

"Electronic Data" means facts, concepts and information converted to a form useable for communications, interpretation or processing by electronic and electromechanical data processing or electronically controlled equipment and includes programs, software and other coded instructions for the processing and manipulation of data or the direction and manipulation of such equipment.

"Computer Virus" means a set of corrupting, harmful or otherwise unauthorized instructions or code including a set of maliciously introduced unauthorized instructions or code, programmatic or otherwise, that propagate themselves through a computer system or network of whatsoever nature. Computer Virus includes but is not limited to 'Trojan Horses', 'worms' and 'time or logic bombs'.

(b)    However, in the event that a peril listed below results from any of the matters described in paragraph (a) above, this Policy, subject to all its terms, conditions and exclusions, will cover physical damage occurring during the Policy period to property insured by this Policy directly caused by such listed peril.

Listed Perils
Fire
Explosion

2.  Electronic Data Processing Media Valuation

Notwithstanding any provision to the contrary within the Policy or any endorsement thereto, it is understood and agreed as follows:

Should electronic data processing media insured by this Policy suffer physical loss or damage insured by this Policy, then the basis of valuation shall be the cost of the blank media plus the costs of copying the Electronic Data from back-up or from originals of a previous generation. These costs will not include research and engineering nor any costs of recreating, gathering or assembling such Electronic Data. If the media is not repaired, replaced or restored the basis of valuation shall be the cost of the blank media. However this Policy does not insure any amount pertaining to the value of such Electronic Data to the Named Insured or any other party, even if such Electronic Data cannot be recreated, gathered or assembled.

EXHIBIT "A"

**Peleus Insurance Company**
**8720 Stony Point Parkway, Suite 400**
**Richmond, VA 23235**

All other terms and conditions remain unaltered.

## D. BIOLOGICAL AGENTS EXCLUSION

This insurance does not apply to loss or damage:
- which is a biological agent;
- which is in any way attributed to the presence of a biological agent; or
- caused by or resulting from a biological agent;

Regardless of any other cause that directly or indirectly:
- contributes concurrently to;
- contributes in any sequence to; or
- worsens;

the loss or damage, even if such cause or event would otherwise be covered.

This exclusion does not apply to loss or damage which is attributed to the presence of or caused by or resulting from mold, mildew or other fungi, or any mycotoxins, spores or other byproducts of any of them:
- as the direct result of a cause or event that is not otherwise excluded under this Policy; and
- provided such loss or damage is reported to the Company, in writing, before the Policy expires, terminates or is cancelled, and within thirty (30) days of the date that the Named Insured first discovered, or in the exercise of reasonable care should have discovered, the loss or damage.

As respects this exclusion, the following definition applies:

Biological Agent means any:
- bacteria;
- mildew, mold, wet rot, dry rot, or other fungi;
- other microorganism;
- any mycotoxins, spores or other by-products of any of the foregoing;
- viruses or other pathogens (whether or not a microorganism); or
- colony or group of any of the foregoing.

## E. LIMITED COVERAGE FOR MOLD, MILDEW, WET ROT, DRY ROT, AND OTHER FUNGI:

The most the Company will pay for loss or damage that is attributed to the presence of or caused by or resulting from mold, mildew, wet rot, dry rot or other fungi, or any mycotoxins, spores or other byproducts of any of them is: **$2,500** for any one Insured Location, in the aggregate, during each Policy period.

## F. TOXIC MATERIALS EXCLUSION

This Policy does not insure loss or expense resulting from the actual, alleged or threatened release or escape of any solid, liquid or gaseous material that is toxic or poisonous to humans or animals ("Toxic Materials"), including but not limited to dioxin, polychlorinated biphenyls and lead.

This exclusion also applies to:

1. The removal of Toxic Materials from any structure, fixture, item of personal property or product;
2. Any demolition or increased cost of construction, repair, debris removal or loss of use necessitated by the enforcement of any law or ordinance regulating Toxic Materials;
3. Any governmental direction declaring that Toxic Materials present in or part of or utilized on any undamaged portion of the Named Insured's property can no longer be used for the purpose for which it was intended or installed and must be removed or modified.

33
EXHIBIT "A"

**Peleus Insurance Company**
**8720 Stony Point Parkway, Suite 400**
**Richmond, VA 23235**

This exclusion applies regardless of any other cause or event that contributes concurrently or in sequence to any such loss, damage or expenses.

## G. RADIOACTIVE CONTAMINATION and NUCLEAR EXCLUSION

This policy does not cover:

    (a) Loss or destruction of or damage to any property whatsoever or any loss or expense whatsoever resulting or arising therefrom or any consequential loss;

    (b) Any legal liability of whatsoever nature directly or indirectly caused by or contributed to by or arising from
        1.  Ionizing radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the combustion on nuclear fuel
        2.  The radioactive, toxic, explosive or other hazardous properties of any explosive nuclear assembly or nuclear component thereof.

## H. BIOLOGICAL, CHEMICAL, NUCLEAR, RADIOLOGICAL

Without qualification, this Policy does not insure loss, damage, business income, expense cost, or any other interest or obligation directly or indirectly resulting from or arising out of or in any way related to the following regardless of any other cause or event that in any way contributed concurrently or in any sequence to the loss claimed by the Named Insured.

    (a) The unlawful possession, use, release, discharge, dispersal or disposal of any chemical bacteriological, viral, radioactive or similar agents or matter regardless of who is responsible for the act and whether war be declared or not.

    (b) The unlawful possession, use, release, discharge, detonation, dispersal or disposal of any device or material capable of producing a nuclear reaction or the spread of radioactivity, regardless of who is responsible for the act and whether war be declared or not.

**Peleus Insurance Company**
**8720 Stony Point Parkway, Suite 400**
**Richmond, VA 23235**

NC R2 40 04 15

### EXCLUSION OF CERTIFIED ACTS AND

### OTHER ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE FORM

A. The following Exclusion is added:

We will not pay for loss or damage caused directly or indirectly by the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss, except for ensuing fire, but only to the extent as required by state statute as indicated in item B., below.

**EXCLUSION OF CERTIFIED ACTS AND OTHER ACTS OF TERRORISM**

We will not pay for loss or damage caused directly or indirectly by a "certified act of terrorism" or an "other act of terrorism", including action in hindering or defending against an actual or expected incident of a "certified act of terrorism" or an "other act of terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

But with respect to any such activity that also comes within the terms of the War And Military Action Exclusion, that exclusion supersedes this Terrorism Exclusion.

In the event of an act of terrorism that involves nuclear reaction or radiation, or radioactive contamination, this Terrorism Exclusion supersedes the Nuclear Hazard Exclusion.

**EXCLUSION OF NUCLEAR, BIOLOGICAL OR CHEMICAL TERRORISM**

We will not pay for loss or damage caused directly or indirectly by any act of terrorism:

1. that involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

2. that is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

3. in which pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials;

including action in hindering or defending against an actual or expected incident of terrorism. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

In the event of any incident of terrorism that is not subject to this Nuclear, Biological or Chemical Terrorism Exclusion, coverage does not apply to any element of loss or damage that is otherwise excluded under this Coverage Part or Standard Property Policy.

But with respect to any such activity that also comes within the terms of the War And Military Action Exclusion, that exclusion supersedes this Terrorism Exclusion.

In the event of an incident of terrorism that involves nuclear reaction or radiation, or radioactive contamination, this Terrorism Exclusion supersedes the Nuclear Hazard Exclusion.

**Peleus Insurance Company**
**8720 Stony Point Parkway, Suite 400**
**Richmond, VA 23235**

B. **Exception Covering Certain Fire Losses**

If a "certified act of terrorism" or an "other act of terrorism" results in fire, we will pay for the loss or damage caused by that fire, to the extent as required by state statute.  Such coverage for fire applies only to direct loss or damage by fire to Covered Property.  Therefore, for example, the exception does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or endorsements which apply to those forms, or to the Legal Liability Coverage Form or the Leasehold Interest Coverage Form.

C. The following definitions are added with respect to the provisions of this endorsement:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

    **a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

    **b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

"Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not a "certified act of terrorism". Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

## EXCLUSION OF GOVERNMENTAL OR MILITARY ACTION

The Governmental or Military Action exclusion is replaced by the following exclusion.

This insurance does not apply to loss or damage caused by or resulting from seizure, confiscation, expropriation, nationalization or destruction of property by order of governmental or military authority, whether de jure or de facto, regardless of any other cause or event that directly or indirectly:

- contributes concurrently to; or

- contributes in any sequence to,

the loss or damage, even if such other cause or event would otherwise be covered.

**Peleus Insurance Company**
**8720 Stony Point Parkway, Suite 400**
**Richmond, VA 23235**

NC R2 42   04 13

### EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA FORM

This modifies the insurance provided under this Policy.

**A.** The exclusion set forth in Paragraph B. below applies to all coverage under all forms and endorsements that comprise this Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover Business Income, Extra Expense, Rental Value or Action of Civil Authority.

**B.** The Company will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

**C.** With respect to any loss or damage subject to the exclusion in Paragraph B. above, such exclusion supersedes any exclusion relating to "Pollutants".

**D.** The terms of the exclusion in Paragraph B. above, or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Policy.

EXHIBIT "A"

## Peleus Insurance Company
### 8720 Stony Point Parkway, Suite 400
### Richmond, VA 23235

NC R5 02   04 15

### GENERAL CONDITIONS

All coverages included in this Policy are subject to the following conditions.

**A. ABANDONMENT:** There can be no abandonment of any property to the Company.

**B. APPLICATION OF DEDUCTIBLES**

1. Any deductibles that apply are specified in the Supplemental Coverage Declarations or in the forms or endorsements attached to this Policy.

2. Dollar Deductibles

   When the deductible that applies is specified as a dollar amount, the Company will not pay for loss or damage to which the deductible applies until the amount of loss or damage, after applying any applicable Sublimits of Insurance, exceeds the specified deductible amount. The Company will then pay the covered amount of the loss or damage in excess of the specified deductible, up to the applicable Limit of Insurance or Sublimit of Insurance.

3. Percentage Deductibles

   a. Percentage deductibles may be written as a percentage of total values or as a percentage per unit of insurance.

   b. Total Values Percentage Deductibles

   When the deductible that applies is specified as a percentage of total values, the deductible will be equal to the percentage of the total values specified in the most recent Statement of Values on file with the Company for buildings, structures, personal property and rental values to which the deductible applies.

   c. When both a percentage deductible and a dollar deductible are specified together as applicable to a coverage or exposure applying at each Insured Location in any one Occurrence, the percentage deductible will be calculated and applied as described in a. and b. above, but the dollar deductible is the minimum amount the Company will deduct at each Insured Location in any one Occurrence, as specified, for all loss or damage to which the deductible is stated to apply.

   d. When a maximum dollar deductible is also specified as applicable, the specified maximum deductible is the most the Company will deduct in any one Occurrence for all loss or damage to which the deductible is stated to apply.

4. Hour Deductibles

   If the deductible for Business Income or any other time element coverage is specified in hours, the Company will not be liable for any loss incurred during the specified number of hours immediately following the start of the "Period of Restoration" or other applicable period during which incurred loss would otherwise be covered. The Company will then pay the amount of loss incurred for the remainder of the "Period of Restoration" or other applicable period during which incurred loss is covered, up to the Limit of Insurance or any applicable Sublimit.

5. Two or More Deductibles in Any One Occurrence

   If any causes of loss, coverages or types of property insured against under this Policy are subject to separate deductibles and two or more of those causes of loss, coverages and/or types of property are involved in any one loss Occurrence, each cause of loss, coverage and type of property loss will be adjusted separately. However, the total of the deductible amounts applied will not exceed the highest deductible amount applied in that Occurrence for anyone involved cause of loss, coverage or type of property.

   This provision does not apply to:

   a. Earth Movement, Earthquake, Earthquake Sprinkler Leakage, Flood, Windstorm or Hurricane deductibles; or

38
EXHIBIT "A"

**Peleus Insurance Company**
**8720 Stony Point Parkway, Suite 400**
**Richmond, VA 23235**

   b.  Any hour deductible.

6.  Application of Earth Movement, Earthquake, Earthquake Sprinkler Leakage, Flood, and Boiler and Machinery Deductibles

Any deductible shown on the Supplemental Coverage Declarations for a cause of loss listed below applies only with respect to loss or damage to which the corresponding cause of loss form applies:

   a.  Earth Movement;

   b.  Earthquake;

   c.  Earthquake Sprinkler Leakage;

   d.  Flood; or

   e.  Boiler and Machinery.

These deductibles do not apply to any loss or damage by these causes of loss that is covered in the absence of such forms, such as fire or explosion that results from earth movement.

7.  Any Other Covered Loss Deductible

Unless otherwise specifically stated in this Policy, the deductible shown in the Supplemental Coverage Declarations for "any other covered loss" applies to all causes of loss, coverages and types of property insured against under this Policy for which no deductible is specifically shown in the Supplemental Coverage Declarations or in the forms or endorsements attached to this Policy, except Extra Expense.

C.  APPRAISAL If the Company and the Named Insured disagree on the value of the property or the amount of loss and mutually agree to resolve the disagreement through an appraisal, an appraisal of the loss may be conducted.

Each party will select a competent and impartial appraiser and notify the other of the appraiser selected within 20 days after their mutual agreement to conduct an appraisal of the loss. The two appraisers will select an umpire. If they cannot agree upon an umpire within 15 days, then, at the request of either the Company or the Named Insured, and after providing at least 10 days' notice of hearing to the non-requesting party by (i) certified mail and (ii) facsimile or e-mail, selection of the umpire will be made by a judge of a district court in the county where the loss occurred. The appraisers will state separately the value of the property and amount of loss. If the appraisers submit a written report of agreement to the Named Insured and the Company, the amounts agreed upon will be the value of the property and the amount of loss. The amounts agreed upon will be binding on both parties. If the appraisers fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding on both parties.

Each party will:

1.  Pay its chosen appraiser; and

2.  Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, the Company will still retain its right to apply the exclusions, limitations and other terms and conditions of the Policy, including but not limited to its right to deny the claim.

D.  **CANCELLATION AND NONRENEWAL**

  1.  Cancellation

    a.  The First Named Insured may cancel this Policy by mailing or delivering to the Company advance written notice of cancellation.

    b.  The Company may cancel this Policy by mailing or delivering to the First Named Insured written notice of cancellation at least:

EXHIBIT "A"

# Peleus Insurance Company
## 8720 Stony Point Parkway, Suite 400
## Richmond, VA 23235

    (1) Ten (10) days before the effective date of cancellation if the Company cancels for nonpayment of premium; or

    (2) Thirty (30) days before the effective date of cancellation if the Company cancels for any other reason.

  c. The Company will mail or deliver notice to the Named Insured's last mailing address known to the Company.

  d. Notice of cancellation will state the effective date of cancellation. If the Policy is cancelled, that date will become the end of the Policy period. Cancellation will not affect coverage on any shipment in transit on the date of the cancellation. Coverage will continue in full force for such property in transit until it is delivered and accepted.

  e. If this Policy is cancelled, the Company will send to the Named Insured any premium refund due.  This refund will be pro rata. The cancellation will be effective even if the Company has not made or offered a refund.

  f. If notice is mailed, proof of mailing will be sufficient proof of notice.

  g. If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended to be equal to the minimum period of limitation permitted by such law.

2. Nonrenewal

  In the event the Company decides not to renew this Policy, the Company will mail or deliver to the Named Insured written notice of the nonrenewal not less than thirty (30) days before the expiration date.

**E. CHANGES:** The Policy terms can be amended or waived only by written endorsement or individual Declarations Certificates issued as part of this Policy by the Company or by Strata Underwriting Managers on behalf of the Company.

**F. CONCEALMENT, MISREPRESENTATION OR FRAUD:** This Policy is void as to a Named Insured in any case of fraud by that Named Insured as it relates to this Policy at any time. It is also void as to a Named Insured if that Named Insured, at any time, whether before or after a loss, conceals or misrepresents a material fact concerning:

1. This Policy;

2. The Covered Property;

3. The Named Insured's interest in the Covered Property or an Insured Location; or

4. A claim under this Policy.

**G. CONTROL OF PROPERTY:** Any act or neglect of any person other than the Named Insured beyond the direction or control of the Named Insured will not affect this insurance.

The breach of any condition of this Policy at any one or more Insured Locations will not affect coverage at any Insured Location where, at the time of loss or damage, the breach of condition does not exist.

**H. CURRENCY:** It is understood and agreed that all amounts used herein are in the currency of the United States of America and that premiums and losses are payable in United States currency.  In the event of a loss adjustment involving foreign currency, the conversion into the currency of the United States of America will be at the rate of exchange quoted in *The Wall Street Journal* as of the date of the Loss.

**I. EXAMINATION OF THE NAMED INSURED'S BOOKS AND RECORDS:** The Company may examine and audit the Named Insured's books and records as they relate to this Policy at any time during the Policy period and up to three (3) years afterward.

**J. INSPECTIONS AND SURVEYS**

The Company has the right but is not obligated to:

1. Make inspections and surveys at any time;

2. Give the Named Insured reports on the conditions found resulting therefrom; and

EXHIBIT "A"

# Peleus Insurance Company
## 8720 Stony Point Parkway, Suite 400
## Richmond, VA 23235

3.  Recommend changes.

Neither the right to make inspections, nor the making thereof, nor any Insured Location analysis, nor any advice or reports resulting therefrom will imply any liability, or constitute an undertaking on behalf of or for the benefit of the Named Insured. Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. The Company does not make safety inspections. The Company does not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. In addition, the Company does not warrant that the conditions are safe, healthful or in compliance with any law, rule, regulation, code or standard.

This condition applies not only to the Company, but also to any rating, advisory, rate service or similar organization that makes insurance inspections, surveys, reports or recommendations.

**K. LEGAL ACTION AGAINST THE COMPANY:** No one may bring a legal action against the Company under this

Policy unless,

1.  There has been full compliance with all of the terms of this Policy; and
2.  The action is brought in the United States of America, in a court having proper jurisdiction, within two (2) years and one (1) day after the date on which the direct physical loss or damage occurred.

**L. LIBERALIZATION:** If the Company adopts any revision that would broaden the coverage under this Policy without additional premium, within forty five (45) days prior to or during the Policy period, the broadened coverage will immediately apply to this Policy.

**M. SUBLIMITS OF INSURANCE:** The most the Company will pay for all loss or damage for any one Insured Location in any one Occurrence under this Policy is the Policy Limit shown in the Declarations Certificate subject to any applicable Sublimits of Insurance. Sublimit(s) of Insurance shown in the Declarations Certificate, Schedule(s), Coverage Form(s) or endorsement(s) are included within, and do not increase, the Policy Limit.

**N. LOSS PAYMENT**

1.  In the event of loss or damage to property covered by this Policy, at the option of the Company, the Company will either:
    a.  Pay the value of lost or damaged property;
    b.  Pay the cost of repairing or replacing the lost or damaged property subject to 2. below;
    c.  Take all or any part of the property at an agreed or appraised value; or
    d.  Repair, rebuild, or replace the property with other property of like kind, size and quality subject to 2. below.
2.  Except as otherwise specifically provided in this Policy, the cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.
3.  The Company will give notice of its intentions within Fifteen (15) business days after the Company receives all items, statements, and forms required by the Company to secure a final proof of loss.
4.  The Company will not pay the Named Insured more than the Named Insured's financial interest in the Covered Property.
5.  The Company may adjust losses with the owners of lost or damaged property if other than the Named Insured. If the Company pays the owners, such payments will satisfy the Named Insured's claims against the Company for the owner's property. The Company will not pay the owners more than their financial interest in the Covered Property.
6.  The Company may elect to defend the Named Insured against suits arising from claims of owners of property. The Company will do this at its own expense.
7.  The Company will pay for covered loss or damage within Twenty (20) business days after the Company receives the sworn proof of loss it requires, if
    a.  The Named Insured has complied with all of the terms of this Policy; and
    b.  The Company has:

41
EXHIBIT "A"

# Peleus Insurance Company
## 8720 Stony Point Parkway, Suite 400
## Richmond, VA 23235

    (1) reached agreement with the Named Insured on the amount of loss,

    (2) received an appraisal award, or

    (3) received all items, statements, and forms required by the Company to secure a proof of loss.

8. At the option of the Company, the Company may make a partial payment toward any claims, subject to the Policy provisions and the Company's normal adjustment process. To be considered for a partial claim payment, the Named Insured must submit a partial sworn proof of loss with supporting documentation. Any applicable Policy deductibles must be satisfied before any partial payments are made.

9. If two or more of this Policy's coverages apply to the same loss or damage, the Company will not pay more than the actual amount of the loss or damage.

**O. MORTGAGEE INTERESTS AND OBLIGATIONS:** Loss or damage, if any, as covered under this Policy, will be payable to each mortgagee (or trustee) designated herein in order of their precedence as their interests may appear. With respect to the mortgagee's (or trustee's) interest, this insurance will not be invalidated by any act of the Named Insured (mortgagor or owner), nor by any foreclosure or other similar proceedings or notice of sale relating to the property, nor by any change in title or ownership of the property, provided that:

1. In the event the Named Insured (mortgagor or owner) has neglected to pay any premium due under this Policy, the mortgagee (or trustee), at the request of the Company, pays the same;

2. The mortgagee (or trustee) has notified the Company of any change in ownership, occupancy or increase in the Insured Location or hazards known to the mortgagee (or trustee) and, at the request of the Company, pays the premium for such increased Insured Location or hazards; and

3. The mortgagee (or trustee) submits a signed, sworn proof of loss within sixty (60) days after having been notified by the Company that the Named Insured (mortgagor or owner) has failed to do so.

In the event the Company pays the mortgagee (or trustee) for any loss or damage covered under this Policy and therefore claims that as to the Named Insured (mortgagor or owner) no liability existed, the Company will be subrogated to all the rights, to the extent of such payment, of the party to whom such payment was made. The Company may, at the Company's option, pay to the mortgagee (or trustee) the whole principal due plus any accrued interest. Thereupon, the Company will receive a full assignment and transfer of the mortgage and other such securities and the remaining mortgage debt will be payable by the Named Insured (mortgagor or owner) to the Company.

The Company reserves the right to cancel this Policy at any time as provided by its terms but, in such case, this Policy will continue in force for the benefit only of the mortgagee (or trustee) for ten (10) days after notice to the mortgagee (or trustee) of cancellation for nonpayment of premium or sixty (60) days after notice to the mortgagee (or trustee) of cancellation for any other reason. In the event the Company elects not to renew this Policy, the Company will give written notice to the mortgagee (or trustee) at least thirty (30) days prior to the expiration of this Policy.

**P. NO BENEFIT TO BAILEE:** No person or organization, other than the Named Insured, having custody of Covered Property will benefit from this insurance.

**Q. NO REDUCTION BY LOSS:** Except with respect to any aggregate limit(s) or aggregate Sublimit(s) of Insurance in this Policy, it is mutually understood and agreed that the amount of insurance will not be reduced by the payment of losses under this Policy.

**R. NOTICE OF LOSS AND DUTIES IN THE EVENT OF LOSS OR DAMAGE**

1. The Named Insured must see that the following are done in the event of loss or damage:

    a. Notify the police if a law may have been broken.

    b. Give the Company prompt written notice of the loss or damage. For losses caused by fire, Windstorm or hail, notice must be given no later than 365 days after this Policy expires, terminates, or is cancelled. Notice should include a description of the property involved, and a description of how, when, and where the loss or damage occurred.

    c. Promptly make claim in writing against any other party, which had custody of the Covered Property at the time of loss.

EXHIBIT "A"

### Peleus Insurance Company
### 8720 Stony Point Parkway, Suite 400
### Richmond, VA 23235

d. Take all reasonable steps to protect the Covered Property from further damage, and keep a record of expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, the Company will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

e. At the request of the Company, give the Company complete inventories of the damaged and undamaged property, including quantities, costs, values and amount of loss claimed.

f. As often as may be reasonably required, permit the Company to inspect the property and records proving the loss or damage and examine the Named Insured's books and records.

g. Permit the Company to take samples of damaged and undamaged property for inspection, testing and analysis and permit the Company to make copies from the Named Insured's books and records.

h. Send the Company a signed, sworn proof of loss containing the information that the Company requests to investigate the claim. The Named Insured must do this within sixty (60) days after the Company's request. The Company will supply the Named Insured with the necessary forms.

i. Cooperate with the Company in the investigation or settlement of the claim.

2. The Company may examine any Named Insured under oath, while not in the presence of any other Named Insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including a Named Insured's books and records. In the event of an examination, a Named Insured's answers must be signed.

**S. OTHER INSURANCE**

1. Underlying Insurance

   Permission is granted to the Named Insured to purchase insurance on all or any part of the deductibles of this Policy, and the existence of such underlying insurance will not prejudice any recovery otherwise payable under this Policy. If the limits of such underlying insurance exceed the deductible which would apply under this Policy, then the insurance provided by this Policy will apply only as excess after the limits applicable to the underlying insurance, including that portion which exceeds such deductible, have been exhausted.

2. Excess Insurance

   Permission is granted to the Named Insured to have excess insurance over the Limit(s) of Insurance set forth in this Policy without prejudice to this Policy. The existence of such insurance will not reduce the Company's liability under this Policy.

3. Other Insurance Subject to Same Plan, Terms, Conditions and Provisions

   In the event the Named Insured has other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Policy, the Company will pay its share of the covered loss or damage. The Company's share is the proportion that the applicable Limit of Insurance under this Policy bears to the Limits of Insurance of all insurance covering on the same basis.

   If there is other insurance covering the same loss or damage, other than that described above, the Company will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether the Named Insured can collect on it or not. However, the Company will not pay more than the applicable Limit of Insurance.

**T. POLICY PERIOD AND TERRITORY:** Under this Policy, the Company will cover loss or damage that commences during the Policy period as specified in the Declarations Certificate and, except as otherwise specifically provided, within the Policy Territory. The Policy Territory is the United States of America (including its territories and possessions).

**U. RECOVERED PROPERTY:** Salvages and all recoveries shall be first deducted from such loss to arrive at an amount of liability attaching hereunder. In the event either the Named Insured or the Company recovers any property after loss settlement, that party must give the other prompt notice. Such recovery shall be applied as if recovered or received prior to the aforesaid settlement. At the option of the Named Insured, the property will be

43

# Peleus Insurance Company
## 8720 Stony Point Parkway, Suite 400
## Richmond, VA 23235

returned to the Named Insured. The Named Insured must then return to the Company the amount the Company paid to the Named Insured for the property.

The Company will pay (1) the recovery expenses and (2) the costs to repair the recovered property. However, the amount that the Company pays will not exceed the total of (1) and (2) above,

## V. SUBROGATION AND SUBROGATION WAIVER

1. Subrogation – Transit

   The following subrogation provisions apply to any transit coverage provided under this Policy:

   a. If any person or organization to or for whom the Company makes payment under any transit coverage provisions of this Policy has rights to recover damages from another, those rights are transferred to the Company to the extent of such payment.  That person or organization must do everything necessary to secure the Company's rights and must do nothing after the loss to impair them.

   b. Insurance under the transit coverage provisions will be null and void if any Named Insured does any act or enters into any agreement, before or after loss, which in any way releases, impairs or destroys the right to recover against any carrier for hire, or other party liable for the loss, or transfers such right to anyone other than the Company.  Even if the transit coverage becomes null and void, the Company has the right to retain and recover the premium for this coverage. The Named Insured does have permission to accept the limited liability form receipts or bills of lading commonly used by carriers for hire without prejudice to this coverage. The Company is not liable however, for any loss that is settled or compromised without the written consent of the Company.

   c. If the Company pays for loss or advances or loans money under the transit coverage, the Named Insured will, upon request and at the expense of the Company, make claim upon and institute legal proceedings against any carrier, bailee or other party liable for the loss. At the option of the Company, such claims or legal proceedings may be instituted in the name of the Named Insured. The Named Insured agrees to fully cooperate with the Company in making such claims and prosecuting such legal proceedings.

2. Subrogation – All Other Coverages

   If any person or organization to or for whom the Company makes payment under this Policy has rights to recover damages from another; those rights are transferred to the Company to the extent of such payment. That person or organization must do everything necessary to secure the Company's rights and must do nothing after the loss to impair them. The Company will be entitled to priority of recovery against any such third party (including interest) to the extent payment has been made by the Company, plus attorney's fees, expenses or costs incurred by the Company.

   However, the Named Insured may waive its rights against another party by specific written agreement:

   a. Prior to a loss to Covered Property.

   b. After a loss to Covered Property or Covered Income only if, at the time of loss, that party is one of the following:

      (1) Someone insured by this insurance;

      (2) A business firm owned or controlled by the Named Insured or that owns or controls the Named Insured; or

      (3) The Named Insured's tenant.

   Such waiver will not invalidate or restrict this insurance.

## W. TRANSFER OF THE NAMED INSURED'S RIGHTS AND DUTIES UNDER THIS POLICY: The Named Insured's rights and duties under this Policy may not be transferred except in the case of death of an individual Named Insured.  If an individual Named Insured dies, the Named Insured's rights and duties will be transferred to the Named Insured's legal representative but only while acting within the scope of duties as the Named Insured's legal representative.  Until the Named Insured's legal representative is appointed, anyone having proper temporary custody of the Named Insured's property will have rights and duties but only with respect to that property.

EXHIBIT "A"

# Peleus Insurance Company
## 8720 Stony Point Parkway, Suite 400
## Richmond, VA 23235

**X. UNINTENTIONAL ERRORS IN DESCRIPTION:** No inadvertent error, omission or failure in making reports or other data hereunder shall prejudice the Named Insured's right of recovery, but shall be corrected when discovered.

**Y. JOINT LOSS ADJUSTMENT WITH THE BOILER & MACHINERY (EQUIPMENT BREAKDOWN) INSURER:** in the event of loss or damage to property at an Insured Location insured in this Policy and also insured in a separate Boiler and Machinery insurance policy and there is a disagreement between the insurers with respect to:

    A. Whether such loss or damage is insured against by this Policy or by such Boiler & Machinery insurance policy, or

    B. The extent of participation of this Policy and of such Boiler & Machinery insurance policy in a loss which is insured against partially or wholly or by any or all of said policies.

The Company shall, upon written request of the Named Insured, pay to the Named Insured one-half (1/2) of the amount of the loss which is in disagreement but in no event more than the Company would have paid if there had been no Boiler & Machinery insurance policy in effect, subject to the following conditions:

    1. The amount of the loss which is in disagreement, after making provisions for any undisputed claims payable under the said policies and after the amount of the loss is agreed upon by the Named Insured and the Insurers, is limited to the minimum amount remaining payable under either the Boiler & Machinery policy or the Policy.

    2. The Boiler & Machinery insurance company shall simultaneously pay to the Named Insured one-half (1/2) of said amount which is in disagreement, but in no event more than the Boiler & Machinery insurance company would have paid if there had been no property policy in effect, and also limited to the minimum amount remaining payable under either the Boiler & Machinery policy or this Policy

    3. The payments by the insurers hereunder and acceptance of the same by the Named Insured signifies the agreement of the Named Insured to submit to and proceed with arbitration within ninety (90) days of such payments.

The arbitrators shall be three in number, one of whom shall be appointed by the Boiler & Machinery insurance company, one whom shall be appointed by the Company, and the third appointed by consent of the other two. The decision by the arbitrators shall be binding on the insurers and judgment upon such award may be entered in any court of competent jurisdiction.

    4. The Named Insured agrees to cooperate in connection with such arbitration, but not to intervene therein.

    5. This provision shall not apply unless such other policy issued by the Boiler & Machinery insurance company is similarly endorsed.

    6. Acceptance by the Named Insured of sums paid pursuant to the provisions.

**Z. PRIORITY OF PAYMENTS/STEPDOWN/DROPDOWN: Primary:** Any recoveries made under this Policy shall first apply to loss or damage not insured against by the excess policy(ies). Upon exhaustion of this Policy's limit, the excess policy(ies) shall step down and be liable for the loss in excess of the amount attributed to this Policy as respects loss or damage insured thereunder subject to the excess policy(ies) limits.

**Excess:** The amount of loss from any one Occurrence, for which the excess policy(ies) is excess, shall be determined by the combined loss, damage and expense, as insured under the primary policy. In the event of loss or damage involving more than one coverage or peril, the Limits of Liability of the underlying policies shall first apply to the coverage(s) or peril(s) not insured by the excess policy(ies) , and the remainder, if any, to the coverage(s) or peril(s) as provided by the excess policy(ies) . Upon erosion or exhaustion of the Limits of Liability of the underlying

EXHIBIT "A"

**Peleus Insurance Company**
**8720 Stony Point Parkway, Suite 400**
**Richmond, VA 23235**

policy(ies), the excess policy(ies) shall then be liable for the loss uncollected from the coverage(s) or peril(s) insured by the underlying policy(ies)r, subject to the Limit of Liability specified herein. In the event of reduction or exhaustion of the aggregate limit(s) designated in the underlying policy(ies), it is hereby understood and agreed that such insurance as is afforded by the excess policy(ies) shall apply in excess of the reduced or exhausted underlying limit(s).

**AA.APPORTIONMENT CLAUSE:** In the event that any policies providing excess coverage above this Policy's limits of liability insure different perils or interest, and the amount of the net loss after application of deductibles exceeds the limit of liability of this Policy, then this Policy shall allocate any loss recoveries made hereunder in the same proportion as the amount of loss or damage insured by each excess policy bears to the combined total loss.

**BB.LENDER LOSS PAYABLE PROVISIONS**: For Covered Property in which both the Named Insured and a Loss Payee shown in the Statement of Values or elsewhere in the policy have an insurable interest, the Company will:

1. Adjust losses with the Named Insured; and
2. Pay any claim for loss or damage jointly to the Named Insured and the Loss Payee, as their interests may appear.

**Lender's Loss Payable**

1. The Loss Payee shown in the schedule or in the elsewhere in the Policy is a creditor, including a mortgage holder or trustee, whose interest in the Covered Property is established by such written instruments as:
   a. Warehouse receipts;
   b. A contract for deed;
   c. Bills of lading;
   d. Financing statements; or
   e. Mortgages, deeds of trust, or security agreements.
2. For Covered Property in which both the Named Insured and a Loss Payee have an insurable Interest:
   a. The Company will pay for covered loss or damage to each Loss Payee in the order of precedence, as interest may appear.
   b. The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.
   c. If the Company denies a claim because of the Named Insured's acts or because the Named Insured has failed to comply with the terms of the Policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:
      (1) Pays any premium due under this Policy at the Company's request if the Named Insured failed to do so;
      (2) Submits a signed, sworn proof of loss within sixty (60) days after receiving notice from the Company of the Named Insured's failure to do so; and
      (3) Has notified the Company of any change in ownership, occupancy or substantial change in the Insured Location known to the Loss Payee.
   All of the terms of this Coverage Part will then apply directly to the Loss Payee.

46
EXHIBIT "A"

# Peleus Insurance Company
## 8720 Stony Point Parkway, Suite 400
## Richmond, VA 23235

d.  If the Company pays the Loss Payee for any loss or damage and denies payment to the Named Insured because of the Named Insured's acts or because the Named Insured has failed to comply with the terms of this Policy:

(1)  The Loss Payee's rights will be transferred to the Company to the extent of the amount the Company pays; and

(2)  The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

At its option, the Company may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, the Named Insured will pay its remaining debt to the Company.

3.  If the Company cancels this Policy, it will give written notice to the Loss Payee at least:

a.  Ten (10) days before the effective date of cancellation if the Company cancels for the Named Insured's non-payment of premium; or

b.  Thirty (30) days before the effective date of cancellation if the Company cancels for any other reason.

4.  If the Company elects to not renew this Policy, it will give written notice to the Loss Payee at least ten (10) days before the expiration date of this Policy.

## CC. STATUTORY REQUIREMENTS:

Any term, condition or other provision of this Policy related to the provision of notice or a deadline for making payment which is in conflict with the statutes of the state wherein this Policy is issued is amended to conform to the minimum requirements of such statutes. It is understood and agreed that in the event of such an amendment, the provision of notice or a deadline for making payment may be extended or shortened.

## DD. SANCTION LIMITATION AND EXCLUSION CLAUSE:

No Insurer shall be deemed to provide cover and no Insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose the Insurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or United States of America.

## EE. SEVERABILITY OF INTEREST:

Each of the Insureds covered by this policy will have the same protection and obligations as if the policy has been has been issued individually to each of them, except as respects the obligations associated with the CANCELLATION AND NONRENEWAL clause. However, the inclusion of more than one Insured will not operate to increase the limit of the Insurer beyond the limit of liability stated in this policy.

## Peleus Insurance Company
### 8720 Stony Point Parkway, Suite 400
### Richmond, VA 23235

**FF. SERVICE OF SUIT:**

If service of process is to be made upon the Company by way of hand delivery or courier service, delivery should be made to the Company's principal place of business;

Claims Manager

Peleus Insurance Company

8720 Stony Point Parkway, Suite 400

Richmond, VA 23235

If service of process is to be made upon the Company by way of the U.S. Postal Service, the following mailing address should be used:

General Counsel

P.O. Box 469011

San Antonio, TX 78246

Where required by statute, regulation, or other regulatory directive, the Company appoints the Commissioner of Insurance, or other designee specified for that purpose, as its attorney for acceptance of service of all legal process in in the state in any action or proceeding arising out of this insurance.

The Commissioner or other designee is requested to forward process to the Company as shown above, or if required in his/her particular state, to a designated resident agent for service of process.

EXHIBIT "A"

# Peleus Insurance Company
## 8720 Stony Point Parkway, Suite 400
## Richmond, VA 23235

NC R5 05   04 13

### REPLACEMENT COST FORM

This modifies the Property Coverage Form.

The following Valuation Provisions are added:

**A.  REPLACEMENT COST:** In the event of a covered loss or damage, the Company will determine the value of Covered Property at replacement cost as of the time and place of loss, without deduction for physical deterioration, depreciation, obsolescence and depletion, except as otherwise provided in this form or as stipulated by any other endorsement(s) attached to this Policy.  This replacement cost valuation is subject to the following conditions:

1.  The Company will not pay more on a replacement cost basis than the least of:

    a.  The cost to repair, rebuild or replace, at the same site, the lost, damaged or destroyed property, with other property of comparable size, material and quality; or
    b.  The actual amount incurred by the Named Insured that is necessary to repair, rebuild or replace the lost, damaged or destroyed property; or
    c.  Any Limit of Insurance or Sublimit of Insurance applicable to the lost, damaged or destroyed property.

2.  The Company will not pay for any loss or damage on a replacement cost basis until the property is repaired, rebuilt or replaced, and then only if such repair, rebuilding or replacement is made within 365 days after the loss or damage occurs. If the property is not repaired, rebuilt or replaced within 365 days after the loss or damage occurs, the value of the property will be determined at Actual Cash Value.

3.  For property to which this replacement cost valuation applies, the Named Insured may make a claim for loss or damage on an Actual Cash Value basis instead of on a replacement cost basis.  In the event the Named Insured elects to have loss or damage settled on an Actual Cash Value basis, the Named Insured may still make a claim on a replacement cost basis if the Named Insured notifies the Company within 180 days after the loss or damage occurs and requests additional time in writing to complete the required repairs, but such repairs must be completed no more than 365 days after the loss or damage occurs.

4.  The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property unless a Sublimit of Insurance is specified for Ordinance or Law in the Supplemental Coverage Declarations, and then only to the extent provided under that coverage as set forth in Section B.2.f of the Property Coverage Form.

5.  In the event the Named Insured decides to repair, rebuild or replace the damaged or destroyed property, payment will include any reasonable and necessary architectural, engineering, consulting or supervisory fees related to the construction, repair or replacement of the damaged or destroyed property. This will not increase the applicable Limit of Insurance.

**B.  REPLACEMENT COST EXCEPTIONS**

1.  Valuable Papers and Records and Electronic Data Processing Data and Media will be valued as follows:

    a.  At the Named Insured's cost to research, replace or restore the lost information on lost, damaged or destroyed Valuable Papers and Records or Electronic Data Processing Data and Media for which duplicates do not exist;
    b.  At the cost of blank materials or media and the cost of copying data onto blank materials or media when duplicates of the papers, records or data exist;
    c.  At the cost of blank materials or media of the same kind and quality if the papers, records or data are not replaced; or

49
EXHIBIT "A"

# Peleus Insurance Company
## 8720 Stony Point Parkway, Suite 400
## Richmond, VA 23235

    d. At the specified amount per article for those articles which are specifically declared, described and valued in a Statement of Values forming a part of this Policy.

2. Brands and Labels - If branded or labeled merchandise that is Covered Property is damaged by a Covered Cause of Loss and the Company takes all or part of the property at an agreed or appraised value, the Company will also pay:

    a. Any expenses incurred by the Named Insured to:

        (1) Stamp the word 'Salvage' on the merchandise or its containers, if the stamp will not physically damage the merchandise; or

        (2) Remove the brands or labels, if doing so will not physically damage the merchandise. The Named Insured must re-label the merchandise or its containers to comply with the law.

    b. Any reduction in the salvage value of the damaged merchandise with the brands or labels removed.

    However, this will not increase the Limit(s) of Insurance applicable to the lost or damaged property.

3. Electronic Data Processing Equipment will be valued on a replacement cost basis as provided in Section A. of this form. However, in the event replacement of Electronic Data Processing Equipment with identical property is impossible, the replacement cost will be the cost of items that are similar to the damaged or destroyed equipment and intended to perform the same function, but which may include technological advances.

4. Fine Arts will be valued at the least of:

    a. The cost of reasonably restoring that property; or

    b. The cost of replacing that property, at the time and place of loss, with substantially the same property; or

    c. The market value of the property at the time and place of loss or, if the article of property is specifically declared, described and valued in a Statement of Values forming a part of this Policy, the amount per article specified in the Statement of Values.

    **NOTE:** Roofing materials are not considered Fine Arts.

5. Finished Stock will be valued at the selling price less discounts and expenses the Named Insured otherwise would have had.

6. Pairs, Sets, or Parts

    a. Pairs or Sets - In case of loss to any part of a pair or set, the Company may, at its option:

        (1) Repair or replace any part to restore the pair or set to its value before the loss; or

        (2) Pay the difference between the values of the pair or set before and after the loss.

    b. Parts - In case of loss to any part of Covered Property consisting of several parts when complete, the Company will only pay for the value of the lost or damaged part.

7. Patterns, dies, molds, and forms not in current usage will be valued at Actual Cash Value. If loss is paid on an Actual Cash Value basis, and within twelve (12) months from the date of the loss the Named Insured needs to repair or replace one or more of the items, the Company will pay the Named Insured, subject to the conditions of this insurance, the difference between Actual Cash Value and replacement cost for those patterns, molds and dies which are actually repaired or replaced.

8. Business Personal Property sold by the Named Insured but not delivered will be valued at the selling price less discounts and expenses the Named Insured otherwise would have had.

9. Business Personal Property of Others will be valued at the amount for which the Named Insured is liable, not to exceed the replacement cost.

10. Stock in Process will be valued at the cost of Raw Stock, labor expended, plus the proper proportion of overhead charges.

11. Tenant's Improvements and Betterments will be valued at:

    a. Replacement cost of the damaged or destroyed property (subject to the provisions of Section A. above) if the Named Insured tenant makes the repairs or replaces promptly.

    b. A proportion of the Named Insured tenant's original cost if the Named Insured tenant does not make repairs promptly. The Company will determine the proportionate value as follows:

EXHIBIT "A"

# Peleus Insurance Company
## 8720 Stony Point Parkway, Suite 400
## Richmond, VA 23235

    (1)  Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

    (2)  Divide the amount determined in (1) above by the number of days from the installation of improvements to the expiration of the lease.

    If the Named Insured tenant's lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

  c.  If repaired or replaced at the expense of others, there will be no liability hereunder.

12. Vacant buildings will be valued at Actual Cash Value.

13. Any damage to existing composition roof coverings that have been in place on a building or structure of an Insured Location for more than fifteen (15) years and one (1) day will be valued at "Actual Cash Value" for the perils of Windstorm, Named Storms, and hail.

14. If at the time of loss to Covered Property insured it is determined that the condition of the property prior to the loss is found to be either:

  a. abandoned, or

  b. condemned,

then recovery hereunder  for damage from a Covered Cause of Loss is limited to the lesser of:

(1) the cost to repair at Actual Cash Value or

(2) the "Actual Cash Value of the property prior to the loss, or

(3) $50,000

# Peleus Insurance Company
## 8720 Stony Point Parkway, Suite 400
## Richmond, VA 23235

NC R6 06 04 14

### HIGH HAZARD WIND COUNTIES

The following listing of high hazard wind counties (parishes in Louisiana) by State is provided to determine applicable Coverage, Limit(s) of Insurance and Deductible(s) referred to in this Policy.

| | |
|---|---|
| Alabama | Baldwin, Mobile |
| Connecticut | Fairfield, Middlesex, New Haven, New London |
| Delaware | Kent, New Castle, Sussex |
| Florida | Entire State |
| Georgia | Bryan, Camden, Chatham, Glynn, Liberty, McIntosh |
| Hawaii | Entire State |
| Louisiana | Cameron, Iberia, Jefferson, Lafourche, Orleans, Plaquemines, St Bernard, St Mary, St Tammany, Terrebonne, Vermilion |
| Massachusetts | Barnstable, Bristol, Dukes, Essex, Nantucket, Norfolk, Plymouth, Suffolk |
| Maryland | Anne Arundel, Baltimore, Baltimore City, Calvert, Cecil, Charles, Dorchester, Harford, Kent, Queen Anne's, St. Mary's, Somerset, Talbot, Wicomico, Worcester |
| Maine | Cumberland, Hancock, Knox, Lincoln, Sagadahoc, Waldo, Washington, York |
| Mississippi | Hancock, Harrison, Jackson |
| New Hampshire | Rockingham |
| New Jersey | Atlantic, Cape May, Cumberland, Hudson, Middlesex, Monmouth, Ocean, Passaic, Salem, |
| New York | Bronx, Kings, Nassau, New York, Queens, Suffolk, Richmond, Westchester |
| North Carolina | Beaufort, Brunswick, Carteret,  Craven, Currituck, Dare, Hyde, New Hanover, Onslow, Pamlico, Pender |
| Rhode Island | Bristol, Kent, Newport, Providence, Washington |
| South Carolina | Beaufort, Berkeley, Charleston, Colleton, Georgetown, Horry, Jasper |
| Texas | Aransas, Brazoria, Calhoun, Cameron, Chambers, Galveston, Harris, Jackson, Jefferson, Kenedy, Kleberg, Matagorda, Nueces, Refugio, San Patricio, Willacy |
| Virginia | Accomack, Beach City, Chesapeake, Gloucester, Hampton City, Lancaster, Mathews, Middlesex, Newport News, Norfolk City, North Hampton, Northumberland, Poquoson City, Portsmouth City Suffolk, Virginia Beach, York |

EXHIBIT "A"

# Peleus Insurance Company
## 8720 Stony Point Parkway, Suite 400
## Richmond, VA 23235

NC R6 09 04 13

### HIGH HAZARD EARTHQUAKE, VOLCANIC ERUPTION, LANDSLIDE
### AND MINE SUBSIDENCE COUNTIES FORM

The following listing of high hazard Earthquake, Volcanic Eruption, Landslide and Mine Subsidence counties by State is provided to determine applicable Coverage, Limit(s) of Insurance, Sublimit(s) of Insurance and Deductible(s) referred to in this Policy.

| | |
|---|---|
| Alaska | Entire State |
| California | Entire State |
| Hawaii | Entire State |
| Oregon | Entire State |
| Washington | Entire State |
| Arkansas | Clay, Craighead, Crittenden, Cross, Greene, Lawrence, Mississippi, Poinsett, Randolph |
| Illinois | Alexander, Franklin, Gallatin, Hamilton, Hardin, Jackson, Johnson, Massac, Perry, Pope, Pulaski, Saline, Union, White, Williamson |
| Kentucky | Ballard, Caldwell, Calloway, Carlisle, Crittenden, Fulton, Graves, Henderson, Hickman, Livingston, Lyon, Marshall, McCracken, Union, Webster |
| Missouri | Bollinger, Butler, Cape Girardeau, Dunklin, Madison, Mississippi, New Madrid, Pemiscot, Perry, Scott, Stoddard, Wayne |
| Tennessee | Carroll, Crockett, Dyer, Fayette, Gibson, Haywood, Henry, Lake, Lauderdale, Madison, Obion, Shelby, Tipton, Weakley |

EXHIBIT "A"

# Peleus Insurance Company
## 8720 Stony Point Parkway, Suite 400
## Richmond, VA 23235

NC R8 02   04 13

**EXCLUSION – CERTAIN COMPUTER RELATED LOSSES DUE TO DATES OR TIMES FORM**

This modifies the insurance provided under the following:

**Property Coverages**

A. This Policy does not insure against loss or damage caused, consisting of, or caused directly or indirectly by any of the following (Such loss is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss except as provided in B):

   1. The failure, malfunction or inadequacy or the inability to use or have access to:

      a.  Any of the following, whether belonging to the Named Insured or to others:

         (1) computer hardware, including microprocessors;

         (2) computer application software;

         (3) computer operating systems and related software;

         (4) computer networks;

         (5) microprocessors (computer chips) not part of any computer system;

         (6) any other computerized or electronic equipment or components; or

      b.  Any other products or services that directly or indirectly use or rely upon, in any manner, any of the items listed in paragraph 1.a. of this form; due to the inability of those products or services described in paragraphs 1.a. and 1.b. to correctly recognize, distinguish, interpret or accept one or more dates or times.

   2. Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair or supervision done by or for the Named Insured to determine, rectify or test, any potential or actual failure, malfunction or inadequacy described in paragraph A.1. above.

   3. The destruction, disruption, distortion or corruption of any computer data, coding, program or software if related to dates or times due to the inability of those products or services described in paragraphs 1.a. and 1.b. to correctly recognize, distinguish, interpret or accept one or more dates or times.

B. If an excluded cause of loss as described in A. 1., 2. and 3. of this form results in a Covered Cause of Loss under the Property Coverage Forms then this Policy shall pay only for such resulting direct physical loss or damage subject to the following exceptions:

This Policy will not pay for resulting loss or damage if the cause of loss is:

   a. Mechanical or machinery breakdown; or

   b. Artificially generated electrical current, including electrical arcing, that disturbs items in paragraph A.1. above unless fire results, and then this Policy shall pay only for the direct physical loss or damage caused by that fire.

**Peleus Insurance Company**
**8720 Stony Point Parkway, Suite 400**
**Richmond, VA 23235**

**C.** This Policy does not insure against any preventive or remedial costs to repair or modify any items in A.1.a. and b. above to correct any actual or potential deficiencies or change any features of logic or operation.

**D.** This Policy does not insure against any expense incurred by the Named Insured or others in the defense, safeguarding, protecting or recovering of property whether before or after loss due to any actual or potential loss excluded in paragraph A. above.

# Peleus Insurance Company
## 8720 Stony Point Parkway, Suite 400
## Richmond, VA 23235

### CONTRACT ENDORSEMENT # 1

| | |
|---|---|
| ENDORSEMENT NUMBER: | 001 |
| FIRST NAMED INSURED: | Strata Real Estate Services Association |
| Company: | Peleus Insurance Company |

It is understood and agreed that deductibles applicable under this Policy are as stated in the Declarations Certificates issued on behalf of Peleus Insurance Company and attached to the master policy number TBD.

It is also understood and agreed that covered perils as shown in this master policy may be restricted for individual Declarations Certificates and individual locations insured within the individual Declarations Certificates in accordance with authority granted to Strata Underwriting Managers.

Further it is understood and agreed that limits of liability may be reduced for individual Declarations Certificates and the limits may vary by location within the schedules insured on each Declarations Certificate from those shown in the master policy number TBD. In no event will limits be higher than those shown on the master policy.

The terms, conditions, limits, exclusions and other provisions included in the Declarations Certificates issued to the Named Insured by Strata Underwriting Managers on behalf of Peleus Insurance Company, including but not limited to the Policy Term, Special Conditions, Policy Limit, Sublimits of Insurance, Deductibles and Definitions, are hereby incorporated into the Policy as if set forth fully herein. Restrictive terms and conditions prescribed in the Declarations Certificate for a Named Insured control over any inconsistent or less restrictive terms and conditions contained in this Policy, including but not limited to terms and conditions establishing or restricting coverage, limits and deductibles.

ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME.

EXHIBIT "A"

# Peleus Insurance Company
## 8720 Stony Point Parkway, Suite 400
### Richmond, VA 23235

### CONTRACT ENDORSEMENT # 2

ENDORSEMENT NUMBER:   002
FIRST NAMED INSURED:   Strata Real Estate Services Association
COMPANY:   Peleus Insurance Company

## PROTECTIVE SAFEGUARDS ENDORSEMENT

## Failure to comply with the Protective Safeguard Clauses specified as applicable in the Schedule below shall suspend this insurance.

## PROTECTIVE SAFEGUARD CLAUSE(S)

In consideration of the premium at which this certificate is written, based on the protection of the premises by any or all of the protective safeguard system(s) indicated below, it is a condition of this certificate that the Named Insured shall exercise due diligence in maintaining in complete working order all equipment and services pertaining to the system(s) which are under the control of the Named Insured, this would include any special maintenance or service requirements indicated below. It also is a condition of this insurance that the Named Insured shall give immediate notice to the Company of any impairment in or suspension of any equipment or service pertaining to the system(s) within the knowledge of the Named Insured. This endorsement applies only to Protective Safeguards in place as of the date that coverage is bound, whether reported to the Company or not.

**A. Automatic Sprinkler System**
In further consideration of the premium at which this certificate is written, it is a condition of this certificate that the Named Insured shall have the automatic sprinkler system serviced by an independent contractor licensed to service and maintain automatic sprinkler systems in the state in which the premises are located. It also is a condition of this certificate that the Named Insured shall have the automatic sprinkler system inspected and tested at least once per year by an independent contractor licensed to inspect and test automatic sprinkler systems in the state in which the premises are located.

**B. Automatic Fire Alarm,** reporting to a public or private fire alarm station.

**C. Activated and operational Central Station Burglar Alarm**, reporting to a public or private burglar alarm station. Alarm must be in the "on" position during all non-working hours and/ or whenever the Named Insured's premises are unoccupied.

**D. Automatic Extinguishing System and Hood and Duct Cleaning. (Applicable to commercial food preparation risks only).**
It is a condition of this insurance that all ranges, deep-fat fryers, broilers and other cooking appliances, including their hoods, are protected by an approved, automatic fire extinguishing system, and insofar as such protective equipment is under the control of the Named Insured, due diligence shall be used to maintain such system in complete working order. All automatic extinguishing systems and hoods and duct work shall be cleaned and inspected by an outside cleaning service no less than twice a year.

It is also a condition of this insurance that all hoods and ducts are equipped with approved grease filters which shall be routinely cleaned.

EXHIBIT "A"

# Peleus Insurance Company
## 8720 Stony Point Parkway, Suite 400
## Richmond, VA 23235

## *CONTRACT ENDORSEMENT # 3*

Endorsement # :      003
First Named Insured: Strata Real Estate Services Association
Insurance Company:  Peleus Insurance Company

### MINIMUM EARNED PREMIUM FOR HIGH HAZARD WIND LOCATIONS

1.For locations NOT IN the High Hazard Wind Counties, form # NC R6 04 04 13,if the Insured cancels this policy or removes a location, the short rate return premium may be as high as 90% of the applicable pro-rata premium subject to any Minimum Earned Premium stipulations in the  policy.

2 .For locations that are located in High Hazard Wind Counties, if the Insured cancels this policy, removes a location or reduces the amount of insurance on a location and coverage existed any time during the period of June 1st to November 1st the amount of premium the Companies will return the Unearned Premium for the location. The Unearned Premium Is the location premium times the Unearned Factor noted below.

| Days Policy in Force | Unearned |
|---|---|
| 1-180 | 20% |
| 181-210 | 15% |
| 211-240 | 10% |
| 241-270 | 7.5% |
| 271-300 | 5.0% |
| 301-330 | 2.5% |
| 331 or more | 0% |

3. If a location that is located in a High Hazard Wind County is added (or coverage increased at an existing location during the term of the policy and coverages exists at any time during the period of June 1st to November 1st the premium will be calculated at 100% of the annual rate, less the Unearned Factor noted in 2. above. Otherwise, it shall be pro-rata.

4. Coverage cannot be increased nor additional locations added if they are located in a High Hazard Wind County and a "Named Storm" is in existence, unless with written consent of the company is granted.

5. If property is added or deleted, each type of property at each location shall be treated separately and the Companies shall determine the applicable annual rate based upon the characteristics of the risk. Risks of like kind and quality will be deleted as per the account rate subject to the Unearned factor, if applicable, noted in 2 above.

6. If a location is within a High Hazard Wind County the provisions of this clause replace any short rate provisions stipulated in this policy, all subject to the Minimum Earned Premium provisions. Otherwise, a short rate return premium may be imposed on the applicable pro-rata premium subject to any Minimum Earned Premium stipulations in the policy.

7. Nothing herein will act to provide coverage outside the automatic acquisition clause elsewhere in the policy.

8. Non-payment of premium, material misstatement or non-compliance with underwriting requirements shall be considered a request by the Insured to cancel the policy.

9. Proof of mailing will be sufficient proof of notice of cancellation.

# Exhibit A-3-b

FILED
DALLAS COUNTY
9/2016 8:59:54 AM
FELICIA PITRE
DISTRICT CLERK

Dianne Coffey

## 134th District Court of DALLAS County, Texas
600 COMMERCE STREET, 4TH FLOOR DALLAS TX 75202

## CASE #: DC-16-08248

**MERCURY MULTIFAMILY MANAGEMENT, LLC AND MERCURY METROPLEX REAL ESTATE II, LLC**

*Plaintiff*

**VS**

**PELEUS INSURANCE COMPANY, ENGLE MARTIN & ASSOCIATES, AND RIDGE BRENTON KIRN**

*Defendant*

### AFFIDAVIT OF SERVICE

I, **FLOYD J BOUDREAUX**, make statement to the fact;
That I am a competent person more than 18 years of age or older and not a party to
this action, nor interested in outcome of the suit.  That I received the documents stated
below on 07/18/16 11:53 am, instructing for same to be delivered upon Engle Martin &
Associates By Delivering To Corporation Service Company.

That I delivered to      : Engle Martin & Associates By Delivering To Corporation
                           Service Company. By Delivering to Sue Vertrees, Customer Service

the following            : CITATION; PLAINTIFFS' ORIGINAL PETITION & JURY DEMAND

at this address          : 211 E 7th St Ste 620
                           AUSTIN, Travis County, TX 78701

Manner of Delivery       : by PERSONALLY delivering the document(s) to the person
                           above.

Delivered on             : July 18, 2016 12:15 pm

My name is FLOYD J BOUDREAUX, my date of birth is January 10th, 1943, and my address
is Professional Civil Process Downtown, 2211 S. IH 35, Suite 203, Austin TX 78741,
and U.S.A.  I declare under penalty of perjury that the foregoing is true and
correct.

Executed in Travis County, State of Texas, on the _____18_____ day of
___JULY___, 20_16_.                                          _____
                                    FLOYD J BOUDREAUX                    Declarant
                                    384

                          Texas Certification#: SCH-3506 Exp. 02/28/17

Private Process Server
Professional Civil Process Of Texas, Inc      PCP Inv#: Z16700099
103 Vista View Trail Spicewood TX 78669       SO  Inv#: A16701810
(512) 477-3500

pisculli    AX02A16701810                 + Service Fee:   70.00
                                            Witness Fee:     .00
                                            Mileage Fee:     .00
                                                          Raizner, Jeffrey L.

                                                          **E-FILE RETURN**

# FORM NO. 353-3 - CITATION
## THE STATE OF TEXAS

**To:  ENGLE MARTIN & ASSOCIATES**
   **BY SERVING ITS REGISTERED AGENT COPORATION SERVICE COMPANY**
   **D/B/A CSC-LAWYERS INC**
   **211 EAST 7TH STREET, SUITE620**
   **AUSTIN  TX 78701**

GREETINGS:

You have been sued.  You may employ an attorney.  If you or your attorney do not file a written
answer with the clerk who issued this citation by 10 o'clock a.m. of the Monday next following the
expiration of twenty  days after you were served this citation and  petition, a default judgment may be
taken against you.  Your answer should be addressed to the clerk of the **134th District Court** at 600
Commerce Street, Ste. 101, Dallas, Texas 75202.

Said Plaintiff being **MERCURY MULTIFAMILY MANAGEMENT, LLC AND MERCURY
METROPLEX REAL ESTATE II LLC**

Filed in said Court  **11th day of July, 2016** against

**PELEUS INSURANCE COMPANY, ENGLE MARTIN & ASSOCIATES AND RIDGE BRENTON
KIRN**

For Suit, said suit being numbered **DC-16-08248**, the nature of which demand is as follows:
Suit on **CNTR CNSMR COM DEBT** etc. as shown on said petition, a copy of which accompanies this
citation.  If this citation is not served, it shall be returned unexecuted.

WITNESS: FELICIA PITRE, Clerk of the District Courts of Dallas, County Texas.
Given under my hand and the Seal of said Court at office this 13th day of July, 2016.

ATTEST: FELICIA PITRE, Clerk of the District Courts of Dallas, County, Texas

By _____, Deputy
        /s/ Gay Lane
       GAY LANE

---

## ESERVE

### CITATION

**DC-16-08248**

**MERCURY MULTIFAMILY
MANAGEMENT, LLC, et al**
vs.
**PELEUS INSURANCE COMPANY, et al**

ISSUED THIS
**13th day of July, 2016**

FELICIA PITRE
Clerk District Courts,
Dallas County, Texas

By:  GAY LANE, Deputy

**Attorney for Plaintiff**
RAIZNER SLANIA LLP
JEFFREY L RAIZNER
2402 DUNLAVY STREET
HOUSTON  TS 77006
713-554-9099



## DALLAS COUNTY
## SERVICE FEES
## NOT PAID

# OFFICER'S RETURN

Case No. : DC-16-08248

Court No.134th District Court

Style: MERCURY MULTIFAMILY MANAGEMENT, LLC, et al

vs.

PELEUS INSURANCE COMPANY, et al

Came to hand on the _____ day of _____, 20 _____ at _____ o'clock _____ .M. Executed at _____,

within the County of _____ at _____ o'clock _____ .M. on the _____ day of _____,

20 _____, by delivering to the within named

_____

each, in person, a true copy of this Citation together with the accompanying copy of this pleading, having first endorsed on same date of delivery. The distance actually traveled by

me in serving such process was _____ miles and my fees are as follows:   To certify which witness my hand.

| | | |
|---|---|---|
| For serving Citation | $ _____ | |
| For mileage | $ _____ | of _____ County, _____ |
| For Notary | $ _____ | By _____ Deputy |

(Must be verified if served outside the State of Texas.)

Signed and sworn to by the said _____ before me this _____ day of _____, 20 _____.

to certify which witness my hand and seal of office.

_____ Notary Public _____ County

# Exhibit A-3-c

FILED
DALLAS COUNTY
9/8/2016 11:49:38 AM
FELICIA PITRE
DISTRICT CLERK

CAUSE NO. DC-16-08248

| | | |
|---|---|---|
| MERCURY MULTIFAMILY | § | IN THE DISTRICT COURT OF |
| MANAGEMENT, LLC and MERCURY | § | |
| METROPLEX REAL ESTATE II, LLC | § | |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| PELEUS INSURANCE COMPANY, | § | |
| ENGLE MARTIN & ASSOCIATES, | § | |
| RIDGE BRENTON KIRN | § | 134TH DISTRICT COURT |

## DEFENDANT ENGLE MARTIN & ASSOCIATES, INC.'S
## ORIGINAL ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Defendant, ENGLE MARTIN & ASSOCIATES, INC. ("Defendant"), and files this Original Answer and Request for Disclosure, in response to the lawsuit and causes of action brought against it by Plaintiffs, MERCURY MULTIFAMILY MANAGEMENT, LLC and MERCURY METROPLEX REAL ESTATE II, LLC. ("Plaintiffs"). In support, Defendant would respectfully show the Court as follows:

## GENERAL DENIAL

1.      Pursuant to Rule 92 of the TEXAS RULES OF CIVIL PROCEDURE, Defendant hereby asserts a general denial to Plaintiffs' Original Petition, and any supplemental or amended petitions, and each and every allegation, claim, and/or cause of action asserted in those petitions. Defendant respectfully requests that the Court and Jury require Plaintiffs to prove Plaintiffs' claims, charges, and allegations by that standard of evidence as required by the Constitution and Laws of the State of Texas and the Constitution and Laws of the United States of America. Defendant further reserves the right to amend its answer at a future date in accordance with the TEXAS RULES OF CIVIL PROCEDURE.

### REQUEST FOR DISCLOSURES

2.      Pursuant to Rule 194 of the TEXAS RULES OF CIVIL PROCEDURE, Defendant hereby requests that Plaintiffs disclose the information or material described in Rule 194.2(a) through (l).

### RULE 193.7 NOTICE

3.      Pursuant to Rule 193.7 of the TEXAS RULES OF CIVIL PROCEDURE, Defendant hereby gives actual notice to all parties that any and all documents produced may be used against the party producing the document at any pretrial proceeding and/or at the trial of this matter without the necessity of authenticating the documents.

### PRAYER

4.      WHEREFORE, PREMISES CONSIDERED, Defendant prays that Plaintiffs take nothing by reason of this suit, that Defendant herein be released, discharged and found not liable to Plaintiffs, that the parties go hence with their costs, without delay, and for such other and further relief, both general and special, at law and in equity, to which Defendant may show themselves justly entitled.

2

Respectfully submitted,

**WINSTEAD PC**


By:   /s/ Stephen R. Wedemeyer
       Stephen R. Wedemeyer
       State Bar No. 00794832
       swedemeyer@winstead.com
       1100 JPMorgan Chase Tower
       600 Travis Street
       Houston, Texas 77002
       Telephone:  713.650.8400
       Facsimile:  713.650.2400

**ATTORNEYS FOR DEFENDANT
ENGLE MARTIN & ASSOCIATES, INC.**


## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing instrument was served on all counsel of record in accordance with the Texas Rules of Civil Procedure on this 3rd day of August, 2016.

Jeffrey L. Raizner
Andrew P. Slania
Amy Bailey Hargis
Raizner Slania, LLP
2402 Dunlavy Street
Houston, Texas 77006
Phone: 713.554.9099
Fax: 713.554.9098


                                /s/ Stephen R. Wedemeyer
                                Stephen R. Wedemeyer

4847-4370-8212v.1

# Exhibit A-3-d

FILED
DALLAS COUNTY
9/9/2016 1:01:35 PM
FELICIA PITRE
DISTRICT CLERK



**ATTENTION:**
**CASE WILL BE CARRIED FOR**
**TWO (2) WEEKS.**

**JUDGE DALE TILLERY PRESIDING**
**134TH JUDICIAL DISTRICT COURT**
**600 Commerce St., 6th Floor, Room 650**
**Dallas, Texas 75202-4606**
**214/653-7546 -- 134th Ct. Clerk**
**214/653-6995 -- Ct. Coordinator**
**fly@dallascourts.org**

August 09, 2016

STEPHEN R. WEDEMEYER
1100 JPMORGAN CHASE TOWER
600 TRAVIS ST
HOUSTON TX 77002

Re:   MERCURY MULTIFAMILY MANAGEMENT, LLC, et al  vs.  PELEUS
      INSURANCE COMPANY, et al
      DC-16-08248

All Counsel of Record/Pro Se Litigants:

PLEASE TAKE NOTE of the following settings:

**JURY TRIAL - CIVIL:**   05/22/2017 @ 9:00 AM

Trial announcements **MUST BE MADE** in accordance with Rule 3.02, Local Rules of the Civil Court of Dallas County, Texas.

When **NO** announcement is made for defendant, defendant will be presumed ready. If **ANY** plaintiff fails to announce or to appear at trial, the case will be dismissed for want of prosecution in accordance with Rule 165a, Texas Rules of Civil Procedure.

Completion of discovery, presentation of pretrial motions, and other matters relating to the preparation for trial, are controlled by the Scheduling Order in this case or by the Texas Rules of Civil Procedure, in the event no Scheduling Order has been signed by the Court.

Please forward a copy of this notice to counsel of record for each party and all pro se parties by a method approved in Texas Rules of Civil Procedure 21a.

Sincerely,

DALE TILLERY,
Presiding Judge

DBT/fll
pc:  STEPHEN R. WEDEMEYER; JEFFREY L RAIZNER

ALL PARTIES MUST BE COPIED ON ALL WRITTEN COMMUNICATION TO THE COURT.



**JUDGE DALE TILLERY PRESIDING**
134TH JUDICIAL DISTRICT COURT
600 Commerce St., 6th Floor, Room 650
Dallas, Texas 75202-4606
214/653-7546 -- 134th Ct. Clerk
214/653-6995 -- Ct. Coordinator
fly@dallascourts.org

August 09, 2016

JEFFREY L RAIZNER
RAIZNER SLANIA LLP
2402 DUNLAVY ST
HOUSTON      TX  77006

    Re:  MERCURY MULTIFAMILY MANAGEMENT, LLC, et al  vs.  PELEUS
           INSURANCE COMPANY, et al
           DC-16-08248

All Counsel of Record/Pro Se Litigants:

PLEASE TAKE NOTE of the following settings:

      **JURY TRIAL - CIVIL:**   05/22/2017 @ 9:00 AM

Trial announcements **MUST BE MADE** in accordance with Rule 3.02, Local Rules of the Civil Court of Dallas County, Texas.

When **NO** announcement is made for defendant, defendant will be presumed ready. If **ANY** plaintiff fails to announce or to appear at trial, the case will be dismissed for want of prosecution in accordance with Rule 165a, Texas Rules of Civil Procedure.

Completion of discovery, presentation of pretrial motions, and other matters relating to the preparation for trial, are controlled by the Scheduling Order in this case or by the Texas Rules of Civil Procedure, in the event no Scheduling Order has been signed by the Court.

Please forward a copy of this notice to counsel of record for each party and all pro se parties by a method approved in Texas Rules of Civil Procedure 21a.

Sincerely,

DALE TILLERY,
Presiding Judge

DBT/fll
pc:  STEPHEN R. WEDEMEYER; JEFFREY L RAIZNER

ALL PARTIES MUST BE COPIED ON ALL WRITTEN COMMUNICATION TO THE COURT.

CAUSE No. <u>DC-16-08248</u>

| | |
|---|---|
| **MERCURY MULTIFAMILY MANAGEMENT, LLC, et al** | **IN THE DISTRICT COURT** |
| **vs.** | **134TH JUDICIAL DISTRICT** |
| **PELEUS INSURANCE COMPANY, et al** | **DALLAS COUNTY, TEXAS** |

## UNIFORM SCHEDULING ORDER

In accordance with Rules 166, 190 and 192 of the Texas Rules of Civil Procedure, the Court makes the following order to control discovery and the schedule of this cause:

1.      This case will be ready and is set for **JURY TRIAL - CIVIL** on **MAY 22, 2017** at **9:00 AM** ("this Trial Setting"). Reset or continuance of this Trial Setting will not alter any deadlines established in this Order or established by the Texas Rules of Civil Procedure, unless otherwise provided by order. **If not reached as set, the case will be carried to the next week.**

2.      Unless otherwise ordered, discovery in this case will be controlled by Rule 190.3 (**LEVEL 2**) of the Texas Rules of Civil Procedure. Except by agreement of the party, leave of court, or where expressly authorized by the Texas Rules of Civil Procedure, no party may obtain discovery of information subject to disclosure under Rule 194 by any other form of discovery.

3.      Any objection or motion to exclude or limit expert testimony due to qualification of the expert or reliability of the opinions must be filed no later than seven (7) days after the close of the discovery period, or such objection is waived. Any motion to compel responses to discovery (other than relating to factual matters arising after the end of the discovery period) must be filed no later than seven (7) days after the close of the discovery period or such complaint is waived, except for the sanction of exclusion under Rule 193.6.

4.      Any amended pleadings asserting new causes of action or affirmative defenses must be filed no later than thirty (30) days before the end of the discovery period and any other amended pleadings must be filed no later than seven (7) days after the end of the discovery period. Amended pleadings responsive to timely filed pleadings under this Order may be filed after the deadline for amended pleadings if filed within two (2) weeks after the pleading to which they respond. Except with leave of court, TRCP 166a motions must be heard no later than thirty (30) days before trial.

5.      No additional parties may be joined more than five (5) months after the commencement of this case except on motion for leave showing good cause. This paragraph does not otherwise alter the requirements of Rule 38. The party joining an additional party shall serve a copy of this Order on the new party concurrently with the pleading joining that party.

6.      If mediation or other alternative dispute resolution, is agreed to by the parties, then it will be conducted in accordance with the Texas Rules of Civil Procedure; the Texas Government Code and the standing Dallas County Civil District Court order regarding mediation, which is available from the Dallas County ADR Coordinator.

Mediation must be conducted thirty (30) days prior to the first trial setting in this case.

The parties decision to mediate before the first trial setting in this case will not be a basis for a continuance of any trial setting.

7.      Fourteen (14) days before this Trial Setting, the parties shall exchange a list of exhibits, including any demonstrative aids and affidavits, and shall exchange copies of any exhibits not previously produced in discovery; over-designation is strongly discouraged and may be sanctioned.  Except for records to be offered by way of business record affidavits, each exhibit must be identified separately and not by category or group designation.  Rule 193.7 applies to this designation.  On or before ten (10) days before this Trial Setting, the attorneys in charge for all parties shall meet in person to confer on stipulations regarding the materials to be submitted to the Court under this paragraph and attempt to maximize agreement on such matters. By 4:00 p.m. on the Thursday before this Trial Setting, the parties shall file with the Court the materials stated in Rule 166(e)-(l), an estimate of the length of trial, designation of deposition testimony to be offered in direct examination, and any motions in limine.  Failure to file such materials may result in dismissal for want of prosecution or other appropriate sanction.

8.      All Daubert challenges, all witness challenges, and all dispositive motions, including Motions for Summary Judgment, shall be set and heard at least 30 days prior to this trial setting or they are waived.

Plaintiff/Plaintiff's counsel shall serve a copy of this Order on any currently named defendant(s) answering after this date.

**SIGNED** on  8/9/2016 .

DALE TILLERY, Presiding Judge

pc:     STEPHEN R. WEDEMEYER; JEFFREY L RAIZNER

**ADDITIONALLY, YOU MAY ACCESS THE COURT'S FILE, BY GOING TO:**
**http://courts.dallascounty.org/default.aspx**

Exhibit A-3-e

CAUSE No. <u>DC-16-08248</u>

| | |
|---|---|
| **MERCURY MULTIFAMILY MANAGEMENT, LLC, et al** | **IN THE DISTRICT COURT** |
| **vs.** | **134TH JUDICIAL DISTRICT** |
| **PELEUS INSURANCE COMPANY, et al** | **DALLAS COUNTY, TEXAS** |

## UNIFORM SCHEDULING ORDER

In accordance with Rules 166, 190 and 192 of the Texas Rules of Civil Procedure, the Court makes the following order to control discovery and the schedule of this cause:

1.       This case will be ready and is set for **JURY TRIAL - CIVIL** on **MAY 22, 2017** at **9:00 AM** ("this Trial Setting"). Reset or continuance of this Trial Setting will not alter any deadlines established in this Order or established by the Texas Rules of Civil Procedure, unless otherwise provided by order. **If not reached as set, the case will be carried to the next week.**

2.       Unless otherwise ordered, discovery in this case will be controlled by Rule 190.3 (**LEVEL 2**) of the Texas Rules of Civil Procedure. Except by agreement of the party, leave of court, or where expressly authorized by the Texas Rules of Civil Procedure, no party may obtain discovery of information subject to disclosure under Rule 194 by any other form of discovery.

3.       Any objection or motion to exclude or limit expert testimony due to qualification of the expert or reliability of the opinions must be filed no later than seven (7) days after the close of the discovery period, or such objection is waived. Any motion to compel responses to discovery (other than relating to factual matters arising after the end of the discovery period) must be filed no later than seven (7) days after the close of the discovery period or such complaint is waived, except for the sanction of exclusion under Rule 193.6.

4.       Any amended pleadings asserting new causes of action or affirmative defenses must be filed no later than thirty (30) days before the end of the discovery period and any other amended pleadings must be filed no later than seven (7) days after the end of the discovery period. Amended pleadings responsive to timely filed pleadings under this Order may be filed after the deadline for amended pleadings if filed within two (2) weeks after the pleading to which they respond. Except with leave of court, TRCP 166a motions must be heard no later than thirty (30) days before trial.

5.       No additional parties may be joined more than five (5) months after the commencement of this case except on motion for leave showing good cause. This paragraph does not otherwise alter the requirements of Rule 38. The party joining an additional party shall serve a copy of this Order on the new party concurrently with the pleading joining that party.

6.       If mediation or other alternative dispute resolution, is agreed to by the parties, then it will be conducted in accordance with the Texas Rules of Civil Procedure; the Texas Government Code and the standing Dallas County Civil District Court order regarding mediation, which is available from the Dallas County ADR Coordinator.

Mediation must be conducted thirty (30) days prior to the first trial setting in this case.

The parties decision to mediate before the first trial setting in this case will not be a basis for a continuance of any trial setting.

      7.    Fourteen (14) days before this Trial Setting, the parties shall exchange a list of exhibits, including any demonstrative aids and affidavits, and shall exchange copies of any exhibits not previously produced in discovery; over-designation is strongly discouraged and may be sanctioned.  Except for records to be offered by way of business record affidavits, each exhibit must be identified separately and not by category or group designation.  Rule 193.7 applies to this designation.  On or before ten (10) days before this Trial Setting, the attorneys in charge for all parties shall meet in person to confer on stipulations regarding the materials to be submitted to the Court under this paragraph and attempt to maximize agreement on such matters. By 4:00 p.m. on the Thursday before this Trial Setting, the parties shall file with the Court the materials stated in Rule 166(e)-(l), an estimate of the length of trial, designation of deposition testimony to be offered in direct examination, and any motions in limine.  Failure to file such materials may result in dismissal for want of prosecution or other appropriate sanction.

      8.    All Daubert challenges, all witness challenges, and all dispositive motions, including Motions for Summary Judgment, shall be set and heard at least 30 days prior to this trial setting or they are waived.

      Plaintiff/Plaintiff's counsel shall serve a copy of this Order on any currently named defendant(s) answering after this date.

**SIGNED** on  8/9/2016 .

DALE TILLERY, Presiding Judge

pc:    STEPHEN R. WEDEMEYER; JEFFREY L RAIZNER

**ADDITIONALLY, YOU MAY ACCESS THE COURT'S FILE, BY GOING TO:**
**http://courts.dallascounty.org/default.aspx**

Exhibit A-3-f

Brandon Pettigrew

FILED
DALLAS COUNTY
8/4/2016 11:31:53 AM
FELICIA PITRE
DISTRICT CLERK

# 134th District Court of DALLAS County, Texas

600 COMMERCE STREET, 4TH FLOOR DALLAS TX 75202

# CASE #: DC-16-08248

MERCURY MULTIFAMILY MANAGEMENT, LLC AND MERCURY METROPLEX REAL ESTATE II, LLC

Plaintiff
vs
PELEUS INSURANCE COMPANY, ENGLE MARTIN & ASSOCIATES, AND RIDGE BRENTON KIRN

Defendant

## AFFIDAVIT OF SERVICE

I, ROXIE L. FRANCIS, make statement to the fact;
That I am a competent person more than 18 years of age or older and not a party to
this action, nor interested in outcome of the suit.  That I received the documents stated
below on 07/19/16 10:11 am, instructing for same to be delivered upon Kirn, Ridge Brenton.

That I delivered to     : Kirn, Ridge Brenton.

the following          : CITATION; PLAINTIFFS' ORIGINAL PETITION & JURY DEMAND

at this address        : 17304 Preston Rd #975
                         Dallas, Collin County, TX 75252

Manner of Delivery     : by PERSONALLY delivering the document(s) to the person
                         above.

Delivered on           : AUG 11, 2016 1:29 pm

My name is ROXIE L. FRANCIS, my date of birth is NOV 29th, 1956, and my address is
Professional Civil Process Dallas, Inc., 2300 Valley View Ln, Ste 612, Irving TX
75062, and U.S.A.  I declare under penalty of perjury that the foregoing is true and
correct.

Executed in Dallas County, State of Texas, on the _11th_ day of
_August_, 20 _16_.

                                    _Roxie L. Francis_
                         ROXIE L. FRANCIS                    Declarant
                         1837

                         Texas Certification#: SCH-10526 Exp. 09/30/16

Private Process Server
Professional Civil Process Of Texas, Inc          PCP Inv#: D16700208
103 Vista View Trail Spicewood TX 78669           SO  Inv#: A16701813
(512) 477-3500
                                    + Service Fee:  95.00
                                      Witness Fee:  .00
                                      Mileage Fee:  .00
tomcat                                      Raizner, Jeffrey L.
                                                    E-FILE RETURN



**ESERVE**

**CITATION**

**DC-16-08248**

**MERCURY MULTIFAMILY MANAGEMENT, LLC, et al**

vs.

**PELEUS INSURANCE COMPANY, et al**

ISSUED THIS
13th day of July, 2016

FELICIA PITRE
Clerk District Courts,
Dallas County, Texas

By: GAY LANE, Deputy

**Attorney for Plaintiff**
RAIZNER SLANIA LLP
JEFFREY L RAIZNER
2402 DUNLAVY STREET
HOUSTON TS 77006
713-554-9099



**DALLAS COUNTY**
**SERVICE FEES**
**NOT PAID**

---

# FORM NO. 353-3 - CITATION
# THE STATE OF TEXAS

To:  **RIDGE BRENTON KIRN**
     **RIDGE B KIRN 15725 ARTIST WAY #31029**
     **ADDISON TX 75001-6091**

GREETINGS:

You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10 o'clock a.m. of the Monday next following the expiration of twenty  days after you were served this citation and petition, a default judgment may be taken against you. Your answer should be addressed to the clerk of the **134th District Court** at 600 Commerce Street, Ste. 101, Dallas, Texas 75202.

Said Plaintiff being **MERCURY MULTIFAMILY MANAGEMENT, LLC AND MERCURY METROPLEX REAL ESTATE II LLC**

Filed in said Court  **11th day of July, 2016** against

**PELEUS INSURANCE COMPANY, ENGLE MARTIN & ASSOCIATES AND RIDGE BRENTON KIRN**

For Suit, said suit being numbered **DC-16-08248**, the nature of which demand is as follows:
Suit on **CNTR CNSMR COM DEBT** etc. as shown on said petition, a copy of which accompanies this citation. If this citation is not served, it shall be returned unexecuted.

WITNESS: FELICIA PITRE, Clerk of the District Courts of Dallas, County Texas.
Given under my hand and the Seal of said Court at office this 13th day of July, 2016.

ATTEST: FELICIA PITRE, Clerk of the District Courts of Dallas, County, Texas

By  _/s/ Gay Lane_____  , Deputy
      GAY LANE



# OFFICER'S RETURN

Case No. : DC-16-08248

Court No.134th District Court

Style: MERCURY MULTIFAMILY MANAGEMENT, LLC. et al

vs.

PELEUS INSURANCE COMPANY, et al

Came to hand on the _____ day of _____ 20 _____ at _____ o'clock _____ M. Executed at _____,

within the County of _____ at _____ o'clock _____ M. on the _____ day of _____,

20 _____, by delivering to the within named _____

_____

each, in person, a true copy of this Citation together with the accompanying copy of this pleading, having first endorsed on same date of delivery. The distance actually traveled by

me in serving such process was _____ miles and my fees are as follows:   To certify which witness my hand.

|  |  |  |  |  |
|---|---|---|---|---|
| For serving Citation | $ _____ | of _____ | County, _____ |  |
| For mileage | $ _____ | By _____ | Deputy |  |
| For Notary | $ _____ |  |  |  |

(Must be verified if served outside the State of Texas.)

Signed and sworn to by the said _____ before me this _____ day of _____ 20 _____.

to certify which witness my hand and seal of office.

_____

Notary Public _____ County

Exhibit A-3-g

FILED
DALLAS COUNTY
8/8/2016 2:31:36 PM
FELICIA PITRE
DISTRICT CLERK

Dianne Coffey

# 134th District Court of DALLAS County, Texas
600 COMMERCE STREET, 4TH FLOOR DALLAS TX 75202

## CASE #: DC-16-08248

MERCURY MULTIFAMILY MANAGEMENT, LLC AND MERCURY METROPLEX REAL ESTATE II, LLC

*Plaintiff*
**vs**
PELEUS INSURANCE COMPANY, ENGLE MARTIN & ASSOCIATES, AND RIDGE BRENTON KIRN

*Defendant*

## AFFIDAVIT OF SERVICE

I, JACKLYNN G HENRY, make statement to the fact;
That I am a competent person more than 18 years of age or older and not a party to
this action, nor interested in outcome of the suit.  That I received the documents stated
below on ___8-1-16___, Time: _7:36_ A-M instructing for same to be delivered
upon Peleus Insurance Company By Delivering To Its Claims Manager.

That I delivered to      : Peleus Insurance Company By Delivering To Its Claims
                           Manager.

the following            : CITATION; PLAINTIFFS' ORIGINAL PETITION & JURY DEMAND

at this address          : P.O Box 469012
                           SAN ANTONIO, Bexar County, TX 78246

Manner of Delivery       : by certified mail.  Return receipt with signature thereon is
                           attached hereto each; a true copy of the documents listed above
                           and endorsed on such the date of mailing.

Delivered on             : August 4, 2016 am

My name is JACKLYNN G HENRY, my date of birth is December 23rd, 1964, and my address
is Professional Civil Process Of Texas, Inc, 103 Vista View Trail, Spicewood TX
78669, and U.S.A.  I declare under penalty of perjury that the foregoing is true and
correct.

Executed in Burnet County, State of Texas, on the ___4___ day of
___Aug___, 20_16_.

                                   JACKLYNN G HENRY                    Declarant
                                   492
                                   Texas Certification#: SCH-818 Exp. 08/31/17

Private Process Server
Professional Civil Process Of Texas, Inc        PCP Inv#: A16701900
103 Vista View Trail Spicewood TX 78669
(512) 477-3500

                              + Service Fee:   25.00
                                Witness Fee:    .00
AX02A16701900                   Mileage Fee:    .00
jackiem                                        Raizner, Jeffrey L.
                                                        E-FILE RETURN



2. Article Number

SAN ANTONIO

7160 3901 9845 4522 8772

COMPLETE THIS SECTION ON DELIVERY

A. Received (Please Print Clearly)   B. Date of Delivery

C. Signature

X                                          ☐ Agent
                                           ☐ Addressee

D. Is delivery address different from Item 1?   ☐ Yes
   If YES, enter delivery address below:         ☐ No

3. Service Type   **CERTIFIED MAIL**

4. Restricted Delivery? *(Extra Fee)*        ☐ Yes

1. Article Addressed to:
Peleus Insurance Company
By Delivering To Its Claims Manager

P.O Box 469012
SAN ANTONIO TX 78246

A16701900

PS Form 3811, January 2005          Domestic Return Receipt

neopost™
08/01/2016
US POSTAGE

FIRST-CLASS MAIL
$09.46⁰

ZIP 78669
041L11223471

7160 3901 9845 4522 8722

State Insurance Company
Attn: Delivering To Its Claims Manager
P.O. Box 469012
SAN ANTONIO TX 78246

RETURN RECEIPT REQUESTED
USPS MAIL CARRIER
DETACH ALONG PERFORATION

2. Article Number

7160 3901 9845 4522 8772

3. Service Type CERTIFIED MAIL

4. Restricted Delivery? (Extra Fee) ☐ Yes

1. Article Addressed to:
Peleus Insurance Company
By Delivering To Its Claims Manager

P.O Box 469012
SAN ANTONIO TX 78246

A16701800

COMPLETE THIS SECTION ON DELIVERY

A. Received by (Please Print Clearly) | B. Date of Delivery

C. Signature
X ☐ Agent ☐ Addressee

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

PS Form 3811, January 2005 Domestic Return Receipt

Thank you for using Return Receipt Service

## FORM NO. 353-3 - CITATION
## THE STATE OF TEXAS

To: **PELEUS INSURANCE COMPANY**
**BY SERVING ITS CLAIMS MANAGER**
**PELEUS INSURANCE COMPANY**
**8720 STONY POINT PKWY STE 400**
**RICHMOND VA 23235**

GREETINGS:

You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10 o'clock a.m. of the Monday next following the expiration of twenty  days after you were served this citation and  petition, a default judgment may be taken against you.  Your answer should be addressed to the clerk of the **134th District Court** at 600 Commerce Street, Ste. 101, Dallas, Texas 75202.

Said Plaintiff being **MERCURY MULTIFAMILY MANAGEMENT, LLC AND MERCURY METROPLEX REAL ESTATE II LLC**

Filed in said Court **11th day of July, 2016** against

**PELEUS INSURANCE COMPANY, ENGLE MARTIN & ASSOCIATES AND RIDGE BRENTON KIRN**

For Suit, said suit being numbered **DC-16-08248**, the nature of which demand is as follows:
Suit on **CNTR CNSMR COM DEBT** etc. as shown on said petition, a copy of which accompanies this citation.  If this citation is not served, it shall be returned unexecuted.

WITNESS: FELICIA PITRE, Clerk of the District Courts of Dallas, County Texas.
Given under my hand and the Seal of said Court at office this 13th day of July, 2016.

ATTEST: FELICIA PITRE, Clerk of the District Courts of Dallas, County, Texas

By  /s/ Gay Lane _____, Deputy
GAY LANE

---

**ESERVE**

**CITATION**

DC-16-08248

**MERCURY MULTIFAMILY MANAGEMENT, LLC, et al**
vs.
**PELEUS INSURANCE COMPANY, et al**

ISSUED THIS
**13th day of July, 2016**

FELICIA PITRE
Clerk District Courts,
Dallas County, Texas

By:  GAY LANE, Deputy

**Attorney for Plaintiff**
RAIZNER SLANIA LLP
JEFFREY L RAIZNER
2402 DUNLAVY STREET
HOUSTON  TS 77006
713-554-9099



**DALLAS COUNTY**
**SERVICE FEES**
**NOT PAID**

# OFFICER'S RETURN

Case No. : DC-16-08248

Court No.134th District Court

Style: MERCURY MULTIFAMILY MANAGEMENT, LLC. et al

vs.

PELEUS INSURANCE COMPANY, et al

Came to hand on the _____ day of _____, 20___, at _____ o'clock _____.M. Executed at _____,

within the County of _____ at _____ o'clock _____.M. on the _____ day of _____,

20_____, by delivering to the within named

_____

each, in person, a true copy of this Citation together with the accompanying copy of this pleading, having first endorsed on same date of delivery.  The distance actually traveled by

me in serving such process was _____ miles and my fees are as follows:   To certify which witness my hand.

For serving Citation     $ _____

For mileage              $ _____   of _____ County. _____

For Notary               $ _____   By _____ Deputy

(Must be verified if served outside the State of Texas.)

Signed and sworn to by the said _____ before me this _____ day of _____, 20___,

to certify which witness my hand and seal of office.

_____
Notary Public _____ County

# Exhibit A-3-h

FILED
DALLAS COUNTY
9/2016 9:14:17 AM
FELICIA PITRE
DISTRICT CLERK

CAUSE NO. DC-16-08248

| | | |
|---|---|---|
| MERCURY MULTIFAMILY | § | IN THE DISTRICT COURT OF |
| MANAGEMENT, LLC AND MERCURY | § | |
| METROPLEX REAL ESTATE II, LLC, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | DALLAS COUNTY, TEXAS |
| | § | |
| PELEUS INSURANCE COMPANY, | § | |
| ENGLE MARTIN & ASSOCIATES, AND | § | |
| RIDGE BRENTON KIRN, | § | |
| | § | |
| Defendants. | § | 134TH JUDICIAL DISTRICT |

## DEFENDANT'S ORIGINAL ANSWER

Defendant Peleus Insurance Company ("Defendant") files the following Original Answer to Plaintiffs' Original Petition and states:

## GENERAL DENIAL

Pursuant to Rule 92 of the Texas Rules of Civil Procedure, Defendant generally denies each and every allegation contained in Plaintiffs' Original Petition and demands strict proof thereof by a preponderance of the evidence.

## SPECIAL DENIAL

Defendant specifically denies that Plaintiffs have satisfied all conditions precedent to the recovery they seek in this lawsuit. For example, Plaintiffs failed to provide Defendant timely written notice of Plaintiffs' statutory claims in this matter as expressly required by Section 17.505 of the Texas Business and Commerce Code and Section 541.54 of the Texas Insurance Code, thereby precluding Plaintiffs from prevailing on any such claims. Plaintiffs also failed to properly present their claim for attorneys' fees under Section 38.001 of the Texas Civil Practice and Remedies Code, thereby precluding Plaintiffs' recovery of any such fees in this action.

Plaintiffs' claims are barred, in whole or in part, by their failure to satisfy these (and other) conditions precedent to the recovery they seek in this action.

Discovery in this matter is ongoing and Defendant reserves the right to assert that Plaintiffs have failed to meet other conditions precedent required under Texas statute, Texas law, and/or Peleus Insurance Company Policy number 723-1426870415-00, with effective dates of coverage from May 1, 2015 through May 1, 2016, including all related endorsements, schedules, and declaration certificates ("Policy").

## AFFIRMATIVE DEFENSES

Pursuant to Rule 94 of the Texas Rules of Civil Procedure, Defendant sets forth the following affirmative defenses to the allegations in Plaintiffs' Original Petition:

1.    Plaintiffs' claims are barred, in whole or in part, on the basis that the allegations in Plaintiffs' Original Petition fails to state a claim against Defendant upon which relief can be granted.

2.    Plaintiffs' claims are barred, in whole or in part, to the extent Mercury Metroplex Real Estate II, LLC is not a named insured under the Policy and, therefore, lacks the capacity to sue on (or recover for) the claims it has asserted against Defendant.

3.    Plaintiffs' claims are barred, in whole or in part, by the terms, conditions, limitations, and exclusions contained in the Policy, including (without limitation) the terms, conditions, and limitations set forth in the Policy's Replacement Cost Form and loss payment provision(s).

4.    Plaintiffs' claims are barred, in whole or in part, by the Policy's provision prohibiting legal action against Defendant under the Policy unless Plaintiffs have fully complied with all of the terms of the Policy.

5.      Plaintiffs' claims are barred, in whole or in part, by the Policy's exclusion for cosmetic loss or damage (as defined in the Policy).

6.      Plaintiffs' claims are barred, in whole or in part, by the Policy's exclusion(s) for wear and tear, rust, corrosion, decay, deterioration, hidden or latent defect, and/or any quality in the Property that causes it to damage or destroy itself.

7.      Plaintiffs' claims are barred, in whole or in part, by the Policy's exclusion(s) and/or limited coverage for loss or damage that is attributed to the presence of, caused by, or results from mildew, mold, wet rot, dry rot, or other fungi.

8.      Plaintiffs' claims are barred, in whole or in part, by the Policy's exclusion for loss or damage caused by or resulting from continuous or repeated seepage, leakage, or flow of water that occurs over a period of fourteen (14) days or more.

9.      Plaintiffs' claims are barred in whole or in part by the Policy's exclusion(s) for loss or damage caused by or resulting from faulty, inadequate or defective: design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction; materials used in repair, construction, renovation or remodeling; or maintenance.

10.     Plaintiffs' claims are barred, in whole or in part, to the extent Plaintiffs failed to take all reasonable steps to mitigate, minimize or avoid the damages allegedly sustained or to protect the property from further damage, and Plaintiffs' recovery under the Policy and Texas law, if any, must be offset and reduced accordingly.

11.     Plaintiffs' claim for coverage under the Policy has been fully adjusted and paid by Defendant in accordance with the terms of the Policy.  Plaintiffs' claim are thus barred, in whole or in part, to the extent of Defendant's prior payment under the Policy, and Plaintiffs' recovery under the Policy, if any, must be offset and reduced accordingly.

12.    Plaintiffs' claims are barred, in whole or in part, by the doctrines of laches, estoppel, waiver, release, unclean hands, unjust enrichment, and accord and satisfaction.

13.    A *bona fide* controversy exists concerning the extent of Plaintiffs' entitlement to benefits under the Policy. Defendant and/or its employees, agents, representatives, and adjusters are entitled to value claims differently from its insured without facing bad-faith or extra-contractual liability. Defendant would show that a *bona fide* controversy exists regarding the scope of any alleged covered loss and/or whether and the extent to which any asserted loss was the result of a covered occurrence or occurrences.

14.    Plaintiffs' claim for exemplary damages is unconstitutional and violates the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution and of Article 1, Section 19 of the Texas Constitution for the following reasons:  (a) the standards under which such claims are submitted are so vague as to be effectively meaningless and threaten a deprivation of property for the benefit of society without the protection of fundamentally fair procedures; (b) the highly penal nature of exemplary damages threatens the possibility of excessive punishment and almost limitless liability without the benefit of fundamentally fair procedures or any statutory limitations; (c) the introduction of evidence of Defendant's financial worth is so prejudicial as to impose liability and punishment in a manner bearing no relation to the extent of any injury allegedly inflicted or to any benefit to Defendant from any alleged wrongdoing and, therefore, any verdict would be the result of bias and prejudice in a fundamentally unfair manner.

15.    Plaintiffs' claim for exemplary damages constitutes an unconstitutional excessive fine under Article 1, Section 13 of the Texas Constitution because such highly penal sanctions may be imposed for the benefit of society under standards so vague and effectively meaningless

as to threaten unlimited punishment bearing no relation to the extent of any injury allegedly inflicted at the unbridled discretion of the jury.

16. Defendant further reserves the right to assert additional affirmative defenses as this litigation proceeds.

## RESERVATION OF RIGHTS

17. By appearing and answering herein, Defendant does not waive, and expressly reserves, all rights and defenses that Defendant may have (or that may arise) under the Policy and/or applicable law. Nothing herein shall constitute or be deemed a waiver of, or an estoppel to assert, any of the rights and defenses that Defendant may have (or that may arise) under the Policies and/or applicable law.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant Peleus Insurance Company prays that upon final judgment: (a) all relief requested by Plaintiffs be denied; (b) all costs be taxed against Plaintiffs; and (c) for such other and further relief to which Defendant may be justly entitled, whether at law or in equity.

Respectfully submitted,

**ZELLE LLP**

By:      /s/ James W. Holbrook, III
             Steven J. Badger
             Texas Bar No. 01499050
             sbadger@zelle.com
             James W. Holbrook, III
             Texas Bar No. 24032426
             jholbrook@zelle.com
             Tyler J. McGuire
             Texas Bar No. 24098080
             tmcguire@zelle.com

901 Main Street, Suite 4000
Dallas, Texas 75202-3975
Telephone:  214-742-3000
Facsimile:  214-760-8994

**ATTORNEYS FOR DEFENDANT
PELEUS INSURANCE COMPANY**

## CERTIFICATE OF SERVICE

On August 29, 2016, I served a true and correct copy of Defendant's Original Answer upon all known counsel of record pursuant to the Texas Rules of Civil Procedure, addressed as follows:

| | |
|---|---|
| Jeffrey L. Raizner | Stephen R. Wedemeyer |
| Andrew P. Slania | swedemeyer@winstead.com |
| Amy Bailey Hargis | **WINSTEAD PC** |
| **RAIZNER SLANIA, LLP** | 1100 JPMorgan Chase Tower |
| 2402 Dunlavy Street | 600 Travis Street |
| Houston, TX  77006 | Houston, Texas 77002 |
| Telephone:     713-554-9099 | Telephone:     713-650-8400 |
| Facsimile:     713-554-9098 | Facsimile:     713-650-8400 |
| efile@raiznerlaw.com | *Attorneys for Defendant* |
| *Attorneys for Plaintiffs* | *Engle Martin & Associates, Inc.* |

      /s/ James W. Holbrook, III
      James W. Holbrook, III

Exhibit A-3-i

FILED
DALLAS COUNTY
8/2/2016 2:17:53 PM
FELICIA PITRE
DISTRICT CLERK

## CAUSE NO. DC-16-08248

| | | |
|---|---|---|
| MERCURY MULTIFAMILY | § | IN THE DISTRICT COURT OF |
| MANAGEMENT, LLC and MERCURY | § | |
| METROPLEX REAL ESTATE II, LLC | § | |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| PELEUS INSURANCE COMPANY, | § | |
| ENGLE MARTIN & ASSOCIATES, | § | |
| RIDGE BRENTON KIRN | § | 134TH DISTRICT COURT |

### DEFENDANT RIDGE BRENTON KIRN'S
### ORIGINAL ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Defendant, RIDGE BRENTON KIRN ("Defendant"), and files this Original Answer and Request for Disclosure, in response to the lawsuit and causes of action brought against it by Plaintiffs, MERCURY MULTIFAMILY MANAGEMENT, LLC and MERCURY METROPLEX REAL ESTATE II, LLC. ("Plaintiffs"). In support, Defendant would respectfully show the Court as follows:

### GENERAL DENIAL

1.      Pursuant to Rule 92 of the TEXAS RULES OF CIVIL PROCEDURE, Defendant hereby asserts a general denial to Plaintiffs' Original Petition, and any supplemental or amended petitions, and each and every allegation, claim, and/or cause of action asserted in those petitions. Defendant respectfully requests that the Court and Jury require Plaintiffs to prove Plaintiffs' claims, charges, and allegations by that standard of evidence as required by the Constitution and Laws of the State of Texas and the Constitution and Laws of the United States of America. Defendant further reserves the right to amend its answer at a future date in accordance with the TEXAS RULES OF CIVIL PROCEDURE.

## REQUEST FOR DISCLOSURES

2.      Pursuant to Rule 194 of the TEXAS RULES OF CIVIL PROCEDURE, Defendant hereby requests that Plaintiffs disclose the information or material described in Rule 194.2(a) through (l).

## RULE 193.7 NOTICE

3.      Pursuant to Rule 193.7 of the TEXAS RULES OF CIVIL PROCEDURE, Defendant hereby gives actual notice to all parties that any and all documents produced may be used against the party producing the document at any pretrial proceeding and/or at the trial of this matter without the necessity of authenticating the documents.

## PRAYER

4.      WHEREFORE, PREMISES CONSIDERED, Defendant prays that Plaintiffs take nothing by reason of this suit, that Defendant herein be released, discharged and found not liable to Plaintiffs, that the parties go hence with their costs, without delay, and for such other and further relief, both general and special, at law and in equity, to which Defendant may show themselves justly entitled.

2

Respectfully submitted,

**WINSTEAD PC**


By:     /s/ Stephen R. Wedemeyer
       Stephen R. Wedemeyer
       State Bar No. 00794832
       swedemeyer@winstead.com
       1100 JPMorgan Chase Tower
       600 Travis Street
       Houston, Texas 77002
       Telephone:  713.650.8400
       Facsimile:  713.650.2400

**ATTORNEYS FOR DEFENDANT
RIDGE BRENTON KIRN**


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing instrument was served on all counsel of record in accordance with the Texas Rules of Civil Procedure on this 2nd day of September, 2016.

| | |
|---|---|
| Jeffrey L. Raizner | Steven J. Badger |
| Andrew P. Slania | James W. Holbrook, III |
| Amy Bailey Hargis | Tyler J. McGuire |
| Raizner Slania, LLP | Zelle LLP |
| 2402 Dunlavy Street | 901 Main Street, Suite 4000 |
| Houston, Texas 77006 | Dallas, Texas 75202-3975 |
| Phone: 713.554.9099 | Telephone: 214.742.3000 |
| Fax: 713.554.9098 | Fax: 214.760.8994 |
| ***Attorneys for Plaintiffs*** | ***Attorneys for Defendant*** |
| | ***Peleus Insurance Company*** |


/s/ Stephen R. Wedemeyer
Stephen R. Wedemeyer

3